**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

UNITED STATES OF AMERICA,

v.

No. 3:20-cr-28 (VAB)

WALLACE BEST,
JEFFREY THOMAS,
JASON COX,
FRANK BEST,
TOMASZ TUROWSKI, and
LAMONT JEFFERIES

**RULING AND ORDER ON PRETRIAL MOTIONS**

Wallace Best, Jeffrey Thomas, Jason Cox, Frank Jamont Best, Tomasz Turowski, and

Lamont Jefferies (collectively, the "Defendants")[1] have been charged in a multi-count

Superseding Indictment with crimes related to the possession and distribution of narcotics. *See*

Third Superseding Indictment, ECF No. 387 (Mar. 29, 2021) ("Third Superseding Indictment").

In advance of trial, the parties have filed various motions to preclude or limit certain

types of evidence. *See* Def.'s Mot. in Limine Re: His Prior Incarceration, ECF No. 512 (June 14,

2021) ("Wallace Best Mot. Re: Prior Incarceration"); Def.'s Mot. in Limine Re: His Prior

Conviction, ECF No. 513 (June 14, 2021) ("Wallace Best Mot. Re: Prior Conviction"); Motion

to Strike 851 Information from Indictment, ECF No. 514 (June 14, 2021) ("Wallace Best Mot.

Re: 851 and Prior Acts"); Gov't Mot. Regarding Confidential Source's Presentence Investigation

---

[1] Six other individuals, Oscar Garcia-Hernandez, Gustavo Gonzalez-Yanez, David Azarias Morales-Verdugo, Jesus
Mendez, Oscar Zavala, and Constantino Acosta-Banda, were originally charged but have since pled guilty or are not
available for trial. *See* Plea Agreement, ECF No. 739 (Feb. 16, 2022) (Jesus Mendez); Plea Agreement, ECF No.
358 (Mar. 4, 2021) (Constantino Acosta-Banda); Plea Agreement, ECF No. 348 (Feb. 23, 2021) (Oscar Zavala);
Plea Agreement, ECF No. 883 (Aug. 23, 2022) (Gustavo Gonzalez-Yanez).

1

Report, ECF No. 859 (Aug. 15, 2022) ("Gov't Mot. Re: CS PSR"); Def.'s Mot. in Limine Re: Sale of Firearms, ECF No. 835 (Aug. 12, 2022) ("Wallace Best Mot. Re: Firearms"); Def.'s Notice Re: Cross Examination; Prosecutor Becoming a Witness; Request for Ltd. Disc., ECF No. 868 (Aug. 19, 2022) ("Wallace Best Notice Re: Cross Examination"); Def. Jeffrey Thomas' Motion in Limine Re: Evidentiary Issues, ECF No. 864 (August 15, 2022) ("Thomas Mot. Re: Evid. Issues"); Motion in Limine Regarding Certain Prior Statements of Alleged Co-Conspirators, ECF No. 832 (Aug. 11, 2022) ("Cox Mot. Re: Co-Conspirator Statements"); Mot. in Limine Regarding Criminal History and Surplusage in the Third Superseding Indictment, ECF No. 886 (Aug. 24, 2022) ("Cox Mot. Re: Prior Bad Acts"); Def. Turowski's Mot. in Limine and Mem. to Exclude Hearsay, ECF No. 846 (Aug. 15, 2022) ("Turowski Mot. Re: Hearsay"); Def. Turowski's Mot. in Limine with Accompanying Mem. to Preclude Law Enforcement Lay Op. Testimony, ECF No. 847 (Aug. 15, 2022) ("Turowski Mot. Re: Lay Testimony"); Def. Turowski's Mot. in Limine to Preclude Irrelevant Prejudicial Prior Acts, ECF No. 848 (Aug. 15, 2022) ("Turowski Mot. Re: Prior Bad Acts"); Def. Turowski's Mot. in Limine with Mem. of Law to Preclude Co-Defendant or Co-Conspirator Post-Arrest Statements, ECF No. 850 (Aug. 15, 2022) ("Turowski Mot. Re: Post-Arrest Statements"); Def. Turowski's Mot. in Limine to Preclude Certain Statements and Acts, ECF No. 851 (Aug. 15, 2022) ("Turowski Mot. Re: Co-Conspirator Statements"); Def. Turowski's Mot. in Limine to Preclude Admission of Testimony from Troopers Ehret and Baher, ECF No. 852 (Aug. 15, 2022) ("Turowski Mot. Re: Trooper Testimony"); Def. Turowski's Mot. in Limine to Preclude Certain Statements and Acts, ECF No. 853 (Aug. 15, 2022) ("Turowski Second Mot. Re: Co-Conspirator Statements"); Def. Turowski's Mot. in Limine to Exclude Testimony from Task Force Officers, ECF No. 854 (Aug. 15, 2022) ("Turowski Mot. Re: Task Force Officer Testimony"); Def. Turowski's Mot. for Sanctions, ECF

No. 877 (Aug. 22, 2022) ("Turowski Mot. for Sanctions"); Def. Frank Best Mot. in Limine to Prevent or Restrict Evidence Regarding Overdoses, ECF No. 844 (Aug. 14, 2022) ("Frank Best Mot. Re: Overdose"); Def. Frank Best's Mot. to Adopt Co-Defendant's Mot. 757, ECF No. 842 (Aug. 14, 2022) ("Frank Best Mot. to Adopt"); Def. Jefferies' Mot. in Limine Re: Expert Testimony, ECF No. 757 (Mar. 11, 2022) ("Jefferies Mot. Re: Expert Testimony"); Def. Jefferies' Suppl. Mem. in Supp., ECF No. 902 (Aug. 26, 2022) ("Jefferies Suppl. Mem. in Supp. Re: Expert Testimony"); Mot. in Limine (Prior Bad Acts), ECF No. 758 (Aug. 30, 2022) ("Jefferies Mot. Re: Prior Bad Acts"); Mot in Limine – Section 851, ECF No. 836 (Aug. 30, 2022) ("Jefferies Mot. Re: Sect. 851"); Mot. in Limine – Co-Conspirator Statements, ECF No. 837 (Aug. 12, 2022) ("Jefferies Mot. Re: Co-Conspirator Statements"); Gov't Mot. in Limine to Preclude Statements and Evid., ECF No. 858 (Aug. 15, 2022) ("Gov't Mot. Re: Officer Martin").

Additionally, Defendants have filed several motions for disclosure of evidence. *See* Def.'s Mot. for Disclosure, ECF No. 767 (Apr. 22, 2022) ("Wallace Best Mot. for Discl."); Def.'s Mot. for Disclosure, ECF No. 845 (Aug. 15, 2022) ("Wallace Best Second Mot. for Discl."); Def. Frank Best's Mot for Disclosure, ECF No. 841 (Aug. 14, 2022) ("Frank Best Mot. for Discl.").

For the following reasons, the [832], [837], [850], [851], [853], and [864] motions as they relate to co-conspirator statements, the [850], [846], and [832] motions as they relate to the *Bruton* doctrine, the [902], [864], [842], and [757] motions as they relate to the narcotics expert's testimony, the [854] motion, the [847] motion, and the [858] motion are **DENIED without prejudice** to renewal at trial.

The [877] and [852] motions are **DENIED**.

The [514], [836], [864], and [886] motions, as they related to Section 851, and the [845] motion are **DENIED as moot**.

The Court will reserve judgment on the [886], [864], [848], [844], [835], [758], [514], [513], and [512] motions as they relate to prior acts evidence, and the [859], [841], and [767] motions as they relate to the cooperating source's PSR and CJA-23 until the Court conducts *in camera* review.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

This case involves an alleged drug trafficking conspiracy allegedly operated in the North End neighborhood of Bridgeport, Connecticut resulting in the indictment of twelve defendants, including the defendants named below. *See United States v. Best*, No. 20-CR-28 (VAB).

### A.   Wallace Best

On February 11, 2020, Mr. Wallace Best was arrested, following the issuance of an arrest warrant on February 7, 2020. *See* Arrest Warrant, ECF No. 2 (Feb. 7, 2020).

On February 19, 2020, a grand jury returned an Indictment charging Mr. Wallace Best with Conspiracy to Distribute and to Possess with Intent to Distribute Heroin and Fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(i) and (vi). *See* Indictment, ECF No. 13 (Feb. 19, 2020).

On June 18, 2020, Mr. Wallace Best appeared for an arraignment before Magistrate Judge Sarah A.L. Merriam. *See* Min. Entry, ECF No. 107 (June 18, 2020). He pled not guilty. *Id*.

On October 5, 2020, a grand jury returned a Superseding Indictment charging Mr. Wallace Best with an additional count of Conspiracy to Distribute and to Possess with Intent to Distribute Heroin and Cocaine Base/Crack Cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. *See* Sealed Superseding Indictment, ECF No. 169 (Oct. 5, 2020); *see also*

Sealed Second Superseding Indictment, ECF No. 372 (Mar. 15, 2021) ("Second Superseding Indictment") (charging the same); Third Superseding Indictment (charging the same). The Superseding Indictment further provided information under 21 U.S.C. § 851 that Mr. Wallace Best is subject to enhanced penalties, as he has been previously convicted of a serious drug felony. Sealed Superseding Indictment, ECF No. 169 (Oct. 5, 2020).

On May 11, 2021, Wallace Best again appeared for an arraignment before Magistrate Judge Merriam. *See* Min. Entry, ECF No. 446 (May 11, 2021). He pled not guilty as to all counts. *Id*.

On June 14, 2021, Mr. Wallace Best filed a motion *in limine* seeking to prevent the Government from introducing evidence of his prior incarceration during trial. *See* Wallace Best Mot. Re: Prior Incarceration. He filed a motion *in limine* seeking to prevent the Government from using evidence of his August 22, 2002, conviction during the trial. *See* Wallace Best Mot. Re: Prior Conviction. He also filed a motion to strike the Section 851 information from the Indictment. *See* Wallace Best Mot. Re: 851 and Prior Acts. The Government opposed these motions. *See* Gov't Omnibus Response to Defs.' Pretrial Mots., ECF No. 572 (Aug. 3, 2021) ("Aug. 2021 Gov't Opp'n").

On April 22, 2022, Mr. Wallace Best moved for further disclosure of specific documents, including documents related to the Government's cooperating source. *See* Wallace Best Mot. for Discl. The Government has not opposed this motion but has filed a separate motion *in limine* seeking to prevent disclosure of the cooperating source's Presentence Investigation Report (the "PSR"). *See* Gov't Omnibus Response to Defs.' Mots., ECF No. 895 (Aug. 25, 2022) ("Aug. 2022 Gov't Opp'n"); Gov't Mot. Re: CS PSR.

On August 12, 2022, Mr. Wallace Best filed a motion *in limine* seeking to exclude any discussions of the potential sale of firearms from the trial. *See* Wallace Best Mot. Re: Firearms. On August 15, 2022, he filed a motion for disclosure of a search warrant affidavit signed by Officer Chris Martin. *See* Wallace Best Second Mot. for Discl. On August 19, 2022, he filed a notice regarding cross examination, the prosecutor becoming a witness, and a request for limited discovery. *See* Wallace Best Notice Re: Cross Examination. The Government opposed each of these filings. *See* Aug. 2022 Gov't Opp'n.

### B.  Jeffrey Thomas

On February 10, 2020, Jeffrey Thomas was arrested on a criminal complaint. *See* Arrest Warrant, ECF No. 2 (Feb. 7, 2020).

On February 19, 2020, a grand jury returned an indictment charging Mr. Thomas and others with Conspiracy to Distribute and to Possess with Intent to Distribute Heroin and Fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). *See* Indictment, ECF No. 13 (Feb. 19, 2020).

On June 18, 2020, Mr. Thomas appeared before Magistrate Judge William I. Garfinkel for an arraignment. *See* Min. Entry, ECF No. 106 (June 18, 2020). He pled not guilty. *Id*.

On October 5, 2020, the grand jury returned a Superseding Indictment charging Jeffrey Thomas with an additional count of Conspiracy to Distribute and to Possess with Intent to Distribute Heroin and Cocaine Base/Crack Cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. *See* Superseding Indictment, ECF No. 169 (Oct. 5, 2020); *see also* Second Superseding Indictment (charging the same); Third Superseding Indictment (charging the same).

On May 10, 2021, Mr. Thomas appeared before Magistrate Judge Sarah A. L. Merriam for a second arraignment on the charges in the Superseding Indictment. Min. Entry, ECF No. 437 (May 10, 2021). He pled not guilty to all counts. *Id*.

On August 15, 2022, Mr. Thomas filed an omnibus motion *in limine* regarding a variety of evidentiary issues including prior acts, hearsay, co-conspirator statements, and the narcotics expert. *See* Thomas Mot. Re: Evid. Issues. The Government responded to Mr. Thomas's evidentiary arguments in its own omnibus response. *See* Aug. 2022 Gov't Opp'n.

### C.  Jason Cox

On February 7, 2020, a criminal complaint and arrest warrant issued against Jason Cox. *See* Compl., ECF No. 1 (Feb. 7, 2020); Arrest Warrant, ECF No. 2 (Feb. 7, 2021). Following an initial appearance, at which the Court appointed Frank L. O'Reilly as counsel, the Court ordered Mr. Cox to be held in pretrial detention. *See* Min. Entry, ECF No. 7 (Feb. 11, 2020).

On February 19, 2020, a grand jury returned an Indictment charging Mr. Cox with Conspiracy to Distribute and to Possess with Intent to Distribute Heroin and Fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(i) and (vi). *See* Indictment, ECF No. 13 (Feb. 19, 2020); *see also* Second Superseding Indictment (charging the same); Third Superseding Indictment (charging the same). The Indictment further provided information under 21 U.S.C. § 851 that Mr. Cox is subject to enhanced penalties, as he has been convicted previously of a serious drug felony.

On August 24, 2020, Mr. Cox appeared for an arraignment before Judge Victor A. Bolden. *See* Min. Entry, ECF No. 157 (Aug. 24, 2020). He pled not guilty. *Id*.; *see also* Min. Entry, ECF No. 490 (June 2, 2021) (not guilty plea before Magistrate Judge Sarah A. L. Merriam).

On July 15, 2021, Mr. Cox, through his attorney, filed a motion for a bill of particulars. *See* Mot. for Bill of Particulars, ECF No. 558 (July 15, 2021). The Government opposed this motion. *See* Aug. 2021 Gov't Opp'n. During the final pre-trial conference, Mr. Cox's counsel indicated that he did not intend to pursue this motion. *See* Min. Entry, ECF No. 914 (Aug. 30, 2022). On August 30, 2022, the Court issued an Order denying this motion. *See* Order, ECF No. 923 (Aug. 30, 2022).

On August 11, 2022, Mr. Cox, through his counsel, filed a motion *in limine* seeking to exclude co-conspirator statements made before he became part of the conspiracy and any statements that violate the *Bruton* doctrine. *See* Cox Mot. Re: Co-Conspirator Statements. The Government opposed excluding these statements. *See* Aug. 2022 Gov't Opp'n. Mr. Cox filed a reply in response to the Government's arguments. *See* Def.'s Reply to Gov't Omnibus Response, ECF No. 905 (Aug. 27, 2022) ("Mr. Cox's Reply").

On August 24, 2022, Mr. Cox, through his counsel, filed a motion *in limine* seeking to exclude evidence of his criminal history under the Federal Rules of Evidence Rule 404(b) and to strike any reference to the Section 851 charges from the Indictment. *See* Cox Mot. Re: Prior Bad Acts. The Government again opposed the motion. *See* Aug. 2022 Gov't Opp'n. Mr. Cox filed a reply in response to the Government's arguments. *See* Mr. Cox's Reply.

On August 30, 2022, Mr. Cox filed a *pro se* motion to compel, motion to suppress, and motion to establish. *See* Mot. to Compel, ECF No. 911 (Aug. 30, 2022); Mot. to Suppress, ECF No. 910 (Aug. 30, 2022); Mot. to Establish, ECF No. 909 (Aug. 30, 3033). On August 30, 2022, the Court issued an Order denying these motions. *See* Order, ECF No. 922 (Aug. 30, 2022).

### D.  Tomasz Turowski

On October 5, 2020, Mr. Turowski was added to this multi-defendant case in a

Superseding Indictment returned by a grand jury. *See* Sealed Superseding Indictment, ECF No.

169 (Oct. 5, 2020). The Superseding Indictment charges Mr. Turowski with two counts: (1)

Conspiracy to Distribute and to Possess with Intent to Distribute Heroin and Cocaine Base/Crack

Cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846; and (2) Use of a

Telephone to Facilitate a Narcotics Conspiracy under 21 U.S.C. § 843(b). *Id*.; *see also* Second

Superseding Indictment (charging the same); Third Superseding Indictment (charging the same).

On October 19, 2020, Mr. Turowski appeared for an arraignment before Magistrate Judge

William I. Garfinkel. *See* Min. Entry, ECF No. 189 (Oct. 19, 2020). He pled not guilty as to all

counts. *Id*.; *see also* Min. Entry, ECF No. 455 (May 13, 2021) (not guilty plea).

On May 24, 2021, Mr. Turowski moved for a court order directing the Government to

provide a bill of particulars. *See* Def. Turowski's Mot. for Bill of Particulars, ECF No. 473 (May

24, 2021). The Government opposed the motion. *See* Aug. 2022 Gov't Opp'n. During the final

pre-trial conference, Mr. Turowski's counsel indicated that he did not intend to pursue this

motion. *See* Min. Entry, ECF No. 914 (Aug. 30, 2022). On August 30, 2022, the Court issued an

Order denying this motion. *See* Order, ECF No. 923 (Aug. 30, 2022).

On August 15, 2022, Mr. Turowski filed several motions *in limine* requesting that the

court to preclude various types of evidence. *See* Turowski Mot. Re: Hearsay; Turowski Mot. Re:

Lay Testimony; Turowski Mot. Re: Prior Bad Acts; Turowski Mot. Re: Post-Arrest Statements;

Turowski Mot. Re: Co-Conspirator Statements; Turowski Mot. Re: Trooper Testimony;

Turowski Second Mot. Re: Co-Conspirator Statements; Turowski Mot. Re: Task Force Officer

Testimony. The Government responded to each of these arguments in its omnibus response. *See* Aug. 2022 Gov't Opp'n.

On August 22, 2022, Mr. Turowski filed a motion for sanctions based on alleged *Brady* violations. *See* Turowski Mot. for Sanctions. The Government responded to this in its omnibus response as well. *See* Aug. 2022 Gov't Opp'n.

On August 31, 2022, Mr. Turowski filed a motion for reconsideration of the Court's denial of his motion to dismiss. *See* Mot. for Reconsid., ECF No. 924 (Aug. 31, 2022).

### E.  Frank Best

On October 5, 2020, Mr. Frank Best was added to this multi-defendant case in the Superseding Indictment returned by a grand jury. *See* Sealed Superseding Indictment, ECF No. 169 (Oct. 5, 2020). The Superseding Indictment charges Mr. Frank Best with one count of Conspiracy to Distribute and to Possess with Intent to Distribute Heroin and Fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(i) and (vi); three counts of Possession with Intent to Distribute and Distribution of Heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); one count of Possession with Intent to Distribute and Distribution of Fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and one count of Possession with Intent to Distribute and Distribution of Heroin and Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). *Id.*; *see also* Second Superseding Indictment (charging the same); Third Superseding Indictment (charging the same).

On September 30, 2020, Mr. Frank Best appeared for an arraignment before Magistrate Judge William I. Garfinkel. *See* Min. Entry, ECF No. 6 (Sept. 30, 2020). He pled not guilty as to all counts. *Id.*

On August 14, 2022, Mr. Frank Best filed a motion to sever counts or co-defendants in the Third Superseding Indictment. *See* Def. Best's Mot. to Sever, ECF No. 843 (Aug. 14, 2022). The Government opposed this motion. *See* Aug. 2022 Gov't Opp'n. On August 30, 2022, the Court issued an Order denying the motion to sever. *See* Order, ECF No. 922 (Aug. 30, 2022).

On August 14, 2022, Mr. Frank Best filed a motion *in limine* to preclude evidence about overdoses, a motion to adopt Mr. Jefferies's motion to preclude or limit expert testimony, and a motion for disclosure of information about the cooperating source. *See* Frank Best Mot. to Adopt; Frank Best Mot. for Discl. The Government opposed each of these motions in its omnibus response. *See* Aug. 2022 Gov't Opp'n.

On August 22, 2022, Mr. Frank Best filed a *pro se* motion to dismiss and motion to establish. *See* Def. Counsel's Mot. to File Frank Best's Mot., ECF No. 876 (Aug. 22, 2022). On August 30, 2022, the Court issued an Order denying the motions. *See* Order, ECF No. 922 (Aug. 30, 2022).

### F.  Lamont Jefferies

On March 15, 2021, Mr. Jefferies was added to this multi-defendant case in the Superseding Indictment returned by a grand jury. *See* Second Superseding Indictment; Third Superseding Indictment (charging the same). Mr. Jefferies is charged with one count of Conspiracy to Distribute and to Possess with Intent to Distribute Heroin and Fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(i) and (vi). *See* Second Superseding Indictment; Third Superseding Indictment (charging the same).

On March 31, 2021, Mr. Jefferies appeared for an arraignment before Judge Dave Vatti. *See* Min. Entry, ECF No. 390 (Mar. 31, 2021). He pled not guilty. *Id.*

March 11, 2022, Mr. Jefferies filed a motion for a bill of particulars. *See* Mot. for Bill of Particulars, ECF No. 756 (Mar. 11, 2022). The Government opposed this motion. *See* Aug. 2022 Gov't Opp'n. On August 30, 2022, the Court denied this motion without prejudice for renewal. *See* Order, ECF No. 923.

On March 11, 2022, Mr. Jefferies filed a motion *in limine* requesting that the Court limit or exclude testimony from a narcotics expert. *See* Jefferies Mot. Re: Expert Testimony. The Government opposed this motion. *See* Aug. 2022 Gov't Opp'n. On August 26, 2022, Mr. Jefferies filed a supplemental memorandum in support of his initial motion. *See* Jefferies Suppl. Mem. in Supp. Re: Expert Testimony.

On March 11, 2022, Mr. Jefferies filed a motion *in limine* seeking to exclude or limit prior bad act evidence. *See* Jefferies Mot. Re: Prior Bad Acts. The Government opposed this motion. *See* Aug. 2022 Gov't Opp'n.

On August 12, 2022, Mr. Jefferies filed a motion *in limine* seeking to exclude Section 851 references from trial and a motion *in limine* seeking to limit or exclude certain co-conspirator statements from trial. *See* Jefferies Mot. Re: Sect. 851; Jefferies Mot. Re: Co-Conspirator Statements. The Government responded to each of these motions in its omnibus response. *See* Aug. 2022 Gov't Opp'n.

### G.  The Government

In addition to the Government responses noted above, the Government has filed a motion *in limine* seeking to preclude statements and evidence about Bridgeport police officer Christopher Martin, and a motion seeking to exclude the cooperating source's pre-sentence report ("PSR") from disclosure. *See* Gov't Mot. Re: Officer Martin; Gov't Mot. Re: CS PSR.

On August 31, 2022, the Government filed a notice of intent to use evidence and a notice of supplemental filing regarding the entrapment defense and proof of intent. *See* Notice, ECF No. 926 (Aug. 31, 2022); Notice, ECF No. 925 (Aug. 31, 2022).

The parties were given an opportunity for argument on the pending motions during the August 30, 2022, pre-trial conference. *See* Min. Entry, ECF No. 914 (Aug. 30, 2022). Jury selection is scheduled to begin in this case on September 7, 2022, with trial to begin immediately thereafter. *See* Order, ECF No. 806 (July 11, 2022).

## II.     STANDARD OF REVIEW

Motions *in limine* provide district courts with the opportunity to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (internal citation omitted).

A court should only exclude evidence on motions *in limine* if the evidence is "clearly inadmissible on all potential grounds." *Levinson v. Westport Nat'l Bank*, No. 09-CV-1955 (VLB), 2013 WL 3280013, at *3 (D. Conn. June 27, 2013) (internal citation and quotation marks omitted). The court also retains discretion to reserve judgment on some or all motions *in limine* until trial so that the motions are placed in the appropriate factual context. *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 476 (S.D.N.Y. 2009); *see also, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh v. L.E. Myers Co.*, 937 F. Supp. 276, 286–87 (S.D.N.Y. 1996).

### III.  DISCUSSION

#### A.  Motions in Limine

Defendants and the Government have filed various motions *in limine*, which the Court has grouped into the following categories: 1) prior bad acts, 2) *Brady* and other discovery issues, 3) hearsay, and 4) law enforcement testimony. The Court will address each topic in turn.

#### 1. Prior Acts[2]

Evidence of prior convictions may be admitted in some circumstances for limited purposes such as proving motive or impeaching a witness's credibility. *See* Fed. R. Evid. 404(b) (noting that evidence of past crimes "is not admissible to prove a person's character" but that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."); Fed. R. Evid. 609(a) (outlining the "rules [that] apply to attacking a witness's character for truthfulness by evidence of a criminal conviction" and requiring admission of prior convictions "if the court can readily determine that establishing the elements of the crime required proving – or the witness's admitting – a dishonest act or false statement"); *see also Lewis v. Velez*, 149 F.R.D. 474, 483 (S.D.N.Y. 1993) ("Convictions for crimes or other bad acts that bear a close resemblance to actions alleged in the current case are likely to run afoul of Rule 404(b), because they cause unfair prejudice to the party against whom they are offered by suggesting that the party has a propensity to commit such acts.").

---

[2] Several Defendants submitted motions arguing that references to the Section 851 notices should not be allowed prior to any potential guilty verdict. *See* Wallace Best Mot. Re: 851 and Prior Acts; Jefferies Mot. Re: Sect. 851; Cox Mot. Re: Prior Bad Acts; Thomas Mot. Re: Evid. Issues. In light of the Court's practice of not referring to the Indictment during the trial and the Government's representation that it does not plan to offer any evidence related to the Section 851 notices, the [514], [836], [864], and [886] motions, as they relate to Section 851 information, will be denied as moot.

At all times, such evidence is subject to the balancing test of Rule 403, which provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403; *see also United States v. Estrada*, 430 F.3d 606, 615–16 (2d Cir. 2005) ("[E]vidence of convictions for crimes involving 'dishonesty or false statement,' whether felonies or misdemeanors, must be admitted under Rule 609(a)(2) as being *per se* probative of credibility, while district courts, under Rule 609(a)(1), may admit evidence of a witness's felony convictions that do not constitute *crimen falsi*, subject to balancing pursuant to Rule 403.").

"In balancing the probative value against prejudicial effect under [Rule 609], courts examine the following factors: (1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness." *Stephen v. Hanley*, No. 03-CV-6226 (KAM) (LB), 2009 WL 1471180, at *4 (E.D.N.Y. May 21, 2009) (citing *Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997)).

Mr. Cox argues that his criminal history is not relevant to Count One and that introducing evidence of his prior convictions would be highly prejudicial. *See* Cox Mot. Re: Prior Bad Acts at 5–6. Mr. Turowski similarly argues that evidence of his suspended license, failure to carry a license, and outstanding warrants at the time of his June 2019 arrest should be excluded under 404(b) because the evidence is irrelevant and solely offered to "show[] the defendant's bad character." Turowski Mot. Re: Prior Bad Acts at 2.

Mr. Thomas argues that the Government should not be able to offer evidence of his prior Connecticut state convictions for the sale of narcotics, which are from 1994 and 1995. *See* Thomas Mot. Re: Evid. Issues at 6–8. Additionally, Mr. Thomas argues that evidence that Mr.

Thomas crossed paths with co-defendants or cooperating witnesses while serving time in prison is unduly prejudicial and is not meaningfully probative of the fact that the alleged co-conspirators trusted each other enough to enter into a criminal enterprise. *Id.* at 7–8.

Similarly, Mr. Wallace Best argues that the Court should preclude the Government from introducing evidence that Mr. Wallace Best and the cooperating source served federal prison time together and his August 22, 2002, conviction because such evidence is unduly prejudicial. *See* Wallace Best Mot. Re: Prior Incarceration; Wallace Best Mot. Re: Prior Conviction. Mr. Jefferies requests that the Court make determinations about prior bad acts during trial, when more context is available to fully assess the issues. *See* Mem. in Supp. of Mot. in Limine at 1, ECF No. 758-1 (Mar. 11, 2022).

The Government argues that Mr. Thomas's and Mr. Cox's time in prison is intrinsically intertwined with the conspiracy because they "consistently and repeatedly refer to the time they have spent in prison (both independently and together) as a means of vouching for themselves." Aug. 2022 Gov't Opp'n at 6–7. The Government states that it does not anticipate seeking to admit evidence of Mr. Turowski's past criminal history, outside of the circumstances that led to his arrest, which would include mention of Mr. Turowski's suspended license, lack of license, and outstanding warrants. *Id.* at 7–8. The Government argues this is proper under Rule 404(b) because the June 4 traffic stop is direct evidence of participation in the conspiracy and therefore, "it is inextricably intertwined with the evidence regarding the charged offense." *Id.* at 8–9. The Government also notes that the conduct, failure to appear warrants and motor vehicle violations, are less inflammatory than the charged conduct. *Id.* at 9. Finally, the Government stated that it does not anticipate seeking to admit evidence of Mr. Jefferies's prior bad acts. *Id.*

The Court agrees, in part, for now.

To the extent the Government wishes to use prior acts evidence of how the alleged co-conspirators built trust as a method of proving the existence of a conspiracy, this may be appropriate under Rule 404(b). *See United States v. Rosemond*, 958 F.3d 111, 125 (2d Cir. 2020) ("Evidence of prior bad acts is admissible to 'inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators.'" (quoting *United States v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017))); *see also United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996) ("One legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case. Such proof may also be used to help the jury understand the basis for the co-conspirators' relationship of mutual trust." (internal citations omitted)).

The Court also notes that statements in which the Defendants vouch for one another by referencing time spent in prison and discuss "who's on paper" while planning overt acts in furtherance of the conspiracy may, in some instances, be appropriate Rule 404(b) evidence of a plan or knowledge. *See* Fed. R. Evid. 404(b) (noting that evidence of past crimes "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.").

Yet, as Mr. Wallace Best emphasizes, many of the Defendants and alleged co-conspirators have longstanding relationships with one another that go beyond just serving time in prison together. *See* Wallace Best Mot. Re: Prior Incarceration at 1 (noting that "Mr. [Wallace] Best and the [cooperating source] had the same prison job and worked together while [in prison]" and that "after their release from prison, Mr. [Wallace] Best and the [cooperating

source] . . . knew each other's families, . . . hung out together, and occasionally met for dinner"). Such evidence decreases the probative value of the prior acts as evidence that they know and trust one another enough to engage in criminal activity together. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice . . . or needlessly presenting cumulative evidence.").

Overall, while some prior acts evidence may be admissible as described above, the Court cautions the Government that there is a point at which such evidence will become cumulative and unduly prejudicial. *See United States v. Ilori*, No. 21-cr-746 (MKV), 2022 WL 2452258, at *4 (S.D.N.Y. July 5, 2022) (finding that evidence of prior acts may be admissible as intrinsic to the charged conduct but noting such evidence may ultimately be precluded under Rule 403 where such evidence "is substantially outweighed by a danger of unfair prejudice" (quoting Fed. R. Evid. 403)).

Given the longstanding and nuanced relationships between Defendants and the cooperating source, as well as the context needed to properly determine any potential prejudice, at this stage the Court cannot categorically determine whether prior acts testimony would be properly admitted.

In addition to the broad references to prior criminal conduct, Mr. Wallace Best requests that the Court preclude the Government from offering discussions about the sale of firearms as evidence because no firearms were sold in connection with the charged conspiracy and therefore, the probative value of the evidence is outweighed by its prejudicial effect. *See* Wallace Best Mot. Re: Firearms. Similarly, Mr. Frank Best moves to exclude evidence that overdoses occurred due to the drugs allegedly involved in the charged conspiracies. *See* Frank Best Mot. Re: Overdose.

The Government contends that it intends to offer portions of recorded conversations in which Mr. Wallace Best and Mr. Thomas allegedly suggest to the cooperating source that they could pay for drugs with firearms instead of money. Aug 2022 Gov't Opp'n at 10. The Government insists that such evidence is relevant to respond to Defendants' potential arguments that the cooperating source lured them into the alleged conspiracy. *Id.* The Government also stated that it intends to offer portions of a recorded conversation in which Mr. Frank Best was told that a customer had overdosed and Mr. Frank Best allegedly responded with concern about the customer calling the police. *Id.* at 12.

To the extent Defendants do argue, through cross-examination or otherwise, that it was the cooperating source and not Defendants who allegedly instigated the drug transactions, the Government's evidence of firearms, as described, may be probative evidence of participating in the conspiracy. *See United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) ("[E]vidence of uncharged criminal activity is not considered other crimes evidence under [Rule 404(b)] if it arose out of the same transaction or series of transactions as the charged offense, [or] if it is inextricably intertwined with the evidence regarding the charged offense . . . ." (quoting *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997)). Yet, like in the analysis above, to the extent there is less prejudicial evidence that the Defendants were participating in the conspiracy of their own volition, the firearm-related evidence would be much less probative and potentially inadmissible. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice . . . or needlessly presenting cumulative evidence.").

The Court is particularly wary of the evidence of an overdose. The probative value of this evidence may, in fact, be much less significant than the Government's description because, while

this evidence may be probative of Mr. Frank Best's "pattern of criminal activity" and "his knowledge that the narcotics . . . were in fact controlled substances," numerous other recorded conversations may also prove this point. *See Ilori*, 2022 WL 2452258, at *4 (finding that evidence of prior acts may be admissible as intrinsic to the charged conduct but noting such evidence may ultimately be precluded under Rule 403 where such evidence "is substantially outweighed by a danger of . . . unfair prejudice" (quoting Fed. R. Evid. 403)); *see also* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice . . . or needlessly presenting cumulative evidence.").

Given that the Court needs additional context to determine whether this evidence is cumulative and unduly prejudicial, the Court cannot categorically determine whether prior acts testimony can be properly admitted.

Accordingly, the Court will reserve judgment on the [886], [864], [848], [844], [835], [758], [514], [513], and [512] motions as they relate to prior acts evidence.

### 2. *Brady* and Other Discovery Issues[3]

### i.   Mr. Turowski's *Brady* Arguments

The Supreme Court's decisions in *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, including *Giglio v. United States*, 405 U.S. 150 (1972), require that:

> To the extent that the prosecutor knows of material evidence favorable to the defendant in a criminal prosecution, the government has a due process obligation to disclose that evidence to the defendant. . . . Information coming within the scope of this principle . . . includes not only evidence that is exculpatory, *i.e.*, going to the heart of the defendant's guilt or innocence, but also evidence that is useful for impeachment, *i.e.*, having the potential

---

[3] Mr. Wallace Best moved for the disclosure of documents related to a purported search warrant related to his arrest. *See* Wallace Best Second Mot. for Discl. During the pre-trial conference, the Government represented that any reference to a search warrant was in error because there was no search warrant. *See* Min. Entry, ECF No. 914 (Aug. 30, 2022). Accordingly, the Court will deny Mr. Wallace Best's motion as moot.

> to alter the jury's assessment of the credibility of a significant prosecution witness.

*United States v. Calhelha*, 456 F. Supp. 2d 350, 367 (D. Conn. 2006) (quoting *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998)).

Accordingly, "[d]ocuments that the Government has reviewed or has access to must be provided to aid a defendant in preparing his defense." *United States v. Giffen*, 379 F. Supp. 2d 337, 343 (S.D.N.Y. 2004). The Government need not, however, "produce documents from agencies that did not participate in the investigation of the defendant or documents of which it is unaware." *Id.* (citing *Avellino*, 136 F.3d at 255); *see also Calhelha*, 456 F. Supp. 2d at 367 (citing the same).

Mr. Turowski argues the Government failed to provide exculpatory evidence, in the form of a summary of a verbal statement Mr. Turowski made to Task Force Officer Christopher Martin (the "DEA6 Report") and dash cam video of state police officers conducting the June 2019 search and arrest of Mr. Turowski. *See* Turowski Mot. for Sanctions at 1; Turowski Mot. Re: Trooper Testimony at 1. Mr. Turowski argues that the Indictment should be dismissed against him due to the *Brady* violations because the Government's disclosure of the evidence was made too close to trial and Officer Martin will not be available to testify. *See* Mem. in Supp. of Def. Turowski's Mot. for Sanctions at 1, ECF No. 877-1 (Aug. 22, 2022). Mr. Turowski further argues that Officers Ehret and Baher should not be allowed to testify because the Government failed to timely produce the dash cam video. *See* Mem. in Supp. of Def. Turowski's Mot. in Limine to Preclude Testimony at 2, ECF No. 852-1 (Aug. 15, 2022).

In response, the Government argues that the DEA6 Report is not a *Brady* violation at all because the DEA6 Report is inculpatory, not exculpatory, and, even if it were a *Brady* violation, the late disclosure would not be prejudicial under *Brady* because it was provided more than three

weeks before jury selection. *See* Aug. 2022 Gov't Opp'n at 23. The Government stated that it disclosed the DEA6 report on August 16, 2022, as soon as it realized the report was not produced, Mr. Turowski's counsel received an oral disclosure about the nature of his client's statements soon after Mr. Turowski was arrested in 2019, and Mr. Turowski himself must have been aware of the statements he made to police. *Id.* at 24. The Government also argues that the dash cam footage was provided to Mr. Turowski on August 24, 2022, when the Government first discovered that it was available. *Id.* at 26–28.

During the final pre-trial conference, Mr. Turowski argued that the dash cam evidence, even though now disclosed, is problematic because there is no transcript of what was said, and it is difficult to hear at times because only one of the officers' audio recordings was provided. *See* Min. Entry, ECF No. 914 (Aug. 30, 2022). The Government represented that the audio that was produced is the only audio associated with this recording because, as a policy, the state police only save the primary officer's footage. *See id.* Mr. Turowski also informed the Court that Officer Martin's lawyer stated that, if called as a witness in this trial, Officer Martin would assert his Fifth Amendment right against self-incrimination. *See id.*

There is a "narrow exception to the general conspiracy rule," which states that "a buyer-seller relationship, '[w]ithout more,' is insufficient to establish a conspiracy." *United States v. Rojas*, 617 F.3d 669, 674 (2d Cir. 2010) (alteration in original) (quoting *United States v. Gore*, 154 F.3d 34, 40 (2d Cir. 1998)). However, "the fact that a buyer-seller relationship exists between co-conspirators does not insulate a buyer from a conspiracy charge" particularly where there are facts suggesting "they shared a conspiratorial purpose to advance other transfers, whether by the seller or by the buyer." *Id.* (quoting *United States v. Parker*, 554 F.3d 230, 232 (2d Cir. 2009)).

Under clearly established case law, a defendant's claim that he was only a buyer and did not participate in the conspiracy to distribute is a defense to a conspiracy to distribute charge. *See id.* Thus, the dash cam video and DEA6 Report, which reinforce the argument that Mr. Turowski may have only been a buyer, is at least somewhat exculpatory. *See Strickler v. Greene*, 527 U.S. 263, 280–82 (1999) (noting the Government must produce evidence that is "exculpatory" or "favorable to the accused" if it is "material either to guilt or to punishment").

While the Government's disclosure was late and the evidence is indeed exculpatory, Mr. Turowski is not unduly prejudiced because the DEA6 Report and the dash cam video have been produced with sufficient time to review in advance of trial and Mr. Turowski was, at least in part, on notice to the content of the DEA6 statements when the Government orally disclosed them. *See United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001) (noting "the longstanding constitutional principle that as long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner" and finding "[t]here is no *Brady* violation unless there is a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial"); *see also United States v. Romero*, 54 F.3d 56, 61 (2d Cir. 1995) (finding no *Brady* violation where exculpatory evidence was disclosed during the Government's case at trial).

Accordingly, the Court will deny Mr. Turowski's [877] and [852] motions.

### ii.  The Confidential Source's Presentence Investigation Report

The Government filed a motion *in limine* seeking to exclude the cooperating source's PSR related to his 2013 prosecution in this District, arguing that the PSR is confidential and much of the underlying information, including the recorded conversations, the New York

wiretap, cell phone data, and the agents' communications with the cooperating source, has already been or will be disclosed to Defendants. *See* Gov't Mot. Re: CS PSR at 2. The Government requested that the Court conduct an *in camera* review of the PSR report to determine its relevance, if any. *Id.* at 4.

Mr. Frank Best and Mr. Wallace Best had previously moved for disclosure of the PSR. *See* Wallace Best Mot. for Discl.; Frank Best Mot. for Discl. Additionally, Mr. Thomas and Mr. Wallace Best responded to the Government's motion, arguing that the PSR and the CJA-23 be disclosed in full or, in the alternative, requesting that the Court conduct an *in camera* review of the contents of these documents. *See* Def. Wallace Best's Resp. to Gov'ts Mot. Re: CS's PSR, ECF No. 889 (Aug. 25, 2022); Def. Thomas' Resp. to Gov't Mot. Regarding CS's PSR at 1, ECF No. 903 (Aug. 27, 2022). Mr. Wallace Best also submitted a renewed request for specific information about any text, email, or other written communication between the Government and the cooperating source. *See* Wallace Best Notice Re: Cross Examination at 5–6.

As indicated during the pre-trial conference, the Court will conduct an *in camera* review of the PSR and CJA-23.

Accordingly, the Court will reserve ruling on the [903], [889], [859], [841], and [767] motions until it conducts the *in camera* review.

### 3. Hearsay

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401 ("Rule 401"). "Irrelevant evidence is not admissible." Fed. R. Evid. 402 ("Rule 402"). Evidence that is relevant, however, still may be excluded, for example, in the case of inadmissible hearsay.

24

"The Federal Rules of Evidence define hearsay as a declarant's out-of-court statement 'offer[ed] in evidence to prove the truth of the matter asserted in the statement.'" *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) (quoting Fed R. Evid. 801(c)). "Hearsay is admissible only if it falls within an enumerated exception." *Id.* (citing Fed. R. Evid. 802).

At all times, this hearsay analysis is subject to Federal Rule of Evidence 403, which provides that, although relevant and admissible hearsay, evidence may be excluded "if its probative value is substantially outweighed by a danger of one of more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 ("Rule 403").

The Government stated that it intends to rely on co-conspirator statements that it argues are admissible as an exception to hearsay under Fed. R. Evid. 801(d)(2)(E).

### i.   Co-Conspirator Statements[4]

Co-conspirator statements are generally admissible as non-hearsay under Fed. R. Evid. 801(d)(2)(E), provided that the statements satisfy the Rule's requirements. "A statement is not hearsay if . . . [t]he statement is offered against a party and it is a statement by a co[-]conspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). In order to admit an extra-judicial statement by a co-conspirator under Rule 801(d)(2)(E), the court must find by a preponderance of the evidence "(1) that there was a conspiracy, (2) that its members included the declarant and the party against whom the statement is offered, and (3) that the statement was made both (a) during the course of and (b) in furtherance of the conspiracy."

---

[4] To the extent Defendants argue that some statements captured on the recordings amount to no more than "idle chatter," *see* Thomas Mot. Re: Evid. Issues at 9, the Court agrees that "idle chatter" would be inadmissible, *see United States v. Lieberman*, 637 F.2d 95, 103 (2d Cir. 1980) (noting that the "in furtherance" requirement "is not satisfied by a conversation . . . which amounted to no more than idle chatter"). Without additional context, however, the Court cannot decide at this time whether certain statements are only "idle chatter."

*United States v. Diaz*, 176 F.3d 52, 83 (2d Cir. 1999) (quoting *United States v. Tracy*, 12 F.3d 1186, 1196 (2d Cir. 1993)).

Courts consider the contents of a co-conspirator's statement when determining "the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered," Fed. R. Evid. 801(d)(2)(E); *see also Bourjaily v. United States*, 483 U.S. 171, 181 (1987), however, "there must be some independent corroborating evidence of the defendant's participation in the conspiracy," *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999).

Mr. Turowski argues that co-conspirator statements made before he joined the conspiracy are inadmissible against him because there is a "temporal requirement" such that "the statements cannot be made after the cessation of the conspiracy or before its formation." Mem. in Supp. of Def. Turowski's Mot. in Limine to Preclude Certain Statements and Acts at 2, ECF No. 853-1 (Aug. 15, 2022) (internal quotation marks omitted) (quoting *United States v. Saneaux*, 365 F. Supp. 2d 493, 499 (S.D.N.Y. 2005)). Mr. Turowski emphasizes that co-conspirator statements are "presumptively unreliable" because they require "independent corroborating evidence of the defendant's participation in the conspiracy," and therefore, the government must show the "unity of interests stemming from a specific shared criminal task that justifies Rule 801(d)(2)(E)." *Id.* at 3 (first quoting *United States v. Tellier*, 83 F.3d 578, 580 (2d Cir. 1996); and then quoting *Gigante*, 166 F.3d at 83).

Mr. Cox argues that the requirement in Rule 801(d)(2)(E) "that the statement was made during the course of and in furtherance of the conspiracy" means that co-conspirator statements made before he joined the conspiracy are inadmissible against him. *See* Cox Mot. Re: Co-Conspirator Statements at 6–7. Mr. Thomas similarly argues that Rule 801(d)(2)(E) "requires

that both the declarant and the party against whom the statement is offered be members of the conspiracy," and, therefore, statements made before Mr. Thomas allegedly joined the conspiracy are inadmissible against him. *See* Thomas Mot. Re: Evid. Issues at 12–13.

The Government, in response, argues that co-conspirator statements are admissible under Rule 801(d)(2)(E) even when the acts and statements were made before the defendant joined the conspiracy. Aug. 2022 Gov't Opp'n at 14. The Government relies on *United States v. Badalamenti*, 794 F.2d 821 (2d Cir. 1986), *United States v. Heinemann*, 801 F.2d 86, 92 (2d Cir. 1986), and *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 393 (1948).

In his reply, Mr. Cox clarifies that Defendants are not arguing simply that the co-conspirator statements at issue were made before each particular defendant allegedly joined the conspiracy, but that the co-conspirator statements were made before the formation of any alleged conspiracy. *See* Def.'s Reply to Gov't Omnibus Resp. at 5, ECF No. 905 (Aug. 27, 2022). Mr. Cox argues that certain statements the Government intends to offer were made before the Count One conspiracy allegedly began. *Id.* (pointing to statements made on August 21, 2019, and September 30, 2019).

The Court agrees, in part.

The Second Circuit follows the *Gypsum* rule. *See Badalamenti*, 794 F.2d at 828 (applying the *Gypsum* rule and noting that "[i]t is reasonable to expect that a 'new recruit can be thought to have joined with an implied adoption of what had gone on before to enhance the enterprise of which he is taking advantage'" (quoting 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 801(d)(2)(E)[01], at 250–51 (1985))). This rule, however, applies only if there is "sound reason to believe that [the defendant] joined when he was generally aware of what his new partners had been doing and saying on behalf of the enterprise." *Id.* (internal quotation marks omitted). Thus,

co-conspirator statements are admissible against Defendants who joined the alleged conspiracy later, so long as those Defendants were "generally aware" of what the alleged co-conspirators "had been doing and saying" on behalf of the alleged conspiracy. *See id.*

As Mr. Cox correctly states, however, any statements made before the formation of the alleged conspiracies are inadmissible against the alleged co-conspirators. *See Anderson v. United States*, 417 U.S. 211, 218 (1974) ("The hearsay-conspiracy exception applies only to declarations made while the conspiracy charged was . . . in progress, a limitation that this Court has scrupulously observed."); *see also Saneaux*, 365 F. Supp. 2d at 499 (noting that the Rule 801(d)(2)(E) requires that "the statements [were not] made after the cessation of the conspiracy or before its formation"). Therefore, the Government must meet its burden of proving by a preponderance of evidence that the conspiracy existed for a certain time period and that each Defendant was a member of that conspiracy. Any alleged co-conspirator statements made outside of that time period would be inadmissible under Rule 801(d)(2)(E), despite any evidence that each defendant was "generally aware" of the alleged co-conspirators' action and conduct, because the alleged conspiracy would not yet exist. *See United States v. Abu-Jihaad*, 531 F. Supp. 2d 289, 295 n.2 (D. Conn. 2008) ("[T]here are [Second Circuit] decisions that permit introduction of statements made before a participant joined a conspiracy, but such cases involve a pre-existing conspiracy in which at least two other participants had already formed the requisite agreement.").

Defendants next argue that co-conspirator statements relating to one conspiracy cannot be admitted against Defendants who are only charged with participating in the other conspiracy. Mr. Jefferies argues that the Government will offer many co-conspirator statements related to Count One that potentially implicate Mr. Jefferies, but that those statements should not be admissible

against him because he is only charged in Count Two. *See* Mem. in Supp. of Mot. in Limine Co-Conspirator Statements at 2, ECF No. 837-1 (Aug. 12, 2022). Mr. Jefferies further argues that, assuming the Court opts for a *Geaney* finding, instead of holding a *James* hearing, these statements will be so pervasive that a limiting instruction will not be sufficient. *Id.* Mr. Thomas joins in Mr. Jefferies' argument on this point, particularly as the co-conspirator rules apply to statements by Mr. Wallace Best recorded on the New York wiretap. *See* Thomas Mot. Re: Evid. Issues at 8–13.

The Government responds that the conspiracies charged in Counts One and Two are interrelated and therefore many co-conspirator statements relate to both conspiracies. *See* Aug. 2022 Gov't Opp'n at 16 ("Indeed, Wallace Best, through the confidential source prior to his cooperation with the Government, was providing the heroin Jefferies was buying and re-selling during his participation in the conspiracy charged in Count Two.").

The Court disagrees, in part.

Where there are multiple conspiracies, co-conspirator statements are only admissible against defendants who are proven, by a preponderance of the evidence, to have joined the specific conspiracy that the co-conspirator statements allegedly furthered. *See United States v. Cambindo Valencia*, 609 F.2d 603, 635 n.25 (2d Cir. 1979) (considering whether 801(d)(2)(E) allows statements made by a declarant against a defendant, where the defendant and declarant are connected by a conspiracy other than the conspiracy charged, and opting for a narrower interpretation of 801(d)(2)(E) in which hearsay statements are limited to "only to those made by coconspirators of the conspiracy charged or proved"); *United States v. Pedroza*, 750 F.2d 187, 201–02 (2d Cir. 1984) (statements made in furtherance of an uncharged drug conspiracy not admissible against defendants who participated only in the charged kidnapping conspiracy).

Here, however, unlike in *Pedroza* and *Valencia* where the other conspiracies were not charged in the indictments, the Government has charged two interrelated conspiracies. *See* Aug. 2022 Gov't Opp'n at 16. The two conspiracies allegedly involve overlapping members and allegedly occurred during the same time period. *Id.* To the extent that the Government offers co-conspirator statements that it claims are related to furthering both conspiracies, such statements are only admissible for both conspiracies if the Government can clearly show that the statements meet the elements of 801(d)(2)(E) for both conspiracies. *See United States v. Adelekan*, 567 F. Supp. 3d 459, 466–67 (S.D.N.Y. 2021) (noting that "proof of multiple small conspiracies may suffice for purposes of Rule 801(d)(2)(E)," but that "[t]he touchstone" of the in furtherance requirement is that "the statement be designed to promote the accomplishment of the conspiracy's goals" (internal quotation marks and citations omitted)).

Mr. Cox is only charged with the conspiracy alleged in Count One and therefore, any statements made by Mr. Jefferies, Mr. Frank Best, and Mr. Turowski in furtherance of the Count Two conspiracy necessarily cannot and should not be admitted against Mr. Cox. *See* Third Superseding Indictment. Similarly, Mr. Jefferies, Mr. Frank Best, and Mr. Turowski are only charged with the conspiracy alleged in Count Two and therefore, any statements made by Mr. Cox in furtherance of the Count One conspiracy are inadmissible against Mr. Jefferies, Mr. Frank Best, and Mr. Turowski. *Id.*[5]

The Government, to the extent that it intends to offer statements by Mr. Wallace Best and Mr. Thomas, must make clear which conspiracy the statements are allegedly in furtherance of.

---

[5] The Court notes that "[t]he conspiracy between the declarant and the defendant need not be identical to any conspiracy that is specifically charged in the indictment," *Gigante*, 166 F.3d at 82, however, to the extent that the Government seeks to admit co-conspirator statements based on smaller uncharged conspiracies, the Court cautions that this may, depending on the context, cause confusion of the issues and mislead the jury about the charged overlapping drug conspiracies. *See* Fed. R. Evid. 403. To the extent the Government seeks to admit co-conspirator statements based on one overarching conspiracy, doing so could potentially lead to unfair prejudice for Defendants who are charged with participating in only one conspiracy. *See id.*

Some statements may properly be in furtherance of both conspiracies, *see Adelekan*, 567 F. Supp. 3d at 466 (noting "[t]he touchstone" of the in furtherance requirement is that "the statement be designed to promote the accomplishment of the conspiracy's goals" (internal quotation marks and citations omitted)), however, if the Court finds that it is not sufficiently clear, the Court may properly exclude such statements, if offered against Mr. Cox, Mr. Jefferies, Mr. Turowski, and Mr. Frank Best, as "confusing the issues" and "misleading the jury." *See* Fed. R. Evid. 403.

The Court, however, cannot conclude at this time that such evidence will always be properly admissible or inadmissible and, therefore, will reserve judgment until trial so that the statements are placed in the appropriate factual context. *See Nat'l Union Fire Ins.*, 937 F. Supp. at 287.

When considering the admissibility of co-conspirator statements in the Second Circuit, courts, following *Geaney*, generally will conditionally admit co-conspirator statements during the Government's case-in-chief and then "determine, when all the evidence is in, whether . . . the prosecution has proved participation in the conspiracy, by the defendant against whom the hearsay is offered, by a fair preponderance of the evidence." *United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969). If the Court finds that the prosecution has not met its burden, it will "instruct the jury to disregard the hearsay" or declare a mistrial if the hearsay is a "large proportion of the proof" against the defendant. *Id.*; *see also United States v. Feola*, 651 F. Supp. 1068, 1129–30 (S.D.N.Y. 1987) ("[A] *Geaney* ruling . . . is provided only during trial, and relies for its basis on the facts adduced at trial, including evidence received subject to a motion to strike at the close of the Government's case.").

31

*Geaney* is the standard practice in the Second Circuit. *See United States v. Rowland*, No. 3:14-cr-79 (JBA), 2014 WL 3908115, at *1 (D. Conn. Aug. 11, 2014) (noting that district courts in this circuit "almost universally reject" requests for *James* hearings). Courts generally do not hold a *James* hearing because it would require the Court "to undertake a mini-trial, significantly prolonging the proceedings." *United States v. Smith*, No. 3:10-cr-148 (EBB), 2012 WL 2338707, at *1 (D. Conn. June 19, 2012). Here, the Court declines to hold a *James* hearing because, as noted above, there will be co-conspirator statements properly related to both conspiracies and a limiting instruction will address those that are limited to only certain defendants.

In order to assist the jury, the Court may include an instruction, to be given after the *Geaney* instruction and also as part of the post-trial jury instructions, that clarifies that statements made in furtherance of Count One may not be considered against Defendants only charged with Count Two and statements made in furtherance of Count Two may not be considered against Defendants only charged with Count One.

Accordingly, the portions of the [832], [837], [850], [851], [853], and [864] motions related to co-conspirator statements will be denied without prejudice for renewal consistent with this ruling.

### ii.  The Confrontation Clause and *Bruton* Doctrine

Mr. Turowski argues that his Sixth Amendment right to confrontation will be violated if his co-defendants' post-arrest statements are admitted against him and he does not have the opportunity to cross-examine them. Turowski Mot. Re: Post-Arrest Statements at 1–2. Mr. Cox similarly argues co-conspirator statements made to the cooperating source would violate his Sixth Amendment right to confrontation, should the co-conspirator not testify at trial. *See* Cox Mot. Re: Co-Conspirator Statements at 7–11.

The Government, in response, states that it does not anticipate introducing post-arrest statements made by Mr. Turowski and requests that the Court otherwise reserve ruling on these motions until this issue arises at trial. Aug. 2022 Gov't Opp'n at 17.

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the "right . . . to be confronted with the witnesses against him." U.S. Const. amend VI. "[W]itnesses," under the Confrontation Clause, are those "who bear testimony," which is defined as "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford v. Washington*, 541 U.S. 36, 51 (2004). To determine if a statement is testimonial, courts use the "primary purpose test," which requires that "the statement, viewed objectively in light of all the relevant circumstances, was made or procured with a primary purpose of 'creating an out-of-court substitute for trial testimony.'" *United States v. Bick*, 711 F. App'x 664, 666 (2d Cir. 2017) (quoting *Ohio v. Clark*, 576 U.S. 237, 245 (2015)). "Statements to individuals who are not law-enforcement officers 'are much less likely to be testimonial than statements to law enforcement officers.'" *Duhs v. Capra*, 639 F. App'x 691, 694 (2d Cir. 2016) (quoting *Clark*, 576 U.S. at 246).

Notably, *Bruton*, and the Confrontation Clause more broadly, applies only to hearsay and, therefore, because co-conspirator statements under Rule 801(d)(2)(E) are considered "not hearsay," any statements that meet the co-conspirator exception as discussed above do not create a *Bruton* issue. *See United States v. DeVillio*, 983 F.2d 1185, 1193–94 (2d Cir. 1993); *see also Bourjaily*, 483 U.S. at 183 (finding that there can be "no separate Confrontation Clause challenge to the admission of a co-conspirator's out-of-court statement").

To the extent certain statements are admitted as an exception to hearsay, there is only a Confrontation Clause issue if the statements are also testimonial. *See Crawford*, 541 U.S. at 61–

62. The Second Circuit has held that, under the "primary purpose test," "a declarant's awareness of his statement's possible future use at trial [is] part of the equation." *United States v. Burden*, 600 F.3d 204, 223 (2d Cir. 2010) (citing *Crawford*, 541 U.S. at 52).

Moreover, in situations where the declarant is unaware that he is being recorded by law enforcement, the declarant's statements are likely not testimonial. *See id.* at 224 (holding that "there is . . . no Confrontation Clause problem with respect to the statements on the [surreptitious] recording by anyone" unaware that the recording was being made); *see also Yaron v. United States*, 586 F. App'x 819, 921 (2d Cir. 2014) ("[N]either statements of the accused, nor of a confidential source, on a surreptitious recording, qualify as 'testimonial statements.'" (quoting *Burden*, 600 F.3 at 225)).

For statements made by defendants to the cooperating source where the defendants are not aware that the cooperating source is recording on behalf of the Government, the Court is unlikely to find that these statements are testimonial. *See Burden*, 600 F.3d at 224 ("[T]here is . . . no Confrontation Clause problem with respect to the statements on the [surreptitious] recording by anyone [unaware that the recording was being made].).[6]

However, because the Court has not reviewed the statements to be offered at trial, the Court cannot categorically find that such evidence will not create a *Bruton* issue and, therefore, will deny these motions without prejudice for renewal, should the Government seek to offer out-of-court testimonial statements made by a non-testifying defendant. *See Nat'l Union Fire Ins.*, 937 F. Supp. at 287.

---

[6] The Court notes that Mr. Turowski's post-arrest statements, to the extent they implicate any co-defendants, would likely be testimonial and therefore, would likely create a *Burton* issue. *See Bick*, 711 F. App'x at 666 (noting that "the statement, viewed objectively in light of all the relevant circumstances, was made or procured with a primary purpose of 'creating an out-of-court substitute for trial testimony." (quoting *Ohio v. Clark*, 576 U.S. 237, 245 (2015)). The Government has indicated that it does not plan to introduce this evidence against any Defendant and, to the extent Mr. Turowski wishes to use the post-arrest statements as part of his defense, he should advise the Court so that appropriate redactions can be made and/or a limiting instruction given.

Accordingly, the portions of the [850], [846], and [832] motions related to the *Bruton*

doctrine will be denied without prejudice for renewal consistent with this ruling.

### 4. Law Enforcement Testimony

#### i.   Scope of the Narcotics Expert's Testimony

The Government intends to offer a narcotics expert, Special Agent Sean Gordon of the

Federal Bureau of Investigation ("FBI") to testify about the common practices in the distribution

of controlled substances, such as typical wholesale and street retail prices, the manner in which

controlled substances are prepared and packaged, processing controlled substances for

distribution, and the organizational structure of drug trafficking operations, among other things.

*See* Aug. 2022 Gov't Opp'n at 17–19.

"Testimony is properly characterized as 'expert' only if it concerns matters that the

average juror is not capable of understanding on his or her own. *United States v. Mejia*, 545 F.3d

179, 194 (2d Cir. 2008); *see also United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991);

*United States v. Tapia-Ortiz*, 23 F.3d 738, 740 (2d Cir. 1994) (cautioning that expert testimony

relating to "the operations of narcotics dealers . . . should normally be used only for subjects that

have esoteric aspects reasonably perceived as beyond the ken of the jury" (internal quotation

marks omitted)).

Mr. Jefferies argues that many of the topics that Special Agent Gordon will testify about

are wholly irrelevant to the case and, in certain circumstances, unduly prejudicial. *See* Jefferies

Suppl. Mem. in Supp. Re: Expert Testimony at 2–5. More specifically, Mr. Jefferies argues that

expert testimony about "the jargon used by those involved in drug trafficking" may easily move

from "terms of art" to case-specific facts. *Id.* at 5–6. Mr. Jefferies requests that the Court exclude

the Government's narcotic's expert from testifying. *Id.* at 8. Mr. Thomas adopts Mr. Jefferies's

arguments. *See* Thomas Mot. Re: Evid. Issues at 14.

The Government responds that the "sophisticated practices of drug traffickers is beyond

the knowledge of the average juror" and similar narcotics expert testimony is properly allowed

under binding Second Circuit precedent. *See* Aug. 2022 Gov't Opp'n at 17–19 (citing *United*

*States v. Dukagjini*, 326 F.3d 45, 52 (2d Cir. 2003)).

During the pre-trial conference, the Government represented that the expert would testify

to widely known terms based on his background, the expert had not been shown materials from

this case, and the expert would not testify about idiosyncratic terms, such as "yams," which are

particular to this case. *See* Min. Entry, ECF No. 914 (Aug. 30, 2022).

"[T]he operations of narcotics dealers are a proper subject for expert testimony under

Fed. R. Evid. 702 . . . where the subject matter of the testimony is beyond the ken of the average

juror." *Mejia*, 545 F.3d at 191 (quoting *Castillo*, 924 F.2d at 1232). More specifically, experts

generally may testify about the meaning of words and phrases used by narcotics traffickers.

*United States v. Simmons*, 923 F.2d 934, 946 (2d Cir. 1991) ("Expert testimony in the field of

narcotics operations is often helpful to jurors 'who [are] likely unfamiliar with words and phrases

used by narcotics dealers to camouflage their activities.'" (quoting *United States v. Kusek*, 844

F.2d 942, 949 (2d Cir. 1988))); *United States v. Reddick*, 284 F. Supp. 3d 159 (D. Conn. 2018)

(allowing testimony to "the general practice of narcotics sellers and buyers to use coded

language and the meaning of common drug slang terms" (citing *Mejia*, 545 F.3d at 189)).

Expert testimony cannot "impermissibly mirror[] the testimony offered by fact

witnesses," *United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir. 1994), however, where the

testimony is not self-evident, such testimony can be particularly useful. *See Dukagjini*, 326 F.3d

at 52 (noting that expert testimony related to jargon is particularly relevant where part of the defendants' defense strategy was to emphasize that the language used could be interpreted to be innocuous). A narcotics expert may not provide "sweeping conclusions," but can "testify specifically about which drugs were involved." *Id.* at 53.

As this discussion underscores, the appropriateness of a narcotics expert's testimony is a highly fact-dependent inquiry and the Government represented that the expert will testify only to widely known terms. Therefore, the Court will deny these motions without prejudice for renewal, should the expert's testimony exceed the scope discussed in this order.

Accordingly, the portions of the [902], [864], [842], and [757] motions related to narcotics expert's testimony will be denied without prejudice for renewal consistent with this ruling.

### ii.  Lay Testimony[7]

Mr. Turowski moved to preclude officers or agents offered as lay witnesses from provided expert testimony. *See* Turowski Mot. Re: Lay Testimony.

"[T]he line between [a witness's] opinion and fact witness testimony is often hard to discern." *United States v. Feliciano*, 223 F.3d 102, 121 (2d Cir. 2000). Fed. R. Evid. 701 states that a lay witness may only offer an opinion that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." As a result, law enforcement fact witnesses may not offer opinion testimony based

---

[7] Mr. Turowski moved to exclude testimony from DEA Task Force Officers who might have testified to identifying Mr. Turowski solely through a surveillance video, rather than through personal observation of the underlying events. *See* Turowski Mot. Re: Task Force Officer Testimony. During the pre-trial conference, the Government represented that it does not intent to call a witness that would give such testimony. *See* Min. Entry, ECF No. 914 (Aug. 30, 2022). Instead, the Government intends to call an officer who personally witnessed Turowski while in the field. *Id.* Accordingly, the Court will deny the [854] motion without prejudice for renewal, should the Government offer improper testimony for this assertion.

on specialized knowledge. *See, e.g.*, *United States v. Kaplan*, 490 F.3d 110, 118 (2d Cir. 2007)

("[W]e have observed that . . . the 'not based on specialized knowledge' requirement requires

that 'a lay opinion must be the product of reasoning processes familiar to the average person in

everyday life.'" (quoting *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005)).

The Government indicated in its written response and during the pre-trial conference that

it does not intend to "elicit expert testimony from law enforcement officers called as fact

witnesses." *See* Aug. 2022 Gov't Opp'n at 20; Min. Entry, ECF No. 914 (Aug. 30, 2022).

Accordingly, the Court will deny the [847] motion without prejudice for renewal, should

the law enforcement testimony move beyond proper fact witness scope.

### iii. Officer Christopher Martin

The Government requests that the Court exclude statements and evidence about the

corruption allegations against former Bridgeport police officer Christopher Martin because the

Government's case does not rely on Officer Martin and therefore, his corruption is not relevant

to the case. *See* Gov't Mot. Re: Officer Martin at 1.

Several defendants urge the Court not to exclude all references to the corruption

allegations against Officer Martin and, instead reserve ruling on this issue until it becomes

relevant to Defendant's cross-examination of witnesses at trial. *See* Def. Thomas' Resp. to Gov't

Mot. in Limine at 1–2, ECF No. 904 (Aug. 27, 2022) (noting that Officer Martin "was the author

of numerous affidavits us[ed] to obtain Title III wiretaps; . . . was the affiant on the defendants' arrest

warrant affidavit; . . . testified before the grand jury; and . . . obtained search warrants for analysis of

cell phones seized during the investigation" and, therefore, "there could be a need to introduce

[Officer] Martin's testimony should other Government witnesses offer contradictory

testimony"); *see also* Resp. by Def. Jefferies to Gov't Mot. in Limine, ECF No. 894 (Aug. 25,

2022); Def. Wallace Best's Resp. to Gov't Mot. in Limine, ECF No. 890 (Aug. 25, 2022); Def. Turowski's Obj. to Gov't Mot. in Limine, ECF No. 880 (Aug. 22, 2022).

The Court agrees.

Defendants' arguments are well-taken, particularly in light of the Defendants' Sixth Amendment right to cross-examine witnesses, and therefore, the Court will defer ruling on this issue. *See United States v. Weiss*, 930 F.2d 185, 197 (2d Cir. 1991) ("The Sixth Amendment guarantees an accused the right 'to be confronted with the witnesses against him,' and the right to cross-examination has been held to be an essential purpose of the Confrontation Clause." (quoting *Davis v. Alaska*, 415 U.S. 308, 315 (1974))). If defense counsel believes Officer Martin will come up during a particular witnesses' testimony, counsel should inform the Court before the witness takes the stand, so the issue may be addressed outside the presence of the jury.

Accordingly, the Court will reserve judgment on the [858] motion *in limine* until it has the specific context for defense counsel's potential impeachment on this topic.

### iv.  Cross-Examination and Entrapment

On August 19, 2022, Mr. Wallace Best filed a notice seeking clarification about the proper scope of cross-examination. *See* Wallace Best Notice Re: Cross Examination at 1–5. Mr. Wallace Best's counsel intends to cross-examine the cooperating source and certain DEA agents in order to solicit potential answers that may imply Mr. Wallace Best was lured into the conspiracy by a Government agent and expressed concern about whether this would "open the door" to evidence of Mr. Wallace Best's prior criminal conduct, as it would if he were asserting an entrapment defense. *Id.*

The Government, in response, argues that such questioning is inappropriate as it would insert the prosecutor into the case and, if allowed, constitutes an entrapment defense such that the

Government could, in turn, offer evidence of Mr. Wallace Best's propensity to commit the crime at issue. *See* Aug. 2022 Gov't Opp'n at 1.

The Court disagrees, in part.

Defense counsel has repeatedly stated that he does not intend to argue entrapment as a defense. *See* Wallace Best Notice Re: Cross Examination; Min. Entry, ECF No. 914 (Aug. 30, 2022) (pre-trial conference).

Additionally, Mr. Wallace Best's counsel's intended purpose, to use cross-examination of the cooperating source to attempt to establish that Mr. Wallace Best was not part of the conspiracy, is acceptable cross-examination. *See United States v. Hurtado*, 47 F.3d 577, 586 (2d Cir. 1995) (stating that defendant "could not be convicted if the conspiracy consisted solely of agents and informants"); *see also United States v. Medina*, 32 F.3d 40, 44 (2d Cir. 1994) ("Although a person acting as an agent of the government cannot be a co-conspirator, the presence of a government agent does not destroy a conspiracy in which at least two other private individuals have agreed to engage in an unlawful venture." (quoting *United States v. Mirando-Ortiz*, 926 F.2d 172, 175 (2d Cir. 1991))); *United States v. Goldberg*, 756 F.2d 949, 958 (2d Cir. 1985) ("[W]hile a person acting as an agent of the government cannot be a coconspirator, . . . the presence of such an agent does not destroy a conspiracy in which at least two other private individuals have agreed to engage in an unlawful venture, . . . and defendants may be convicted of conspiracy even if, unbeknownst to them, the substantive crime would never have been committed because the person the coconspirators thought would commit it was actually an agent of the government." (internal quotation marks and citations omitted)).

As a result, the Court will not be instructing the jury on an entrapment defense and the Government is not per se permitted to introduce evidence of propensity if defense counsel does

pursue this line of questioning.[8] Defense counsel, however, is cautioned from pursuing a line of questioning beyond the bounds of the purpose noted above. The Government's argument that the jury should not weigh in on the prosecutor's opinion on the status of the investigation is well taken and, based on the above analysis, likely goes beyond the scope of showing that Mr. Wallace Best may have been lured into the conspiracy.

## IV.    CONCLUSION

For the foregoing reasons, the [832], [837], [850], [851], [853], and [864] motions as they relate to co-conspirator statements, the [850], [846], and [832] motions as they relate to the *Bruton* doctrine, the [902], [864], [842], and [757] motions as they relate to the narcotics expert's testimony, the [854] motion, the [847] motion, the [858] motion are **DENIED without prejudice** to renewal at trial.

The [877] and [852] motions are **DENIED**.

The [514], [836], [864], and [886] motions, as they related to Section 851, and the [845] motion, are **DENIED as moot**.

The Court will reserve judgment on the [886], [864], [848], [844], [835], [758], [514], [513], and [512] motions as they relate to prior acts evidence, and the [859], [841], and [767] motions as they relate to the cooperating source's PSR and CJA-23 until the Court conducts *in camera* review.

**SO ORDERED** at Bridgeport, Connecticut, this 2nd day of September, 2022.

  /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge

---

[8] The Court is aware of and notes the most recent filing of the Government, which vigorously argues for the inclusion of an entrapment defense and the inclusion of prior bad acts as evidence in order to address the predisposition prong of this defense. *See* Notice, ECF No. 925 (Aug. 31, 2022). Notwithstanding this filing – which surprisingly, does not address caselaw seemingly more on point with respect to a proper defense to a conspiracy charge – the Court will reserve judgment as discussed above and below,