UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>WALLACE BEST,<br>JEFFREY THOMAS,<br>JASON COX,<br>FRANK BEST,<br>TOMASZ TUROWSKI, and<br>LAMONT JEFFERIES | No. 3:20-cr-28 (VAB) |

**RULING AND ORDER ON MOTIONS FOR DISCLOSURE OF CONFIDENTIAL SOURCE MATERIALS**

Wallace Best, Jeffrey Thomas, Jason Cox, Frank Jamont Best, Tomasz Turowski, and Lamont Jefferies (collectively, the "Defendants")[1] have been charged in a multi-count Superseding Indictment with crimes related to the possession and distribution of narcotics. *See* Third Superseding Indictment, ECF No. 387 (Mar. 29, 2021) ("Third Superseding Indictment").

As discussed in the Court's prior order, *see* Order, ECF No. 936 (Sept. 2, 2022) ("Order Regarding Pretrial Mots."), the Court agreed to conduct an *in camera* review of the confidential source's presentence investigation report and CJA-23, *id.* at 23–24.

The Government has provided the Court with the confidential source's presentence investigation report and other related information that the Government filed on behalf of this

---

[1] Six other individuals, Oscar Garcia-Hernandez, Gustavo Gonzalez-Yanez, David Azarias Morales-Verdugo, Jesus Mendez, Oscar Zavala, and Constantino Acosta-Banda, were originally charged but have since pled guilty or are not available for trial. *See* Plea Agreement, ECF No. 739 (Feb. 16, 2022) (Jesus Mendez); Plea Agreement, ECF No. 358 (Mar. 4, 2021) (Constantino Acosta-Banda); Plea Agreement, ECF No. 348 (Feb. 23, 2021) (Oscar Zavala); Plea Agreement, ECF No. 883 (Aug. 23, 2022) (Gustavo Gonzalez-Yanez).

1

confidential source. After reviewing these materials, the Court has concluded that certain portions of these materials are exculpatory and impeachment evidence under *Brady v. Maryland,* 83 S. Ct. 1194 (1963) and its progeny, including *Giglio v. United States,* 92 S. Ct. 763 (1972), and therefore, must be disclosed to Defendants.

Accordingly, the Court will order the release of a redacted version of the materials revealing this information, as well as order the Government to produce immediately any related underlying information the Government possesses about the confidential source's drug-related ties to Mexico, unless the Court is satisfied at the upcoming September 23, 2022 hearing, that counsel for Defendants are aware of all of the information intended to be produced under this Order.

Separately, and under seal for review by the Government only – until the currently scheduled September 23, 2022 hearing – the Court will provide this redacted information, which includes references only to pertinent information and attempts to minimize disclosure of any personal information that could put the confidential source and his family at risk.

At the September 23, 2022 hearing, the Court will discuss with the Government any remaining issues related to this information's disclosure, as well as the availability of any additional related, and any underlying information the Government possesses about the confidential source's drug-related ties to Mexico.

Following the September 23, 2022 hearing, the Government should be prepared to produce immediately this additional information, to the extent any exists, and in no event, **no later than 5:00 p.m. on September 23, 2022**, if the Court so orders.

I.      FACTUAL AND PROCEDURAL BACKGROUND

This case involves an alleged drug trafficking conspiracy that allegedly operated in the North End neighborhood of Bridgeport, Connecticut resulting in the indictment of twelve defendants, including the defendants named below. *See United States v. Best*, No. 20-CR-28 (VAB). The Court assumes the parties' familiarity with the factual and procedural background, and focuses only on the motions related to disclosure of information about the confidential source.

In advance of trial, several Defendants filed motions to disclose certain materials related to a prior prosecution of the confidential source. *See* Def.'s Mot. for Disclosure, ECF No. 767 (Apr. 22, 2022) ("Wallace Best's Mot. for Disclosure"); Def. Frank Best's Mot. for Disclosure, ECF No. 841 (Aug. 14, 2022) ("Frank Best's Mot. for Disclosure"); Def.'s Not. Re: Request for Ltd. Disc., ECF No. 868 (Aug. 19, 2022) ("Wallace Best's Request for Ltd. Disc.").

The Government also filed a motion *in limine* to preclude or limit disclosure of these materials. *See* Gov't Mot. Regarding Confidential Source's Presentence Investigation Report, ECF No. 859 (Aug. 15, 2022) ("Gov't Mot. in Limine"). Mr. Wallace Best and Mr. Thomas responded to the Government's motion *in limine*, arguing that these materials are relevant to impeach the confidential source, should he testify at trial. *See* Def. Wallace Best's Resp. to Gov'ts Mot. Re: CS's PSR, ECF No. 889 (Aug. 25, 2022) ("Wallace Best's Opp'n"); Def. Thomas' Resp. to Gov't Mot. Regarding CS's PSR at 1, ECF No. 903 (Aug. 27, 2022) ("Thomas's Opp'n").

On August 30, 2022, the Court held a pretrial conference, during which time the parties were given additional opportunity to argue about the pending evidentiary motions. *See* Min. Entry, ECF No. 914 (Aug. 30, 2022).

After considering the parties' written and oral arguments on the issue, the Court agreed to conduct an *in camera* review of the confidential source's presentence investigation report and CJA-23. Order Regarding Pretrial Mots. at 23–24.

On September 19, 2022, the Government provided the Court with the confidential source's presentence investigation report and other related information.

## II. STANDARD OF REVIEW

The Supreme Court's decisions in *Brady* and *Giglio*, require that:

> To the extent that the prosecutor knows of material evidence favorable to the defendant in a criminal prosecution, the government has a due process obligation to disclose that evidence to the defendant. . . . Information coming within the scope of this principle . . . includes not only evidence that is exculpatory, *i.e.,* going to the heart of the defendant's guilt or innocence, but also evidence that is useful for impeachment, *i.e.,* having the potential to alter the jury's assessment of the credibility of a significant prosecution witness.

*United States v. Calhelha*, 456 F. Supp. 2d 350, 367 (D. Conn. 2006) (quoting *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (internal citations omitted)). Accordingly, "[d]ocuments that the Government has reviewed or has access to must be provided to aid a defendant in preparing his defense." *Giffen*, 379 F. Supp. 2d at 343. The Government need not, however, "produce documents from agencies that did not participate in the investigation of the defendant or documents of which it is unaware." *Id.* (citing *Avellino*, 136 F.3d at 255); *see also Calhelha*, 456 F. Supp. 2d at 367 (citing the same).

## II. DISCUSSION

On September 19, 2022, the Government provided the Court with the presentence investigation report and other related information regarding the confidential source.[2] The

---

[2] Along with the *in camera* submission, the Government provided a brief cover letter summarizing its position regarding any further disclosures, which the Court describes, in sum, below.

Government argues that the presentence investigation report should not be disclosed because it is cumulative of information already provided to Defendants, and disclosure would endanger the confidential source, his family, and his colleagues.

The Government also argues that the other related information should not be disclosed because the confidential source's prior cooperation has put him and his family in danger before, and that the fact of the confidential source's prior cooperation and related benefits have been disclosed, but not the substance of his cooperation. The Government argues this level of disclosure is sufficient.

The Court disagrees.

The Supreme Court's decisions in *Brady* and *Giglio* and subsequent application of this caselaw require disclosure of a sealed document where "there is a compelling need for disclosure to meet the ends of justice." *United States v. Moore*, 949 F.2d 68, 72 (2d Cir. 1991) (stating that, for a sealed presentence investigation report, the court should "determine if there are any statements . . . that contain exculpatory or impeachment material" and, if such material exists, the statements should be disclosed if "there is a compelling need for disclosure to meet the ends of justice" (internal quotation marks and citations omitted)). "Presumably, exculpatory material would usually meet that test unless the defendant already possessed that information." *Id.*; *see also Jamison v. Greiner*, No. 02-cv-1351 (JWB), 03-MISC-0066 (JBW), 2003 WL 22956951, at *5–6 (E.D.N.Y. Oct. 21, 2003) (finding victim's prior inconsistent statements that were included in Jamison's co-defendant's presentence investigation report were exculpatory and impeachment evidence and therefore "[n]one of the inconsistent statements were entitled to protection against disclosure").

5

Courts in this Circuit have considered evidence related to a witness's cooperation with the Government to be exculpatory or related to impeachment if the evidence is relevant to the Government's ability to prove an element of the crime, there is a question of whether the defendant was induced by the Government to engage in the criminal activities, or if there is particularly high impeachment value. *Compare Cardoso v. United States*, 642 F. Supp. 2d 251, 261–64 (S.D.N.Y. July 29, 2002) (finding Government's failure to disclose evidence of cooperating witness's narcotics trafficking and potentially untruthful statements constituted *Brady* and *Giglio* material that prejudiced Cardoso's sentencing because "the trial testimony of [the cooperating witness] . . . was the only direct evidence . . . that Petitioner was a (3-level) supervisor" and due to "the nature and breadth of the impeachment evidence," Cardoso "put forth a reasonable probability that the Court would not have so relied on [the cooperating witness's] trial testimony" during sentencing (internal quotation marks and citations omitted)); *with United States v. Madori*, 419 F.3d 159, 169–170 (2d Cir. 2005) (finding evidence concerning co-defendant's cooperation with the government was immaterial and therefore not a *Brady* violation because "nothing about [the co-defendant's] status as a government cooperator was remotely relevant to any effort to exculpate [the defendant] of any of the elements of [the charged crime]" and the defendant "made no showing of any inducement by the government to engage in these illegal activities" (internal quotation marks omitted)).

Here, Defendants charged in the Count One conspiracy are alleged to have arranged two transactions of kilogram-quantities of drugs from Mexican drug dealers, with the help of the confidential source. *See* Gov't Pretrial Mem. at 5–6, ECF No. 857 (Aug. 15, 2022) ("Gov't Pretrial Mem."); Third Superseding Indictment. The Government alleges that Defendants charged in Count One arranged these two transactions, which occurred in San Diego, California,

6

through Mr. Thomas's connections to narcotics traffickers in California and Mr. Cox's "drug connect," Mr. Garcia-Hernandez, a.k.a "Psych." *See* Gov't Pretrial Mem. at 5–6; *see also* Gov't Ex. 249T[3] (Mr. Wallace Best telling the confidential source that his "brother" "befriended a . . . bunch of [Mexicans]" while in California); Gov't Ex. 258 at 12 (Mr. Wallace Best stating that "my brother's friend" is "constantly [in] contact with that person" referring to an unnamed person from Mexico).

In contrast, the Defendants charged in Count One intend to argue that they did not actually agree to become members of the conspiracy because they did not provide monetary investment, did not receive the drugs, and did not expect to receive the drugs. *See* Defs.' Proposed Opening Statement at 2, ECF No. 938 (Sept. 2, 2022).

The Court's *in camera* review of the presentence investigation report and related documentation reveals that the confidential source has had extensive ties to individuals from Mexico, Colombia, and throughout Latin America, who were involved with transporting immense quantities of drugs into the United States. And that the DEA, on multiple occasions, was able to seize massive quantities of drugs based on the confidential source's contacts and cooperation in these various locations, in particular, the country of Mexico.

Several of the Government's exhibits already show that the confidential source has significant knowledge of international drug transactions, particularly through Southern California and Mexico. *See* Gov't Ex. 258 at 12 (Confidential source noting that "[t]hey're gonna give us southern California numbers"); *id.* (Confidential source stating that "my friends are doing it so I can just piggyback off of them"); Gov't Ex. 254 at 6–7 (Confidential source stating "I've been . .

---

[3] The Court is aware that some of the exhibits referenced in this Order are contested and may or may not ultimately be admissible. *See, e.g.*, Def. Thomas' Mot. in Limine Re: Evid. Issues at 8–12, ECF No. 864 (Aug. 15, 2022). Any statements about the exhibits cited in this Order should not be construed as an opinion concerning the admissibility of this evidence.

7

. to Mexico," stating that he could "tell who [someone] is by what group" because the cartels have "territory," asking if the person was in the "Sinaloa" cartel, and stating "in Sinaloa, they got fields" of drugs); *id.* at 8 (Confidential source stating "[y]ou couldn't even walk in [to Sinaloa] with your phone. They give you a phone"); *id.* at 12 (Confidential source, in response to Mr. Wallace Best asking the price, stating "[i]n DR [cocaine is] nine, it depends how close to the border too cause uh . . . if you go like southern Mexico, like Michoacan . . . [i]t's probably like, I'd say like seven, six but like up on the border it's probably like eleven"); *id.* at 15 (Confidential source stating "you can make heroin in Mexico; they don't make it in DR, you understand?"). But, while these exhibits might put Defendants on notice that the confidential source had drug-related contacts in Latin America, they do not appear to reveal the depth and breadth of the confidential source's relationships and the corresponding drug quantities.

Also, while the Government has alleged that Defendants' contacts with individuals associated with drug dealers from Mexico moved the transactions forward, rather than certain Defendants' physical presence at or significant monetary investment in the transactions, evidence that the confidential source had his own contacts with drug dealers from Mexico involving substantial quantities of drugs on multiple occasions is highly probative of the alleged role, if any, of the Defendants now on trial, in the alleged conspiracy. *See United States v. Garibaldi*, No. 99-1558, 2000 WL 340402, at *3 (2d Cir. 2000) ("[T]he government must demonstrate that there was an agreement between two or more participants (other than a government agent) to achieve a particular illegal end." (first citing *United States v. Atehortva*, 17 F.3d 546, 550 (2d Cir. 1994); and then citing *United States v. Miranda-Ortiz*, 926 F.2d 172, 175 (2d Cir. 1991)); *but see United States v. Valencia*, 226 F. Supp. 2d 503, 511–12 (S.D.N.Y. 2002) (denying motion to set aside conviction of narcotics conspiracy where the defendant sold drugs to

government cooperator because evidence established that the defendant conspired with others, including suppliers), *aff'd*, 100 F. App'x 17 (2d Cir. 2004).

Additionally, the Government intends to have the confidential source testify on its behalf, presumably concerning his participation in the two large drug transactions that occurred in San Diego, California. *See* Gov't Proposed Witness List, ECF No. 913 (Aug. 30, 2022). To the extent that the confidential source testifies that he needed Defendants' alleged Mexican drug contacts to facilitate these transactions or that he would not have been able to coordinate these transactions without Defendants' assistance, the currently undisclosed information is probative of the confidential source's credibility as to this point, given the confidential source's own contacts with illegal drug activity out of Mexico, because, given the "nature and breadth of the impeachment evidence" there is "a 'reasonable probability' that [the jury] would not . . . rel[y] on [the confidential source's] trial testimony." *See Cardoso*, 642 F. Supp. 2d at 263.

Finally, the confidential source's Latin American drug connections, particularly those in Mexico, also are relevant to the quantities of drugs for which the Government alleges the Count One co-conspirators are responsible. *See* Third Superseding Indictment at 2. The confidential source's past cooperation directly led to multiple seizures of large quantities of drugs. To the extent that the confidential source was Mr. Wallace Best and Mr. Frank Best's supplier of heroin[4], and previously negotiated with Mexican drug dealers to engage in high-quantity drug transactions, there is an issue in this case as to whether any of the charged Defendants agreed to the specific drug transactions alleged in Count One (as well as their alleged quantities) with

---

[4] Notably, the confidential source allegedly had a "longstanding" relationship with Mr. Wallace Best, had been supplying Mr. Wallace Best with heroin, and was "one of [the] main heroin sources" for Mr. Frank Best. Gov't Pretrial Mem. at 5–6; *see also* Gov't Ex. 258 at 12 (Mr. Wallace Best asking the confidential source "where you think you can get some" and the confidential source stating that he would get "what [they] were doing lately").

9

someone other than the confidential source, because "a person acting as an agent of the government cannot be a coconspirator." *See Miranda-Ortiz*, 926 F.2d at 175; *see also id.* ("Since the essence of any conspiracy is agreement, rather than the success of the venture, a defendant may be convicted of conspiracy even if the intended substantive crime could not occur because the person he and his coconspirators thought would participate in it was actually an agent of the government.") (citations omitted).

Accordingly, the Court will order the release of a redacted version of materials revealing this information, as well as order the Government to produce immediately any related underlying information the Government possesses about the confidential source's drug-related ties to Mexico, unless the Court is satisfied at the upcoming September 23, 2022 hearing that counsel for the Defendants is aware of all of the information intended to be produced under this Order.

### III.  CONCLUSION

Accordingly, for the foregoing reasons, the Court will order the release of a redacted version of materials revealing this information, as well as order the Government to produce immediately any related underlying information the Government possesses about the confidential source's drug-related ties to Mexico, unless the Court is satisfied at the upcoming September 23, 2022 hearing, that counsel for the Defendants is aware of all of the information intended to be produced under this Order.

Separately, and under seal for review by the Government only – until the currently scheduled September 23, 2022 hearing – the Court will provide this redacted information, which includes references only to pertinent information and attempts to minimize disclosure of any personal information that could put the confidential source and his family at risk. At the September 23, 2022 hearing, the Court will discuss with the Government any remaining issues

related to this information's disclosure, as well as the availability of any additional related, and any underlying information the Government possesses about the confidential source's drug-related ties to Mexico.

Following the September 23, 2022 hearing, the Government should be prepared to produce immediately this additional information, to the extent any exists, and in no event, **no later than 5:00 p.m. on September 23, 2022**, if the Court so orders.

**SO ORDERED** at Bridgeport, Connecticut, this 22nd day of September, 2022.

                                                             /s/ Victor A. Bolden
                                                             Victor A. Bolden
                                                             United States District Judge