# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,
*Plaintiff*,

v.

WALLACE BEST,
JEFFREY THOMAS,
JASON COX,
FRANK BEST,
TOMASZ TUROWSKI, and
LAMONT JEFFERIES,
*Defendants.*

No. 3:20-cr-00028 (VAB)

## RULING AND ORDER ON POST-TRIAL MOTIONS

Wallace Best, Jeffrey Thomas, Jason Cox, Frank Jamont Best, Tomasz Turowski, and

Lamont Jefferies (collectively, the "Defendants")[1] have been charged in a multi-count

Superseding Indictment with crimes related to the possession and distribution of narcotics. *See*

Third Superseding Indictment, ECF No. 387 (Mar. 29, 2021) ("Third Superseding Indictment").

After thirteen days of the Government presenting its case-in-chief, each of the

Defendants moved for acquittal.

On October 7, 2022, Mr. Turowski filed a written motion for acquittal on Counts Two

and Eight. *See* Mot. for Acquittal, ECF No. 1017 (Oct. 7, 2022) ("Turowski Mot. for Acquittal").

On October 10, 2022, Mr. Thomas filed a written motion for acquittal on Counts One

and Two. *See* Mot. for Acquittal, ECF No. 1020 (Oct. 10, 2022) ("Thomas Mot. for Acquittal").

---

[1] Six other individuals, Oscar Garcia-Hernandez, Gustavo Gonzalez-Yanez, David Azarias Morales-Verdugo, Jesus Mendez, Oscar Zavala, and Constantino Acosta-Banda, were originally charged but have since pled guilty or are not available for trial. *See* Plea Agreement, ECF No. 739 (Feb. 16, 2022) (Jesus Mendez); Plea Agreement, ECF No. 358 (Mar. 4, 2021) (Constantino Acosta-Banda); Plea Agreement, ECF No. 348 (Feb. 23, 2021) (Oscar Zavala); Plea Agreement, ECF No. 883 (Aug. 23, 2022) (Gustavo Gonzalez-Yanez).

During an October 11, 2022 hearing, Mr. Wallace Best moved for acquittal on Counts One and Two, Mr. Cox moved for acquittal on Count One, Mr. Frank Best moved for acquittal on Count Two, and Mr. Jefferies moved for acquittal on Count Two. The Government opposed each of these motions orally.

Additionally, on October 10, 2022, the Government moved for the admission of certain co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E). *See* Gov't Mot. for Order Re: Admissibility of Gov't Exs., ECF No. 1018 (Oct. 10, 2022) ("Gov't Mot."). Mr. Thomas filed a written response to this motion. *See* Thomas Resp. to Gov't Mot. for Order, ECF No. 1021 (Oct. 10, 2022) ("Thomas Opp'n"). During the October 11, 2022 hearing, the remaining Defendants orally opposed the Government's motion on various bases.

For the following reasons, the Court **GRANTS** Mr. Turowski's motion for acquittal as to Counts Two and Eight.

The Court also **GRANTS** Mr. Wallace Best, Mr. Thomas, and Mr. Frank Best's motions for acquittal as to the quantity alleged in Count Two.

The Court **DENIES** the remaining motions for acquittal as to Count Two, and reserves judgment on the motion for acquittal as to Count One.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Pre-Trial Case History

#### a.   Wallace Best

On February 11, 2020, federal law enforcement authorities arrested Mr. Wallace Best, following the issuance of an arrest warrant on February 7, 2020. *See* Arrest Warrant, ECF No. 2 (Feb. 7, 2020).

On February 19, 2020, a grand jury returned an Indictment charging Mr. Wallace Best with Conspiracy to Distribute and to Possess with Intent to Distribute Heroin and Fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(i) and (vi). *See* Indictment, ECF No. 13 (Feb. 19, 2020).

On June 18, 2020, Mr. Wallace Best appeared for an arraignment before Magistrate Judge Sarah A.L. Merriam. *See* Min. Entry, ECF No. 107 (June 18, 2020). He pled not guilty. *Id.*

On October 5, 2020, a grand jury returned a Superseding Indictment charging Mr. Wallace Best with an additional count of Conspiracy to Distribute and to Possess with Intent to Distribute Heroin and Cocaine Base/Crack Cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. *See* Sealed Superseding Indictment, ECF No. 169 (Oct. 5, 2020); *see also* Sealed Second Superseding Indictment, ECF No. 372 (Mar. 15, 2021) ("Second Superseding Indictment") (charging the same); Third Superseding Indictment (charging the same). The Superseding Indictment further provided information under 21 U.S.C. § 851 that Mr. Wallace Best is subject to enhanced penalties, as he has been previously convicted of a serious drug felony. Sealed Superseding Indictment, ECF No. 169 (Oct. 5, 2020).

On May 11, 2021, Mr. Wallace Best again appeared for an arraignment before Magistrate Judge Merriam. *See* Min. Entry, ECF No. 446 (May 11, 2021). He pled not guilty as to all counts. *Id.*

### b.  Jeffrey Thomas

On February 10, 2020, federal law enforcement authorities arrested Jeffrey Thomas on a criminal complaint. *See* Arrest Warrant, ECF No. 2 (Feb. 7, 2020).

On February 19, 2020, a grand jury returned an indictment charging Mr. Thomas and others with Conspiracy to Distribute and to Possess with Intent to Distribute Heroin and

Fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). *See* Indictment.

On June 18, 2020, Mr. Thomas appeared before Magistrate Judge William I. Garfinkel for an arraignment. *See* Min. Entry, ECF No. 106 (June 18, 2020). He pled not guilty. *Id*.

On October 5, 2020, the grand jury returned a Superseding Indictment charging Jeffrey Thomas with an additional count of Conspiracy to Distribute and to Possess with Intent to Distribute Heroin and Cocaine Base/Crack Cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. *See* Superseding Indictment; *see also* Second Superseding Indictment (charging the same); Third Superseding Indictment (charging the same).

On May 10, 2021, Mr. Thomas appeared before Magistrate Judge Sarah A. L. Merriam for a second arraignment on the charges in the Superseding Indictment. Min. Entry, ECF No. 437 (May 10, 2021). He pled not guilty to all counts. *Id*.

### c. Jason Cox

On February 7, 2020, a criminal complaint and arrest warrant issued against Jason Cox. *See* Compl., ECF No. 1 (Feb. 7, 2020); Arrest Warrant, ECF No. 2 (Feb. 7, 2021). Following an initial appearance, at which the Court appointed Frank L. O'Reilly as counsel, the Court ordered Mr. Cox to be held in pretrial detention. *See* Min. Entry, ECF No. 7 (Feb. 11, 2020).

On February 19, 2020, a grand jury returned an Indictment charging Mr. Cox with Conspiracy to Distribute and to Possess with Intent to Distribute Heroin and Fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(i) and (vi). *See* Indictment, ECF No. 13 (Feb. 19, 2020); *see also* Second Superseding Indictment (charging the same); Third Superseding Indictment (charging the same). The Indictment further provided information under 21 U.S.C. § 851 that Mr. Cox is subject to enhanced penalties, as he has been convicted previously of a serious drug felony.

On August 24, 2020, Mr. Cox appeared for an arraignment before Judge Victor A. Bolden. *See* Min. Entry, ECF No. 157 (Aug. 24, 2020). He pled not guilty. *Id.*; *see also* Min. Entry, ECF No. 490 (June 2, 2021) (not guilty plea before Magistrate Judge Sarah A. L. Merriam).

### d. Frank Best

On October 5, 2020, a grand jury indicted Mr. Frank Best. *See* Superseding Indictment. The Superseding Indictment charges Mr. Frank Best with one count of Conspiracy to Distribute and to Possess with Intent to Distribute Heroin and Fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(i) and (vi); three counts of Possession with Intent to Distribute and Distribution of Heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); one count of Possession with Intent to Distribute and Distribution of Fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and one count of Possession with Intent to Distribute and Distribution of Heroin and Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). *Id.*; *see also* Second Superseding Indictment (charging the same); Third Superseding Indictment (charging the same).

On September 30, 2020, Mr. Frank Best appeared for an arraignment before Magistrate Judge William I. Garfinkel. *See* Min. Entry, ECF No. 6 (Sept. 30, 2020). He pled not guilty as to all counts. *Id.*

### e. Tomasz Turowski

On October 5, 2020, a grand jury also indicted Mr. Turowski. *See* Superseding Indictment. The Superseding Indictment charges Mr. Turowski with two counts: (1) Conspiracy to Distribute and to Possess with Intent to Distribute Heroin and Cocaine Base/Crack Cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846; and (2) Use of a Telephone to

Facilitate a Narcotics Conspiracy under 21 U.S.C. § 843(b). *Id.*; *see also* Second Superseding Indictment (charging the same); Third Superseding Indictment (charging the same).

On October 19, 2020, Mr. Turowski appeared for an arraignment before Magistrate Judge William I. Garfinkel. *See* Min. Entry, ECF No. 189 (Oct. 19, 2020). He pled not guilty as to all counts. *Id.*; *see also* Min. Entry, ECF No. 455 (May 13, 2021) (not guilty plea).

On May 24, 2021, Mr. Turowski moved for a court order directing the Government to provide a bill of particulars. *See* Def. Turowski's Mot. for Bill of Particulars, ECF No. 473 (May 24, 2021). The Government opposed the motion. *See* Aug. 2022 Gov't Opp'n. During the final pre-trial conference, Mr. Turowski's counsel indicated that he did not intend to pursue this motion. *See* Min. Entry, ECF No. 914 (Aug. 30, 2022). On August 30, 2022, the Court issued an Order denying this motion. *See* Order, ECF No. 923 (Aug. 30, 2022).

### f.   Lamont Jefferies

On March 15, 2021, a grand jury indicted Mr. Jefferies. *See* Second Superseding Indictment; Third Superseding Indictment (charging the same). The Government has charged Mr. Jefferies with one count of Conspiracy to Distribute and to Possess with Intent to Distribute Heroin and Fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(i) and (vi). *See* Second Superseding Indictment; Third Superseding Indictment (charging the same).

On March 31, 2021, Mr. Jefferies appeared for an arraignment before Judge Dave Vatti. *See* Min. Entry, ECF No. 390 (Mar. 31, 2021). He pled not guilty. *Id.*

March 11, 2022, Mr. Jefferies filed a motion for a bill of particulars. *See* Mot. for Bill of Particulars, ECF No. 756 (Mar. 11, 2022). The Government opposed this motion. *See* Aug. 2022 Gov't Opp'n. On August 30, 2022, the Court denied this motion without prejudice for renewal. *See* Order, ECF No. 923.

**B.     Trial Proceedings**

Jury selection took place over the course of September 7, 2022 and September 8, 2022. Min. Entry, ECF No. 961 (Sept. 7, 2022); Min. Entry, ECF No. 962 (Sept. 8, 2022). Trial began on September 12, 2022. Min. Entry, ECF No. 965 (Sept. 12, 2022).

The Government presented its case-in-chief over the course of thirteen days. *See, e.g.*, Min. Entry, ECF No. 965 (Sept. 12, 2022); Min. Entry, ECF No. 967 (Sept. 13, 2022); Min. Entry, ECF No. 969 (Sept. 14, 2022); Min Entry, ECF No. 970 (Sept. 14, 2022); Min Entry, ECF No. 981 (Sept. 16, 2022); Min. Entry, ECF No. 1011 (Sept. 27, 2022); Min. Entry, ECF No. 1012 (Sept. 28, 2022); Min. Entry, ECF No. 1015 (Sept. 29, 2022).

On October 7, 2022, the Government rested.

On October 7, 2022, Mr. Turowski filed a written motion for acquittal on Counts Two and Eight. *See* Turowski Mot. for Acquittal.

On October 10, 2022, Mr. Thomas filed a written motion for acquittal on Counts One and Two. *See* Thomas Mot. for Acquittal.

During an October 11, 2022 hearing, Mr. Wallace Best moved for acquittal on Counts One and Two, Mr. Cox moved for acquittal on Count One, Mr. Frank Best moved for acquittal on Count Two, and Mr. Jefferies moved for acquittal on Count Two. The Government opposed each of these motions orally.

Additionally, on October 10, 2022, the Government moved for the admission of certain co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E). *See* Gov't Mot. Mr. Thomas filed a written response to this motion. *See* Thomas Opp'n. During the October 11, 2022 hearing, the remaining Defendants orally opposed the Government's motion on various bases.

Defendants have not yet presented their defense case, if any.

## II.    STANDARD OF REVIEW

When reviewing a judgment of acquittal, courts must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

"A court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Facen*, 812 F.3d 280, 286 (2d Cir. 2016) (alteration and internal quotation marks omitted) (quoting *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999)). A defendant challenging the sufficiency of the evidence thus "bears a heavy burden." *United States v. Si Lu Tian*, 339 F.3d 143, 150 (2d Cir. 2003) (internal quotation marks omitted).

"[C]ourts must be careful to avoid usurping the role of the jury when confronted with a motion for acquittal." *United States v. Jackson,* 335 F.3d 170, 180 (2d Cir. 2003). Under this standard, the court "may not usurp the role of the jury by substituting its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *United States v. Heras*, 609 F.3d 101, 105 (2d Cir. 2010) (quoting *United States v. MacPherson*, 424 F.3d 183, 187 (2d Cir. 2005)). A court must "defer to the jury[ the] assessment of witness credibility and . . . resolution of conflicting testimony." *United States v. Bala*, 236 F.3d 87, 93–94 (2d Cir. 2000). In sum, "[t]he government's case need not exclude every possible hypothesis of innocence," *United States v. Martinez,* 54 F.3d 1040, 1042–43 (2d Cir. 1995) (internal quotation marks omitted), and where "either of the two results, a reasonable doubt or no

reasonable doubt, is fairly possible, [the court] must let the jury decide the matter," *Guadagna*, 183 F.3d at 129 (internal citation and quotation marks omitted) (alteration in original).

At the same time, the Court is also mindful of its responsibility to protect Defendants' Fifth Amendment rights. *See, e.g.*, *United States v. Valle*, 807 F.3d 508, 513 (2d Cir. 2015). If courts "are to be faithful to the constitutional requirement that no person may be convicted unless the Government has proven guilt beyond a reasonable doubt, we must take seriously our obligation to assess the record to determine . . . whether a jury could *reasonably* find guilt beyond a reasonable doubt." *Id.* at 515 (alteration in original) (quoting *United States v. Clark*, 740 F.3d 808, 811 (2d Cir. 2014)). In particular, "specious inferences are not indulged, because it would not satisfy the Constitution to have a jury determine that the defendant is *probably* guilty. If the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." *Id.* (quoting *United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008)).

## III.    DISCUSSION

"[A] defendant challenging the sufficiency of the evidence 'bears a heavy burden,' and 'the standard of review is exceedingly deferential.'" *United States v. Martoma*, 894 F.3d 64, 72 (2d Cir. 2017) (quoting *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012)). While "specious inferences are not indulged," *Lorenzo*, 534 F.3d at 159, courts "defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence," *United States v. Reifler*, 446 F.3d 65, 94 (2d Cir. 2006 (internal citation and quotation marks omitted)).

"Not only must the evidence be viewed in the light most favorable to the government and all permissible inferences drawn in its favor, but if the evidence, thus construed, suffices to convince any rational trier of fact of the defendant's guilt beyond a reasonable doubt," the Court must defer to the jury. *Martinez,* 54 F.3d at 1042 (internal citations omitted). In a close case, where "either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, the court must let the jury decide the matter." *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000) (alterations omitted) (quoting *Guadagna*, 183 F.3d at 129).

### A. The Co-Conspirator Statements Admissibility Under *Geaney*

Before addressing the motions for acquittal and determining the sufficiency of evidence following the resting of the Government's case, the Court must determine whether and to what extent, any co-conspirator statements will be admissible against any of the Defendants.

Co-conspirator statements are generally admissible as non-hearsay under Fed. R. Evid. 801(d)(2)(E), provided that the statements satisfy the Rule's requirements. "A statement is not hearsay if . . . [t]he statement is offered against a party and it is a statement by a co[-]conspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). In order to admit an extra-judicial statement by a co-conspirator under Rule 801(d)(2)(E), the court must find by a preponderance of the evidence "(1) that there was a conspiracy, (2) that its members included the declarant and the party against whom the statement is offered, and (3) that the statement was made both (a) during the course of and (b) in furtherance of the conspiracy." *United States v. Diaz*, 176 F.3d 52, 83 (2d Cir. 1999) (quoting *United States v. Tracy*, 12 F.3d 1186, 1196 (2d Cir. 1993)).

Courts consider the contents of a co-conspirator's statement when determining "the existence of the conspiracy and the participation therein of the declarant and the party against

10

whom the statement is offered," Fed. R. Evid. 801(d)(2)(E); *see also Bourjaily v. United States*, 483 U.S. 171, 181 (1987), however, "there must be some independent corroborating evidence of the defendant's participation in the conspiracy," *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999) (internal quotation marks omitted).

The Second Circuit follows the *Gypsum* rule. *See United States v. Badalamenti*, 794 F.2d 821, 828 (2d Cir. 1986) (applying the *Gypsum* rule and noting that "[i]t is reasonable to expect that a 'new recruit can be thought to have joined with an implied adoption of what had gone on before to enhance the enterprise of which he is taking advantage'" (quoting 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 801(d)(2)(E)[01], at 250–51 (1985))). This rule, however, applies only if there is "sound reason to believe that [the defendant] joined when he was generally aware of what his new partners had been doing and saying on behalf of the enterprise." *Id.* (internal quotation marks omitted). Thus, co-conspirator statements are admissible against Defendants who joined the alleged conspiracy later, so long as those Defendants were "generally aware" of what the alleged co-conspirators "had been doing and saying" on behalf of the alleged conspiracy. *See id.*

Any statements made before the formation of the alleged conspiracies are inadmissible against the alleged co-conspirators. *See Anderson v. United States*, 417 U.S. 211, 218 (1974) ("The hearsay-conspiracy exception applies only to declarations made while the conspiracy charged was . . . in progress, a limitation that this Court has scrupulously observed."); *see also United States v. Saneaux*, 365 F. Supp. 2d 493, 499 (S.D.N.Y. 2005) (noting that the Rule 801(d)(2)(E) requires that "the statements [were not] made after the cessation of the conspiracy or before its formation"). Any alleged co-conspirator statements made outside of that time period would be inadmissible under Rule 801(d)(2)(E), despite any evidence that each defendant was

"generally aware" of the alleged co-conspirators' action and conduct, because the alleged conspiracy would not yet exist. *See United States v. Abu-Jihaad*, 531 F. Supp. 2d 289, 295 n.2 (D. Conn. 2008) ("[T]here are [Second Circuit] decisions that permit introduction of statements made before a participant joined a conspiracy, but such cases involve a pre-existing conspiracy in which at least two other participants had already formed the requisite agreement.").

When considering the admissibility of co-conspirator statements in the Second Circuit, courts, following *Geaney*, generally will conditionally admit co-conspirator statements during the Government's case-in-chief and then "determine, when all the evidence is in, whether . . . the prosecution has proved participation in the conspiracy, by the defendant against whom the hearsay is offered, by a fair preponderance of the evidence." *United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969). If the court finds that the prosecution has not met its burden, it will "instruct the jury to disregard the hearsay" or declare a mistrial if the hearsay is a "large proportion of the proof" against the defendant. *Id.*; *see also United States v. Feola*, 651 F. Supp. 1068, 1129–30 (S.D.N.Y. 1987) ("[A] *Geaney* ruling . . . is provided only during trial, and relies for its basis on the facts adduced at trial, including evidence received subject to a motion to strike at the close of the Government's case.").

The Government has presented its case-in-chief over the course of thirteen days and, therefore, the Court must now determine the admissibility of co-conspirator statements allegedly made in furtherance of each conspiracy.[2]

---

[2] Inherent in the Court's analysis below, the Government has satisfied the first two elements—that there was a conspiracy and that its members included the declarant and the party against whom the statement is offered—by a preponderance of the evidence. In doing so, the Court recognizes there is a close question on the issue of the existence of a conspiracy with respect to Count One, which may need to be revisited.

### 1.   The Statements in Furtherance of Count One

The Government argues that statements made as early as May 2019 by Mr. Wallace Best, Mr. Thomas, Mr. Cox, Mr. Garcia-Hernandez, and the confidential source are all in furtherance of the Count One conspiracy and therefore admissible against the Count One defendants. Attach. A to Gov't Mot. Re: Co-Conspirator Statements, ECF No. 1018-1 (Oct. 10, 2022) (citing Gov't Ex. 258 at 8–71; Gov't Ex. 21; Gov't Ex. 27; Gov't Exs. 253–57; Gov't Exs. 268–72; Gov't Ex. 279; Gov't Exs. 283–85; Gov't Exs. 300–01; Gov't Exs. 303–07; Gov't Ex. 311). Specifically, the Government argues that, in May 2019, Mr. Wallace Best told the confidential source, who, at the time was not yet cooperating, that Mr. Thomas asked Mr. Wallace Best to "go in with him" on heroin from California that had a "good price." Gov't Mot. at 10 (citing Gov't Ex. 249). The Government argues that June 2019 calls between Mr. Thomas and Mr. Cox also show their involvement with the conspiracy. *Id.* (citing Gov't Ex. 164; Gov't Ex. 166).

Defendants argue that the statements made to the confidential source in exhibit 249 cannot mark the beginning of the conspiracy because the confidential source did not know and had not even met Mr. Thomas. *See* Thomas Opp'n at 5–6. Additionally, Defendants argue that the May 14, 2019 call makes clear that Mr. Wallace Best is not going to take up Mr. Thomas's alleged offer to get heroin from California. *Id.*

The Court agrees.

As Defendants properly note, the May 14, 2019 call cannot be the beginning of the conspiracy alleged in Count One because Mr. Wallace Best expressly declines to obtain heroin from California. *See* Gov't Ex. 249 (stating that he "won't mess with" Mr. Thomas because he is still being supplied by the confidential informant). Additionally, the Government cites to exhibits related to Mr. Thomas and Mr. Cox that do not even mention or allude to the acquisition of

13

drugs. *See* Gov't Ex. 164; Gov't Ex. 166. Therefore, the conspiracy alleged in Count One cannot

have begun as early as May or June 2019. *See Anderson*, 417 U.S. at 218 ("The hearsay-

conspiracy exception applies only to declarations made while the conspiracy charged was . . . in

progress, a limitation that this Court has 'scrupulously observed.'").

Instead, at best, the Count One conspiracy began on September 27, 2019, based on a call

made that day between the confidential source, Mr. Cox, Mr. Wallace Best, and Mr. Thomas. *See*

Gov't Ex. 258. It is at this point that the object of the conspiracy is sufficiently defined to be said

to have begun. *See* Gov't Ex. 258 (confirming that it will be "straight up H" and discussing how

doing well on the first transaction will put them in a good position in the long run).

Accordingly, statements made before September 27, 2019, are only admissible against

the parties who made the statements as statements of a party opponent under Fed. R. Evid.

801(d)(2)(A).

### 2.  The Statements in Furtherance of Count Two

The Government argues that the conversations related to the four controlled buys, *see*

Gov't Ex. 1; Gov't Ex. 6; Gov't Ex. 11; Gov't Ex. 16, statements coordinating meetings for the

purpose of narcotics purchases, *see* Gov't Exs. 45–246, and various conversations between Mr.

Wallace Best and the confidential source, *see* Gov't Exs. 247–49; Gov't Exs. 251–52; Gov't Ex.

258 at 1–7; Gov't Ex. 301; Gov't Ex. 304; Gov't Ex. 311, are admissible against the Count Two

co-conspirators as in furtherance of the Count Two conspiracy. *See* Attach. A to Gov't Mot. Re:

Co-Conspirator Statements, ECF No. 1018-1 (Oct. 10, 2022).

The Count Two Defendants argue that the conversations between Wallace Best and the

confidential source are inadmissible against the alleged Count Two co-conspirators because there

is no evidence linking the drug to Mr. Frank Best.

14

In response, the Government argues that there are wiretap calls that show Mr. Wallace Best asking Mr. Frank Best for money that he has to pay "his people" and, during the same time period, Mr. Wallace Best owes the confidential source money. Mr. Frank Best allegedly gives Mr. Wallace Best the money and Mr. Wallace Best pays the cooperating source's cousin. *See* Gov't Ex. 109, Gov't Exs. 115–116; Gov't Exs. 251–52; Gov't Exs. 177–80.

The Court disagrees, in part.

On June 24, 2019, the confidential source tells Mr. Wallace Best that he is "gonna need that bread for something I'm doing." Gov't Ex. 251. The confidential source asks if Mr. Wallace Best and his "cousin" are done and if Mr. Wallace Best has "anything from hi[s]" cousin. *Id.* Mr. Wallace Best responds that he doesn't because his cousin has been gone for a week, but that "he said he got some money for" Mr. Wallace Best. *Id.* Then, on June 28, 2019, Mr. Wallace Best tells Mr. Frank Best that he has to "go see these people when I get out of work" and that he has to "get these people some . . . bread." Gov't Ex. 177. Mr. Wallace Best and Mr. Frank Best then arrange to meet. Gov't Exs. 179–80. Drug Enforcement Agency Special Agent Joelle Ando testified that Mr. Wallace Best was supposed to meet with the confidential source's "cousin" on June 28, 2019 to provide the "cousin" with the money he allegedly owed the confidential source. *See* Ando Tr. 142:3–17.

While this may be sufficient evidence to show that these statements were in furtherance of the Count Two conspiracy, the Government lacks the requisite evidence to show that the confidential source is a member of the Count Two conspiracy. For the statements made between Mr. Wallace Best and the confidential source to be admissible against the Count Two Defendants, the Court must find that the person who made the statement was a member of the conspiracy. *See Bourjaily*, 483 U.S. at 175; *United States v. Gupta*, 747 F.3d 111, 123 (2d Cir.

2014). The content of the co-conspirator statement "itself may be considered along with independent evidence in deciding the question of . . . membership." *United States v. Cota*, 953 F.2d 753, 758 (2d Cir. 1992).

Here, while the confidential source testified that he supplied Mr. Wallace Best, he did not testify as to having any knowledge about the scope of the conspiracy alleged in Count Two. The confidential source testified that he did not know who Mr. Wallace Best dealt with when he sold drugs. *See* Sept. 28 CS Tr. at 22:15–23:6. The confidential source also testified to selling to one other customer. *See id.* at 24:15–19. The confidential source testified that there were weeks or even months where he would stop dealing drugs entirely. *Id.* at 33:8–12. The confidential source would sometimes have the person he was "working with," Slim, deliver the drugs to Mr. Wallace Best. *Id.* at 34:8–16. The confidential source, Slim, and Mr. Wallace Best bought burner phones together that they used for their dealings. *Id.* at 35:1–17.

While this evidence may have been sufficient to establish a conspiracy among Mr. Wallace Best, the confidential source, and Slim, there is nothing to suggest that the confidential source had the requisite knowledge of the conspiracy alleged in Count Two such that his statements could be admitted against the alleged Count Two co-conspirators. *See Gigante*, 166 F.3d at 82 (stating that, while the content of the co-conspirator's statements may themselves be considered under Rule 801(d)(2)(E), "there must be some independent corroborating evidence of the defendant's participation in the conspiracy" (internal quotation marks omitted)). Here, while there is evidence to suggest that the confidential source supplied drugs to Mr. Wallace Best who then supplied those drugs to Mr. Frank Best, there is insufficient evidence to conclude that the confidential source was sufficiently aware of the general nature and scope of the conspiracy such that he was a member of it under Rule 801(d)(2)(E), and that anything supplied by the

confidential source to Mr. Wallace Best was then provided to Mr. Frank Best for use as part of the alleged Count Two conspiracy.

Accordingly, the Court will not admit the cited conversations between Mr. Wallace Best and the confidential source, *see* Gov't Exs. 247–49; Gov't Exs. 251–52; Gov't Ex. 258 at 1–7; Gov't Ex. 301; Gov't Ex. 304; Gov't Ex. 311, against the other alleged Count Two co-conspirators. The remaining exhibits are appropriately admissible against the alleged Count Two co-conspirators and the above-reference exhibits may be admissible against Mr. Wallace Best only as statements of a party opponent under Fed. R. Evid. 801(d)(2)(A).

## B. The Motions for Judgment of Acquittal on Count One

"To convict a defendant as a member of a conspiracy, the government must prove that the defendant agree[d] on the essential nature of the plan, and that there was a conspiracy to commit a particular offense and not merely a vague agreement to do something wrong." *Lorenzo*, 534 F.3d at 159 (internal quotation marks and citations omitted). There must be "'some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it.'" *United States v. Morgan*, 385 F.3d 196, 206 (2d Cir. 2004) (quoting *United States v. Gaviria*, 740 F.2d 174, 183 (2d Cir.1984)). "'Proof that the defendant knew that some crime would be committed is not enough.'" *Id.* (quoting *United States v. Friedman*, 300 F.3d 111, 124 (2d Cir. 2002)).

"An individual defendant's membership in a conspiracy may not be established simply by his presence at the scene of a crime, nor by the fact that he knows that a crime is being committed." *Hawkins*, 547 F.3d 66, 71 (2d Cir. 2008) (internal quotation marks and citation omitted). Indeed, "a defendant's mere presence at the scene of a criminal act or association with

17

conspirators does not constitute intentional participation in the conspiracy, even if the defendant has knowledge of the conspiracy." *Lorenzo*, 534 F.3d at 159. "Evidence tending to show knowing participation in the conspiracy is also needed, i.e., facts sufficient to draw a logical and convincing connection between circumstantial evidence of an agreement, and the inference that an agreement was in fact made." *Hawkins*, 547 F.3d at 71 (internal quotation marks and citations omitted). "The government need not show that the defendant knew all of the details of the conspiracy, 'so long as he knew its general nature and extent.'" *Huezo*, 546 F.3d at 180 (2d Cir. 2008).

Mr. Wallace Best, Mr. Thomas, and Mr. Cox argue that they should be acquitted of the Count One conspiracy because there is insufficient evidence that these Defendants played a role in the conspiracy. More specifically, Mr. Thomas argues that the evidence is insufficient to establish one overarching conspiracy, and instead, establishes two conspiracies related to each of the alleged California transactions. *See* Thomas Mot. to Acquit at 1–2. Additionally, Defendants argue that the confidential source, once introduced to Mr. Garcia-Hernandez, no longer needed or involved the Defendants with the conspiracy because the Defendants did not negotiate the terms of the transactions, did not pay for the drugs, and never received the drugs.

In response, the Government argues there is sufficient evidence of the Count One conspiracy because, during the call on September 27, 2019, Defendants and the confidential source established the type of drug and the price they hoped to negotiate. Additionally, the Government argues that the Defendants, although they did not receive the drugs or provide any payment, had a stake in the transactions because they were hoping that the first transaction would create the foundation for a relationship that would continue long after and at various points

leading up to the second transaction, Defendants stated they would receive one of the five kilos as payment.[3]

Nevertheless, rather than resolve this issue now, the Court will take it up again, if necessary, after the jury's verdict.

Accordingly, the Court will reserve judgment on the motions for acquittal as to Count One until after the jury's verdict. *See* Fed. R. Crim. P. 29b ("The court may reserve decision on the motion, proceed with the trial . . . , submit the case to the jury, and decide the motion . . . after [the jury] returns a verdict of guilty or is discharged without having returned a verdict.").

## C.  The Motions for Judgment of Acquittal on Count Two

### a.  Mr. Turowski

To prove conspiracy to distribute and possess with intent to distribute a controlled substance, the Government must establish that Defendant acted "knowingly or intentionally [to] ... possess with intent to ... distribute ... a controlled substance." 21 U.S.C. § 841(a)(2); *see also Anderson*, 747 F.3d at 61 ("As to intentional possession and distribution of a controlled substance, the government must . . . prove that the defendant knew he was dealing with a controlled substance" (citation and internal quotation marks omitted)). "[I]n order to prove conspiracy, the government must demonstrate that the defendant possessed 'the specific intent to

---

[3] More specifically, in the Government's view, it has presented evidence that could reasonably allow a jury to infer that Mr. Wallace Best, Mr. Thomas, and Mr. Cox agreed to facilitate the two alleged California transactions, including the following: (1) On September 27, 2019, Mr. Wallace Best, Mr. Thomas, and Mr. Cox discussed with the confidential source the scope of the conspiracy, *see* Gov't Ex. 258 at slide 18; (2) Mr. Thomas, Mr. Wallace Best, and Mr. Cox hoped to make money eventually from the relationship by establishing a strong initial foundation, *see* Gov't Ex. 258 at slide 27 (Mr. Thomas indicating they will make some money); Gov't Ex. 258 at slide 26 (Mr. Wallace Best discussing the four-way split); Gov't Ex. 258 at slide 21 (Mr. Cox indicating he is concerned about making money); and (3) there are calls that occur between the two transactions that arguably could reasonably allow a jury to infer that Defendants had a continuing stake in the outcome of the second transaction. *See* Gov't Ex. 257 (January 20, 2019 discussion where confidential source indicated he will give Mr. Wallace Best, Mr. Thomas, and Mr. Cox payment, and discussed how they could do "five" "twice a month" and hopefully make "80").

commit the offenses that were [its] objects.'" *Anderson*, 747 F.3d at 61 (quoting *Huezo*, 546 F.3d at 180).

 "[T]he mere purchase and sale of drugs does not, without more, amount to a conspiracy to distribute narcotics." *United States v. Brock*, 789 F.3d 60, 63 (2d Cir. 2015) (citing *United States v. Parker*, 554 F.3d 230, 234 (2d Cir. 2009)). "[T]he buyer's agreement to buy from the seller and the seller's agreement to sell to the buyer cannot 'be the conspiracy to distribute, for it has no separate criminal object.'" *Parker*, 554 F.3d at 235 (quoting *United States v. Wexler*, 522 F.3d 194, 208 (2d Cir. 2008) (internal alterations omitted)). Although the buyer-seller exception "does not protect either the seller or buyer from a charge they conspired together to transfer drugs if the evidence supports a finding that they shared a conspiratorial purpose to advance other transfers, whether by the seller or by the buyer," *id.* at 235, "[e]vidence that a buyer intends to resell the product instead of personally consuming it does not necessarily establish that the buyer has joined the seller's distribution conspiracy," *Hawkins*, 547 F.3d at 74.

To determine whether the buyer-seller exception applies, courts consider "whether there was prolonged cooperation between the parties, a level of mutual trust, standardized dealings, sales on credit, . . . and the quantity of drugs involved." *Id.*, 547 F.3d at 74 (internal citations and quotation marks omitted). Other relevant factors are "whether the buyer sought to advance the conspiracy's interests, whether there was a longstanding relationship between the buyer and seller, whether the buyer performed other duties on behalf of the conspiracy, whether the quantity of drugs purchased suggests intent to redistribute, whether the buyer's profits were shared with members of the conspiracy, and whether the buyer had the physical, financial, or other protection of the conspiracy." *United States v. Faltine*, No. 13-CR-315 (KAM), 2016 WL

1700385, at *3 (E.D.N.Y. Apr. 26, 2016) (citing *United States v. Rojas*, 617 F.3d 669, 675 (2d Cir. 2010)).

As to Count Two, Mr. Turowski argues that the Government did not prove that Mr. Turowski was a member of the conspiracy, there is insufficient evidence to show that Mr. Turowski participated in or agreed to become involved in a conspiracy, and there is "no recognized federal offense of 'accessory to conspiracy.'" Turowski Mot. for Acquittal at 1. Mr. Turowski also argues that his speech was protected under the First Amendment and relies on the issues raised in his previously filed motion to dismiss. *Id.* at 1–2.

The Government responds that Mr. Turowski can be considered part of the conspiracy based largely, if not wholly, on his June 5, 2019 call to Mr. Frank Best. The Government argues that Mr. Turowski had a stake in the conspiracy because he wanted Mr. Frank Best to continue selling drugs to him. Additionally, the Government argues that the call furthered the conspiracy because after Mr. Turowski's call, Mr. Frank Best changed phones and the Government was without a wiretap for a few weeks.

The Court disagrees.

Here, the Government's evidence against Mr. Turowski consists of the following:

On February 27, 2019, Mr. Turowski was observed getting out of Mr. Frank Best's car while it was parked at the liquor store on Trumbull Avenue in Bridgeport, Connecticut, and then returning to his truck shortly thereafter. *See* Hoffman Tr. 86:10–12, 86:21–24, 87:2–3, 88:7–11, 91:11–16.[4] On May 23, 2019, Mr. Turowski called Mr. Frank Best five times over the course of about three hours to arrange a single drug transaction. *See* Gov't Ex. 51; Gov't Ex. 49; Gov't Ex.

---

[4] DEA Special Agent Andrew Hoffman clarified, and the Government showed a corresponding video that confirmed, that Special Agent Hoffman did not see Mr. Turowski arrive, walk across the street, or enter Mr. Frank Best's car. Hoffman Tr. 189:8–25.

348; Gov't Ex. 55, Gov't Ex. 352T. In response to Mr. Turowski's initial calls, Mr. Frank Best

stated that he would have to "make a call for the other thing" and then Mr. Frank Best sent a text

to Mr. Thomas. *See* Sept. 14 Ando Tr. 45:19–46:12.[5] Ten minutes after one of Mr. Turowski's

calls, Mr. Frank Best also called Lester Morris ("Mr. Morris"), who stated he was "at the crib

with" Mr. Frank Best's "cousin." *See id.* at 46:17–47:4. After a few hours, Mr. Turowski

indicated that he was at the liquor store and requested a "yammy." Gov't Ex. 55. The DEA task

force then observed Mr. Turowski and Mr. Frank Best meet. Ando Tr. 52:11–16.

On May 25, 2019, Mr. Turowski again called Mr. Frank Best multiple times requesting

"a yammy and the other thing." *See* Gov't Ex. 65; Gov't Ex. 69; Gov't Ex. 346, Gov't Ex. 347.

In response to these calls, Mr. Frank Best reached out to others. *See* Ando Tr. 62:14–24 (asking

Mr. Morris for "just uno for now").

On May 30, 2019, Mr. Turowski again called Mr. Frank Best and asked if he had "both

of them." Gov't Ex. 87. The DEA task force then observed the two meet each other. *See* Ando

Tr. 75:21–76:4.

On June 4, 2019, Mr. Turowski called Mr. Frank Best asking for a "yammy" and asked to

meet up. Gov't Ex. 111. The DEA task force saw the two meet and decided to conduct a walled

off stop to determine what drugs Mr. Turowski had bought. Sept. 14 Ando Tr. 98:16–99:7. On

June 5, 2019, after the police had stopped Mr. Turowski and searched his vehicle, Mr. Turowski

called Mr. Frank Best and relayed the following information:

> 1005: You gotta change your phone, ASAP.
> 6535: Why?
> 1005: Because, when I left the liquor store yesterday. I got popped,
> and they were asking about meeting someone at the liquor store, bro.
> Straight away.

---

[5] At this point, the Government was not intercepting text messages and therefore, could not present evidence of the
content of the text messages.

6535: What they say?
1005: Meeting someone at the liquor store, and 'cause they popped
someone like a couple of days ago, and told them about it, and I got
popped leaving right at your liquor store.
. . .
1005: So, don't meet at the liquor store anymore, bro.
. . .
1005: Get off this phone, get off the liquor store, that's it.

Gov't Ex. 119.

The DEA task force did not see Mr. Turowski meet with Mr. Frank Best after this point

and there were no calls made between Mr. Frank Best's new number and Mr. Turowski once the

DEA task force established a wiretap on the new number. *See* Sept. 28 Ando Tr. 175:3–8.

Additionally, after the date of arrest, there were no calls between the two identified on the phone

toll records. *Id.* at 175:20–176:2.

Federal law enforcement authorities later arrested Mr. Turowski in October 2020 for the

conduct alleged in this case. Mr. Turowski made statements to the arresting officers that he

regularly bought heroin and cocaine base from Mr. Frank Best and that the drugs sometimes

came wrapped in a lottery ticket, but very rarely would the drugs be in glassine bags. *See* Sept.

28 Ando Tr. 148:1–149:16; Sept. 27 Ando Tr. 109:6–22. Mr. Turowski also stated that he began

buying drugs from Mr. Frank Best in either winter of 2018 or 2019. Sept. 28 Ando Tr. at 174:11–

15.

Other than the one phone call between Mr. Turowski and Mr. Frank Best following his

arrest, there is no evidence anywhere in the record from which a jury could conclude that the

relationship between the two was anything but buyer and seller. For example, Mr. Turowski

knew some of the coded language that Mr. Frank Best used to refer to the narcotics he sold, such

as "yammy," and knew that Mr. Frank Best typically made his sales at a specific liquor store in

Bridgeport, *see, e.g.*, Gov't Ex. 55, which are two facts that many of Mr. Frank Best's alleged customers know, *see, e.g.*, Gov't Ex. 45.

But there is no evidence that Mr. Turowski and Mr. Frank Best ever discussed the details or circumstances of other deals, and no evidence that they ever discussed any distribution by Mr. Turowski. Based on the evidence at trial, Mr. Turowski did not know Mr. Frank Best until at least winter of 2018, when they were introduced through a mutual friend and initially, Mr. Turowski transacted with Mr. Frank Best with that mutual friend present. *See* Sept. 27 Ando Tr. 109:8–14. Mr. Turowski eventually began meeting with Mr. Frank Best on his own. *Id.*

There also is no evidence that Mr. Turowski bought drugs on credit, Mr. Turowski and Mr. Frank Best's meetings were ad hoc depending on what was happening on a particular day, and Mr. Turowski bought small amounts of drugs consistent with personal use. *Cf. United States v. Garner*, No. 17-CR-49, 2019 WL 2281225, at *3–4 (W.D.N.Y. May 29, 2019) (granting motion for acquittal, despite evidence that the defendant was buying in wholesale quantities and reselling the drugs, because the defendant and the alleged seller did not have regular dealings, the defendant did not buy on credit, and the alleged seller did not "treat[ the defendant] differently from any other customer when it came to drug transactions"), *aff'd* 822 F. App'x 34 (2d Cir. 2020).

The Government argues that Mr. Turowski's June 5, 2019 call to alert Mr. Frank Best of his arrest makes him a member of the conspiracy. But, absent evidence from the call itself or the surrounding context that Mr. Turowski intended to further the conspiracy, a jury would have to speculate to reach that conclusion. *See Valle*, 807 F.3d at 522 (noting that the standard is not "some evidence," and "it is not enough that the inferences in the government's favor are permissible," instead, "[a] court must also be satisfied that the inferences are sufficiently

24

supported to permit a rational juror to find that [each element of the offense] is established beyond a reasonable doubt" (quoting *United States v. Triumph Cp. Grp., Inc.*, 544 F.3d 149, 159 (2d Cir. 2008))

More specifically, the Government must present "'some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it.'" *Morgan*, 385 F.3d at 206 (quoting *Gaviria*, 740 F.2d at 183). "Proof that the defendant knew that some crime would be committed is not enough." *Id.* (quoting *Friedman*, 300 F.3d at 124). "The government need not show that the defendant knew all of the details of the conspiracy, 'so long as he knew its general nature and extent.'" *Huezo*, 546 F.3d at 180; *see also United States v. Torres*, 604 F.3d 58, 66 (2d Cir. 2010) ("Proof that the defendant engaged in suspicious behavior, without proof that he had knowledge that his conduct involved narcotics, is not enough to support his conviction for conspiracy to traffic in narcotics.").

"[A]ccidentally parallel action is not enough to establish a conspiracy, and a mere buyer-seller relationship is not necessarily a conspiracy," because there must be "something more, some indication that the defendant knew of and intended to further the illegal venture, that he somehow encouraged the illegal use of the goods or had a stake in such use." *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1191 (2d Cir. 1989) (internal quotation marks omitted) (quoting *United States v. Zambrano*, 776 F.2d 1091, 1095 (2d Cir. 1985)).

"The test of whether a single transaction suffices [to prove a defendant joined the alleged conspiracy] is whether the evidence permits an inference that the defendant had knowledge of the conspiracy and intended to join." *United States v. Miranda-Ortiz*, 926 F.2d 172, 176 (2d Cir. 1991). "For a single act to be sufficient to draw an actor within the ambit of a conspiracy to

violate the federal narcotics laws, there must be independent evidence tending to prove that the defendant in question had some knowledge of the broader conspiracy, or the single act itself must be one from which such knowledge may be inferred." *Id.* (internal quotation marks omitted).

While a single act may, upon an appropriate record, be enough to infer knowledge of the broader conspiracy, that is not the case here. Although not dispositive, *see Huezo*, 546 F.3d at 180 (noting that the government is not required to "prove that the defendant knew the identities of all of the other conspirators"), there is nothing in this record to suggest that Mr. Turowski knew anyone else in the alleged conspiracy, much less what they were doing. There are no calls involving Mr. Turowski in which any other alleged co-conspirator is even mentioned by name. Mr. Turowski was the only co-defendant that did not live or work in the Bridgeport area. Instead, Mr. Turowski lived in Norwalk and spent time in the Stamford and New York City areas. *See* Sept. 14 Ando Tr. 101:1–7. Mr. Turowski regularly purchased heroin and cocaine base, however, there is nothing to suggest that Mr. Turowski was aware of whether Mr. Frank Best regularly sold any other types of drugs.

While the jury may have been able to infer that Mr. Turowski knew that Mr. Frank Best was supplied drugs from someone, there is no evidence from which the jury could infer that Mr. Turowski had any knowledge of Mr. Frank Best's alleged drug conspiracy, other than the fact that Mr. Frank Best provided him with drugs. Without more, a jury would have to speculate that Mr. Turowski made this call with the intent to further the broader alleged conspiracy. *See United States v. Jones*, 393 F.3d 107, 112 (2d Cir. 2004) (finding the evidence insufficient to find that the defendants "engaged in purposeful behavior tending to connect either of them to the acquisition, concealment, . . . use or sale of crack cocaine" where there was "no evidence that

either defendant participated in conversations directly related to dealing crack cocaine, or that either defendant exercised authority within the alleged conspiracy itself; or that either defendant explicitly confirm[ed] the nature of the activity in which the co-conspirators were engaged." (alterations in original) (internal citations and quotation marks omitted)).

Unlike other cases where there is evidence other than just the call to alert the alleged co-conspirators of police activity that could lead to an inference of knowledge or more involved participation, here, there is nothing in this record to suggest that Mr. Turowski regularly played this role or, as discussed above, that he had any knowledge of the broader conspiracy at play. *Cf. United States v. Batista*, 2010 WL 1193314, at *3–5 (E.D.N.Y. Mar. 24, 2010) (denying Rule 29 motion where the defendant, a former NYPD officer, regularly used code words to alert alleged co-conspirators of incoming police activity near the co-conspirators' usual drug-transaction location and the defendant, among other actions in furtherance of the alleged conspiracy).

And there is nothing from the content of the call itself, as well as the context provided by other calls, to indicate that Mr. Turowski intended to facilitate any drug transactions other than his own. *See Parker*, 554 F.3d at 235 ("[T]he buyer's agreement to buy from the seller and the seller's agreement to sell to the buyer cannot 'be the conspiracy to distribute, for it has no separate criminal object.'"). As a result, Mr. Turowski's "accidentally parallel action" is insufficient to prove he had the specific intent to further the conspiracy to distribute or possess with intent to distribute drugs. *See Beech-Nut Nutrition Corp.*, 871 F.2d at 1191.[6]

Accordingly, the Court will grant Mr. Turowski's motion for acquittal on Count Two.[7]

---

[6] To the extent the Government argues Mr. Turowski served as a "lookout" based on his call to alert Mr. Frank Best of his arrest, this argument fails for the same reasons. *See United States v. Miller*, No. 17-CR-415 (MKB), 2019 WL 2232124, at *5 (E.D.N.Y. May 23, 2019) ("However, serving merely as a lookout is insufficient to satisfy the government's burden. The government must prove beyond a reasonable doubt that Defendant had knowledge and specific intent to participate in the drug conspiracy.").

[7] Because the Court is granting Mr. Turowski's motion for acquittal based on the sufficiency of the evidence, it does not reach and need not address his First Amendment arguments or his renewed motion to dismiss Count Eight.

### b. The Count Two Quantities as to Mr. Wallace Best, Mr. Thomas, and Mr. Frank Best

"[D]rug quantity is an element that must always be pleaded and proved to a jury or admitted by a defendant to support conviction or sentence on an aggravated offense under § 841(b)(1)(A) or -(b)(1)(B)." *United States v. Gonzalez*, 420 F.3d 111, 131 (2d Cir. 2005). "The drug quantity attributable to a defendant knowingly participating in a drug distribution conspiracy includes (1) transactions in which he participated directly, (2) transactions in which he did not personally participate, but where he knew of the transactions or they were reasonably foreseeable to him, and (3) quantities he agreed to distribute or possess with intent to distribute 'regardless of whether he ultimately committed the substantive act.'" *United States v. Pauling*, 924 F.3d 649, 657 (2d Cir. 2019) (quoting *Jackson*, 335 F.3d at 181).

And "[t]o prove the quantity by one of these means beyond a reasonable doubt, the government must introduce specific evidence of drug quantities, or evidence from which quantity can, through inference, be logically approximated or extrapolated." *Id.* "Thus, while quantities of controlled substances in a drug distribution conspiracy prosecution may be determined through extrapolation, approximation, or deduction, there ordinarily must be evidence of known quantities, which are sufficiently representative of the unknown quantities and from which an approximation of the unknown quantities can logically be derived." *Id.*

Mr. Wallace Best, Mr. Thomas, and Mr. Frank Best argue that there is insufficient evidence of the quantity of drugs alleged as part of the Count Two conspiracy. *See* Thomas Mot. for Acquittal at 2–3. Defendants argue that "the content of the wiretap calls, as well as other testimony presented, did not establish beyond a reasonable doubt that the conspiracy involved

---

Accordingly, Mr. Turowski's renewed motion to dismiss Count Eight will be denied as moot.

100 grams or more of heroin." *Id.* Defendants emphasize that the amount of drugs physically seized was insubstantial and the remaining evidence of quantity is "buried in vague, coded language that was never fully defined." *Id.* at 3.

The Government argues that the evidence of quantity for Count Two is sufficient in the wiretap calls because the use of the term "yam" or "yammy" refers to 1 gram of heroin and points to specific exhibits as evidence of other calls that can lead to a reasonable inference of both quantity and type of drug.[8]

The Court disagrees.

The Government charged Mr. Wallace Best, Mr. Thomas, and Mr. Frank Best with the Count Two conspiracy, but in its aggravated form, alleging these three Defendants conspired to distribute 100 grams or more of heroin. *See* Third Superseding Indictment at 3. As part of its case-in-chief, the Government presented evidence of heroin seized from four controlled buys, the arrest of Mr. Frank Best, and the arrest of Mr. Turowski. The four controlled buys amounted to approximately 12.4032 grams of heroin. *See* Gov't Ex. 5 (DEA lab report showing net weight of 3.2834 grams of heroin); Gov't Ex. 10 (DEA lab report showing net weight of 1.033 grams of heroin); Gov't Ex. 15 (DEA lab report showing net weight of 4.5298 grams of heroin); Gov't Ex. 20 (DEA lab report showing net weight of 3.557 grams of heroin). In the search incident to Mr. Frank Best's arrest, 0.674 grams of heroin were seized, *see* Gov't Ex. 40 (DEA lab report showing net weight of 0.674 grams of heroin), and in the search incident to Mr. Turowski's

---

[8] The Government also argued that the confidential source's testimony that he was supplying Mr. Wallace Best with 200 to 500 grams of heroin is relevant to the quantity determination. The Court disagrees. While there is evidence that Mr. Wallace Best was providing Mr. Frank Best with heroin that Mr. Wallace Best purchased from the confidential source, there is also evidence showing that Mr. Frank Best was supplied drugs from multiple sources. *See, e.g.*, Gov't Ex. 68 (Mr. Frank Best reaching out to Mr. Morris for narcotics to sell to Mr. Turowski); Gov't Ex. 7 (unidentified male coming to make heroin sale from Mr. Frank Best to a cooperating source). This is evidence, without more, is insufficient because there is nothing in the record from which the jury could deduce what quantities of heroin Mr. Wallace Best was providing to Mr. Frank Best.

arrest 0.046 grams of heroin were seized, *see* Gov't Ex. 38 (CSP lab report showing 0.006 grams of heroin, 0.020 grams of heroin, and 0.020 grams of heroin in various packages, as well as residue and cocaine). The heroin seized from the four buys, from Mr. Frank Best, and from Mr. Turowski total approximately 13.1227 grams of heroin.

The Government intends to prove the remaining 86.8773 grams of heroin through the wiretap calls presented during trial.

Many of these calls refer to alleged customers asking Mr. Frank Best if he has any "yams" or "yammies." *See, e.g.*, Gov't Ex. 63; Gov't Ex. 103. Based on the testimony presented at trial, the jury could reasonably infer that a "yam" or "yammy" refers to 1 gram of heroin. *See* Hoffman Tr. 61:21–25 ("It was the purchase price of $90 per gram for heroin."); Gov't Ex. 89 (stating "a gram" would cost "nine-O"); Gov't Ex. 103 (stating "a whole yammy" costs "9 dollars").

Additionally, Agent Sean Gordon, the narcotics expert, testified to the meaning of a few other pertinent terms that, according to his testimony, only apply to heroin. For example, Agent Gordon testified that heroin is typically "brown or light tan in color" and raw heroin is a darker brown. *See* Gordon Tr. 39:17–4; 42:18–23. Agent Gordon also testified that "[t]he most common [slang] term [for heroin] in the state of Connecticut is dope, but it's also . . . referred to as brown, chiva, Manteca, slow." *Id.* at 40:11–13. Additionally, "[s]treet-level packaging comes in waxed folds for an individual dose . . . [The baggie] usually [has] a small amount of heroin, like less than point one-tenth of a gram." *Id.* at 40:18–41:7. Agent Gordon also stated that "[a] bundle is ten wax folds" which would be "a little less" than a gram and "a brick . . . is either ten bundles in a brick or five bundles, depending on where you are." *Id.* at 41:20–23; 56:6–14. Finally, as noted

above, Agent Gordon testified that heroin can be sold in increments less than a gram, *see id.* at 40:18–41:7, whereas cocaine is typically sold at larger than 2-gram increments. *Id.* at 34:3–11.

Altogether, based on the language Agent Gordon identified as heroin-specific and the alleged co-conspirators' use of the term "yam," the wiretap calls that likely reference a specific quantity of heroin amount to approximately 35 additional grams.[9] These calls and the drug seizures discussed above total approximately 48.1227 grams of heroin.

While it is proper for the Government to prove quantity by showing "quantities [the co-conspirators] agreed to distribute or possess with intent to distribute 'regardless of whether [they] ultimately committed the substantive act,'" *Pauling*, 924 F.3d at 657 (quoting *Jackson*, 335 F.3d at 181), the agreements to distribute or possess must be sufficiently clear on the amount and type of drug that are the subject of the agreements. This is particularly significant here, where the co-conspirators are alleged to have distributed multiple types of drugs, heroin and cocaine, and where the evidence suggests that the Defendants may have been distributing marijuana. *See, e.g.*, Gordon Tr. 57:1–5, 60:3–11 (stating "two whole ones" could mean two pounds of marijuana); Gov't Ex. 222 (caller requesting "one" or "a whole").

The evidence here is insufficient to prove the final 51.8773 grams of heroin. Notable is Agent Gordon's testimony that certain words can refer to multiple drugs or quantities. For example, Agent Gordon testified that "whole" could refer to a whole ounce of cocaine or a whole kilogram of heroin, *see* Gordon Tr. 52:3–11, and a "half would either be a half ounce [of

---

[9] For this calculation, the Court has included the following exhibits: Gov't Ex. 45; Gov't Ex. 55; Gov't Ex. 56; Gov't Ex. 60; Gov't Ex. 61; Gov't Ex. 63; Gov't Ex. 65; Gov't Ex. 77; Gov't Ex. 78; Gov't Ex. 88; Gov't Ex. 89; Gov't Ex. 94; Gov't Ex. 97; Gov't Ex. 100; Gov't Ex. 103; Gov't Ex. 106; Gov't Ex. 111; Gov't Ex. 112; Gov't Ex. 113; Gov't Ex. 120; Gov't Ex. 121; Gov't Ex. 122; Gov't Ex. 129; Gov't Ex. 131; Gov't Ex. 135; Gov't Ex. 149; Gov't Ex. 200; Gov't Ex. 203; Gov't Ex. 346. The Court notes that some of the inferences in these exhibits are more tenuous than others, but, for the purposes of this ruling, the Court assumes, but does not explicitly decide, that the inferences in each of these exhibits are not specious. *See, e.g.*, Gov't Ex. 88 (caller requesting "H-G, half a G").

cocaine] or half kilogram [of heroin]," *id.* 52:12–14. On cross-examination, Agent Gordon also stated that "a whole one" could refer to heroin, cocaine, or marijuana. *Id.* at 60:3–11.

Many of the wiretap calls use the term whole or half, but do not specify a drug. For example, on May 29, 2019, a caller asked Mr. Frank Best if he could "hold a half until tomorrow." Gov't Ex. 80. Based on Agent Gordon's testimony this could be heroin, cocaine, or marijuana, and, while the various references to "yams" indicates Mr. Frank Best likely was selling heroin at the time, there is also evidence he was selling cocaine or cocaine base, *see* Gov't Ex. 64 (caller asking for a "dub"), and a suggestion that he may have sold marijuana, *see* Gordon Tr. 57:1–5, 60:3–11 (stating "two whole ones" could mean two pounds of marijuana); Gov't Ex. 222 (caller requesting "one" or "a whole").  Additionally, while some calls refer to an amount without specifying the type of drug, other calls are even more obscure.

For example, on May 27, 2019, Mr. Frank Best called Mr. Wallace Best and stated that he "wanted to get that," but Mr. Wallace Best stated that he has to "call a person" first. Gov't Ex. 74. Finally, several calls reference numbers or terms that could be construed as drug amounts or dollar amounts. For example, on June 4, 2019, Mr. Thomas tells Mr. Frank Best to "just give [him] sixty" and that he "sold like three of it yesterday." Gov't Ex. 110.

As a result, the jury could "only surmise and guess[]" what type and quantity of drug are referenced on these wiretap calls. *See Pauling*, 924 F.3d at 662 ("[T]he government had to prove more than likelihood or probability – it had to prove an agreement to distribute (or possess with intent to distribute) [the charged amount] of heroin beyond a reasonable doubt.").

The Government has cited examples of calls, but the Court has declined to include them in its calculation of quantity for the reasons already described. For example, on June 4, 2019, Mr. Frank Best and Mr. Wallace Best allegedly meet to try a sample of the drugs they allegedly sell.

*See* Gov't Ex. 115; Gov't Ex. 116. The Government argues that because Mr. Frank Best is a heroin user and he tried the drugs Mr. Wallace Best provided, that this shows the drug was heroin. Even if that inference was reasonable—and not an inference supplemented by speculation—there is nothing to suggest a quantity of drug in these calls.

Similarly, on June 24, 2019, Mr. Thomas also provided Mr. Frank Best with some narcotics that Mr. Frank Best samples. *See* Gov't Ex. 151; Gov't Ex. 152; Gov't Ex. 153; Gov't Ex. 162. Mr. Frank Best stated that he gave someone "half" of what Mr. Thomas provided him and Mr. Frank Best "did the other half." *See* Gov't Ex. 151. Mr. Frank Best references the "new sneakers," which appears to be a coded reference to a drug, and says they are "one size too small." *See* Gov't Ex. 153. The next day Mr. Thomas asks Mr. Frank Best "[w]hat's up with that thing" and if Mr. Frank Best liked "the song [he] gave." *See* Gov't Ex. 162. Notably missing from these exchanges is any reference to the type and quantity of drug discussed and any evidence on the record from which the jury could discern what the term "sneakers" means in that context, much less how much of it is involved here.

Finally, between July 6, 2019 and July 8, 2019, there are a few calls and texts indicating that Mr. Frank Best allegedly received narcotics that he then agreed to distribute. *See* Gov't Ex. 212; Gov't Ex. 217, Gov't Ex. 218; Gov't Ex. 221. On July 6, 2019, Mr. Frank Best did not have the narcotics his alleged customers called to purchase. *See* Gov't Ex. 212. Then, on July 7, 2019, Mr. Thomas called Mr. Frank Best and allegedly said "[t]omorrow. I got it though. We straight." Gov't Ex. 218. On July 8, 2019, Mr. Frank Best sent a text to thirteen numbers to let them know he is "good now." Gov't Ex. 221. Only a few of those numbers respond. *Id.* Even if, as the Government argues, each of the texts are to customers who only purchase heroin, there is no evidence in any of these conversations that would allow a jury to reasonable conclude what

quantities the alleged customers may have purchased. Moreover, seven of the texts are unanswered. *Id.*

To the extent the Government argues that the volume and regularity of calls is sufficient to prove the remaining alleged grams of heroin, the Court disagrees. While the pattern of calls may allow an inference that Mr. Frank Best continued to conspire to sell drugs, the jury cannot then also infer both a quantity and type of drug sold. *See Torres*, 604 F.3d at 67 (noting that "[e]vidence of . . . a lengthy telephone call" between co-conspirators, without more, cannot "provide any basis for inferring" the substance of the calls because "there was no evidence as to the content of the telephone conversation"). This is particularly true because at times, Mr. Frank Best did not have any drugs for the person calling, *see, e.g.*, Gov't Ex. 140; Gov't Ex. 206; Gov't Ex. 208; at the time of Mr. Frank Best's arrest the arresting officers found less than a gram of heroin in Mr. Frank Best's home, *see* Gov't Ex. 40 (DEA lab report showing net weight of 0.674 grams of heroin); and in many instances, there were five or more calls made just to complete a single transaction, *see, e.g.*, Gov't Ex. 49; Gov't Ex. 51; Gov't Ex. 55; Gov't Ex. 348; Gov't Ex. 352.

Finally, it should also be noted that this is also not a case where the Government has provided evidence of most of the alleged quantity and only intends to prove a small portion through inference. *Compare United States v. Adames*, 727 F. App'x 12, 13–14 (2d Cir. 2018) (concluding that if defendant was directly involved in sending nine packages, not all of which were confiscated and weighed, but it is known that the four confiscated totaled 3.936 kilos and the Government presented sufficient evidence to infer the existence of an additional 1.06 kilos from the unseized packages, it was proper to find defendant liable for 5 kilos), *with United States v. Martinez*, 133 F. App'x 762, 763–65 (2d Cir. 2005) (finding the evidence of quantity

insufficient where the defendant, who built nine vehicle traps used to hide packages of cocaine, was alleged to be responsible for 150 kilograms because the Government only presented evidence from three traps, which amounted to 16 kilograms, 19 kilograms, and 20 kilograms, and then averaged these amounts and multiplied them by the defendant's nine vehicle traps).

Thus, while prior dealings suggest Mr. Wallace Best, Mr. Thomas, and Mr. Frank Best may have continued conspiring to distribute quantities of heroin, "it would not satisfy the Constitution to have a jury determine that the defendant is *probably* guilty," *Valle*, 807 F.3d at 515 (quoting *Lorenzo*, 534 F.3d at 159), of distributing at least 100 grams of heroin.

Accordingly, the Court will grant Mr. Wallace Best, Mr. Thomas, and Mr. Frank Best's motions for acquittal on Count Two as it relates to the quantity of heroin alleged.

### c.   Mr. Wallace Best, Mr. Frank Best, Mr. Thomas, and Mr. Jefferies

In addition to the quantity arguments, Mr. Thomas, Mr. Frank Best, and Mr. Wallace Best moved for acquittal of the underlying Count Two conspiracy because the evidence only established multiple separate conspiracies. *See* Thomas Mot. for Acquittal at 3.

In response, the Government argued that there is sufficient evidence to provide the reasonable inference that Mr. Frank Best served as the "hub" and the remaining alleged Count Two co-conspirators were "spokes."

The Court agrees.

The Government presented evidence from which a jury could reasonably infer showed Mr. Frank Best made multiple sales of heroin and cocaine base. *See* Gov't Ex. 2 (transcript of cooperating source's controlled purchase of heroin from Mr. Frank Best); Gov't Ex. 38 (lab report showing Mr. Turowski was arrested with heroin and cocaine). Additionally, there is evidence that would allow the jury to reasonably infer that Mr. Frank Best was being supplied

drugs by Mr. Thomas and Mr. Wallace Best, among others. *See* Gov't Ex. 196 (Mr. Frank Best

asking Mr. Wallace Best if he still "got that" for him); Gov't Ex. 47 (Mr. Thomas telling Mr.

Frank Best "I got you" and "you gonna be straight").

Mr. Jefferies argues that there is insufficient evidence to find that he was actually part of

the alleged Count Two conspiracy because Mr. Jefferies only contacted Mr. Frank Best, no

customer of Mr. Jefferies has ever been identified, Mr. Jefferies has never been observed making

sales, and no drugs were found in Mr. Jefferies apartment or on his person.

The Court disagrees.

Mr. Jefferies is correct that he is only on the wiretap interacting with Mr. Frank Best, but,

as noted elsewhere, Mr. Jefferies need not "kn[o]w the identities of all of the other conspirators."

*Huezo*, 546 F.3d at 180. The Government need only present "some evidence from which it can

reasonably be inferred that the person charged with conspiracy knew of the existence of the

scheme alleged in the indictment and knowingly joined and participated in it." *Morgan*, 385 F.3d

at 206 (quoting *Gaviria*, 740 F.2d at 183).

Here, the Government has presented evidence that Mr. Jefferies regularly purchased

narcotics from Mr. Best, *see, e.g.*, Gov't Ex. 94, resold those drugs to others that Mr. Frank Best

was aware of, *see, e.g.*, Gov't Ex. 123; Gov't Ex. 203, and discussed police activity with Mr.

Frank Best on at least two occasions, *see* Gov't Ex. 48; Gov't Ex. 202. Altogether, this is a

sufficient basis for the reasonable inference that Mr. Jefferies was part of the Count Two

conspiracy.

Accordingly, the motions to acquit the underlying Count Two conspiracy will be denied.

**D.  The Motion for Judgment of Acquittal on Count Eight**

Mr. Turowski also moved for acquittal on Count Eight, which charged him with knowingly and intentionally using a telephone to facilitate the conspiracy alleged in Count Two. *See* Third Superseding Indictment; *see also* 21 U.S.C. § 843(b) ("It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II.").

Mr. Turowski argues that Count Eight must be acquitted because there is no evidence to suggest that Mr. Turowski knowingly and intentionally facilitated the Count Two conspiracy.

The Government responds that, even if Mr. Turowski was not a member of the Count Two conspiracy, his conduct is sufficient to show he facilitated that conspiracy.

The Court disagrees.

As the Government argued in pre-trial motions, *see* Gov't Resp. to Turowski Mot. to Dismiss at 3, ECF No. 641 (Oct. 8, 2021), and as the Court agreed with in its ruling on those pre-trial motions, *see* Order at 24–25, ECF No. 775 (May 20, 2022), to prove Mr. Turowski violated § 843(b), the Government must prove that he knowingly and intentionally facilitated the conspiracy alleged in Count Two. *See, e.g.*, *United States v. Rodgers*, 755 F.2d 533, 542 (7th Cir. 1985) ("[W]e conclude that section 843(b) can and should be interpreted to require that the causing or facilitation of a felony itself be knowing or intentional."); *United States v. Barnes*, 681 F.2d 717, 724 (11th Cir. 1982) (noting the proper inquiry is "whether [the defendant's] call . . . was knowingly or intentionally made for the purpose of facilitating the conspiracy"); *see also United States v. Phillips*, 664 F.2d 971, 1032 (5th Cir. 1981); *United States v. Jones*, 612 F.2d 453 (9th Cir. 1979). Based on the evidence outlined above, there is insufficient evidence for the

jury to reasonably conclude that Mr. Turowski intended to further the underlying conspiracy alleged in Count Two because he was not aware of its broader nature and extent.[10]

    Accordingly, in light of the Court's discussion of Count Two above, the Court will grant Mr. Turowski's motion for acquittal on Count Eight.

## IV.   CONCLUSION

    For the foregoing reasons, the Court **GRANTS** Mr. Turowski's motion for acquittal as to Counts Two and Eight.

    The Court also **GRANTS** Mr. Wallace Best, Mr. Thomas, and Mr. Frank Best's motions for acquittal as to the quantity alleged in Count Two.

    The Court **DENIES** the remaining motions for acquittal as to Count Two, and reserves judgment on the motion for acquittal as to Count One.

    **SO ORDERED** at Bridgeport, Connecticut this 12th day of October, 2022.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[10] The Government argues that *United States v. Owens*, 641 F. App'x 949 (11th Cir. 2016) and *United States v. Cooper*, No. 5:09-cr-30-8/RS, 2010 WL 11530370 (N.D. Fla. Jan. 7, 2010) support its argument that Count Eight should proceed to the jury. In both of these cases, however, there is ample evidence showing each of the defendants had the requisite knowledge and intent to support the § 843(b) charge. *See Owens*, 641 F. App'x at 952 (noting that the evidence included "wiretapped phone calls, telephone toll records, pole camera footage . . . , and [the defendants' statements] . . . showed they knowingly and voluntarily agreed with each other, the nephew's mother, and the nephew to warn him over the telephone about police activity . . . so he could remove his drugs from his home"); *Cooper*, 2010 WL 11530370, at *1 (noting the defendant was asked "to receive the drugs and pay [the co-defendant] for them, that [the defendant] agreed to coordinate the drug drop, that [the defendant] made two telephone calls to [the co-defendant]" in furtherance of the alleged conspiracy). Moreover, as the Eleventh Circuit panel stated in *Owens*: "Where a defendant is not convicted of the underlying felony, a conviction under § 843(b) may not be sustained because there is no felony to facilitate." 641 F. App'x at 951. Likewise, because the Court has dismissed the underlying felony charge of a conspiracy against Mr. Turowski, there is no felony for him to facilitate.