## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>WALLACE BEST,<br>JEFFREY THOMAS,<br>JASON COX,<br>FRANK BEST, and<br>LAMONT JEFFERIES. | No. 3:20-cr-00028 (VAB) |

### RULING AND ORDER ON POST-VERDICT MOTIONS

Wallace Best ("Mr. Wallace Best"), Jeffrey Thomas ("Mr. Thomas"), Jason Cox ("Mr. Cox"), Frank Best ("Mr. Frank Best"), and Lamont Jefferies ("Mr. Jefferies") (collectively, "Defendants") were charged in a multi-count Superseding Indictment with crimes related to the possession and distribution of narcotics. *See* Third Superseding Indictment, ECF No. 387 ("Third Superseding Indictment"). After fourteen days of trial, the jury entered a guilty verdict as to all Defendants on all counts. *See* Jury Verdict, ECF No. 1056 ("Verdict").

Before the jury issued its verdict, Defendants moved for acquittal, some orally and others in writing. Mot. for Acquittal, ECF No. 1020; Oral Mot. for Acquittal, ECF No. 1023; Oral Mot. for Acquittal, ECF No. 1024; Oral Mot. for Acquittal, ECF No. 1025; Oral Mot. for Acquittal, ECF No. 1026. On October 12, 2022, the Court granted Defendants' motions for acquittal as they related to the quantities charged in Count Two, denied the motions for acquittal of the conspiracy charged in Count Two, and took under advisement the motions for acquittal on Count One. *See* Ruling and Order on Post-Trial Mots., ECF No. 1027 ("Ruling on Post-Trial Mots.").

Now before the Court are Defendants' renewed post-verdict motions for judgment of acquittal as to all counts and motions for new trial. *See* Def.'s Mot. for J. of Acquittal on Count One and New Trial on Count Two, ECF No. 1101 ("Wallace Best Mot."); Def.'s Suppl. Mem. Under Rule 29 to Dismiss the 851 Penalty Enhancement, ECF No. 1121 ("Wallace Best Suppl. Mem."); Def.'s Mem. of Law in Supp. of Rule 29 and Rule 33 Mots. for J. of Acquittal and/or New Trial, ECF No. 1099 ("Thomas Mot."); Def.'s Mot. for J. of Acquittal or for New Trial, ECF No. 1071 ("Jefferies Mot."); Def.'s Suppl. Mem. in Supp. of Mot. for J. of Acquittal, ECF No. 1102 ("Jefferies Suppl. Mem."); Def.'s Mot. for J. of Acquittal for Count Two, ECF No. 1106 ("Frank Best Mot."); Def.'s Mot. for Acquittal and/or for New Trial, ECF No. 1100 ("Cox Mot."); Oral Mot. for Order re: Acquittal, ECF No. 1024 ("Cox Oral Mot.").

Mr. Cox, Mr. Wallace Best, and Mr. Frank Best have also filed several *pro se* motions arguing for judgment of acquittal, a new trial, and other similar forms of relief.

For the following reasons, Mr. Wallace Best's motions for judgment of acquittal and for a new trial are **DENIED**.

Mr. Thomas's motion for judgment of acquittal and for a new trial is **GRANTED in part** and **DENIED in part**. Mr. Thomas's motion is granted as it relates to the section 851 sentencing enhancement and Mr. Thomas's motion is denied as to the other grounds raised therein.

Mr. Jefferies's motions for judgment of acquittal and for a new trial are **DENIED**.

Mr. Frank Best's motion for judgment of acquittal is **DENIED**.

Mr. Cox's motions for judgment of acquittal and for a new trial are **GRANTED in part** and **DENIED in part**. Mr. Cox's motions are granted as they relate to the section 851 sentencing enhancement and Mr. Cox's motions are denied as to the other grounds raised therein.

Mr. Cox's, Mr. Wallace Best's, and Mr. Frank Best's *pro se* motions are **DENIED**.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**[1]

Jury selection took place over the course of two days on September 7, 2022 and

September 8, 2022. Min. Entry, ECF No. 961 (Sept. 7, 2022); Min. Entry, ECF No. 962 (Sept. 8,

2022). Trial began on September 12, 2022. Min. Entry, ECF No. 965 (Sept. 12, 2022).

Thereafter, trial began, and the Government presented its case-in-chief over the course of

twelve days. *See, e.g.*, Min. Entry, ECF No. 965 (Sept. 12, 2022); Min. Entry, ECF No. 967

(Sept. 13, 2022); Min. Entry, ECF No. 969 (Sept. 14, 2022); Min Entry, ECF No. 970 (Sept. 14,

2022); Min Entry, ECF No. 981 (Sept. 16, 2022); Min. Entry, ECF No. 1011 (Sept. 27, 2022);

Min. Entry, ECF No. 1012 (Sept. 28, 2022); Min. Entry, ECF No. 1015 (Sept. 29, 2022); Min.

Entry, ECF No. 1036 (Oct. 3, 2022); Min. Entry, ECF No. 1037 (Oct. 4, 2022); Min. Entry, ECF

No. 1038 (Oct. 6, 2022); Min. Entry, ECF No. 1039 (Oct. 7, 2022).

On October 7, 2022, the Government rested.

On October 10, 2022, Mr. Thomas filed a written motion for acquittal on Counts One and

Two. *See* Thomas Mot. for Acquittal, ECF No. 1020.

On October 11, 2022, Mr. Wallace Best orally moved for acquittal on Counts One and

Two, Mr. Cox orally moved for acquittal on Count One, Mr. Frank Best orally moved for

acquittal on Count Two, and Mr. Jefferies orally moved for acquittal on Count Two. *See* Oral

Mot. for Acquittal, ECF No. 1023; Oral Mot. for Acquittal, ECF No. 1024; Oral Mot. for

Acquittal, ECF No. 1025; Oral Mot. for Acquittal, ECF No. 1026. The Government opposed

each of these motions orally.

On October 12, 2022, the Court issued a Ruling and Order granting Defendants' motions

for acquittal as to the quantities charged in Count Two and denying Defendants' motions for

---

[1] In light of the lengthy history of this case, the Court presumes the parties' familiarity with the factual and
procedural history and addresses only the aspects relevant to the pending motions.

acquittal as to Count Two. Ruling on Post-Trial Mots at 1–2. The Court took Defendants'

motions for acquittal as to Count One under advisement. *Id.*

On October 12, 2022, Mr. Wallace Best, Mr. Thomas, and Mr. Cox orally moved for a

mistrial. Oral Mot. for Mistrial, ECF No. 1035. The Court orally denied the motions for a

mistrial. Min. Entry, ECF No. 1053.

On October 12, 2022, some Defendants presented evidence and rested their case. Min.

Entry, ECF No. 1053.

On October 13, 2022, the Court held a charge conference and then charged the jury. Min.

Entry, ECF No. 1054.

On October 14, 2022, the jury returned a guilty verdict as to all Defendants on all Counts.

*See* Verdict.

The Government then presented evidence related to the section 851 notices against Mr.

Wallace Best, Mr. Thomas, and Mr. Cox in a bifurcated portion of the trial. Min. Entry, ECF No.

1053. In a supplemental jury verdict form, the jury found the factual basis to support the section

851 notices for each of these Defendants. Suppl. Jury Verdict Form at 1, ECF No. 1056-1

("Suppl. Verdict").

Overall, the jury found Mr. Wallace Best guilty of Count One, conspiracy to possess with

intent to distribute heroin and/or fentanyl in violation of 21 U.S.C. § 846. *Id.* at 1. The jury found

that 1 kilogram or more of heroin and 400 grams or more of fentanyl were attributable to Mr.

Wallace Best. *Id.* On the supplemental jury verdict form, the jury found the factual basis to

support the section 851 notice. Suppl. Verdict at 1.

As to Mr. Thomas, the jury found him guilty of Count One, conspiracy to possess with

intent to distribute heroin and/or fentanyl in violation of 21 U.S.C. § 846, and Count Two,

conspiracy to distribute and to possess with intent to distribute heroin, fentanyl, or cocaine base/crack cocaine in violation of 21 U.S.C. § 846. Verdict at 2–3. As to Count One, the jury found that 1 kilogram or more of heroin and 400 grams or more of fentanyl were attributable to Mr. Thomas. *Id.* at 2. Finally, on the supplemental jury verdict form, the jury found the factual basis to support the section 851 notice. Suppl. Verdict at 2.

As to Mr. Cox, the jury found him guilty of Count One, conspiracy to possess with intent to distribute heroin and/or fentanyl in violation of 21 U.S.C. § 846. Verdict at 2–3. The jury found that 1 kilogram or more of heroin and 400 grams or more of fentanyl were attributable to Mr. Cox. *Id.* And, on the supplemental jury verdict form, the jury found the factual basis to support the section 851 notice. Suppl. Verdict at 2–3.

As to Mr. Frank Best, the jury found him guilty of Count Two, conspiracy to distribute and to possess with intent to distribute heroin, fentanyl, or cocaine base/crack cocaine in violation of 21 U.S.C. § 846. Verdict at 3. The jury also found Mr. Frank Best guilty of Counts Three through Seven, each of which charged possession with the intent to distribute and distribution of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). *Id.* at 4–5.

Finally, as to Mr. Jefferies, the jury found him guilty of Count Two, conspiracy to distribute and to possess with intent to distribute heroin, fentanyl, or cocaine base/crack cocaine in violation of 21 U.S.C. § 846. *Id.* at 3.

After the jury returned its verdicts, the Government moved to remand Defendants to custody, Oral Mot. to Remand, which the Court denied as to Mr. Wallace Best, Mr. Thomas, and Mr. Jefferies, Min. Entry, ECF No. 1055.

On October 17, 2022, Mr. Thomas filed a motion for judgment of acquittal. Mot. for Acquittal Under Rule 29 or New Trial Under Rule 33, ECF No. 1052.

On October 28, 2022, Defendants filed a motion for extension of time to file written motions for judgment of acquittal or new trial. Mot. to Continue, ECF No. 1064.

On November 1, 2022, the Court granted the motion to continue. Order, ECF No. 1065.

On November 3, 2022, Mr. Cox submitted several *pro se* motions. Mot. to Bar Court from Enforcing Conspiracy Statutory Offense, ECF No. 1072 ("First Cox *Pro Se* Mot."); Mot. for New Trial, ECF No. 1074 ("Second Cox *Pro Se* Mot.").

On November 8, 2022, Mr. Cox filed a *pro se* motion to proceed *pro se*. Mot for Order to Proceed *Pro Se*, ECF No. 1075 ("Mot. to Proceed *Pro Se*").

On November 11, 2022, Mr. Jefferies filed a motion for acquittal or new trial. Jefferies Mot.

On November 16, 2022, the parties submitted a joint motion for a briefing schedule. Consent Mot. for Extension of Time and Mot. for Order Adopting Parties' Proposed Briefing Schedule, ECF No. 1076. On November 17, 2022, the Court granted the motion and adopted the parties' proposed briefing schedule. Order, ECF No. 1077.

On November 28, 2022, Mr. Cox filed a *pro se* motion for direct judgment of acquittal. Mot. for Direct J. of Acquittal, ECF No. 1081 ("Third Cox *Pro Se* Mot.").

On December 5, 2022, Mr. Cox filed a *pro se* Rule 29 motion for judgment of acquittal. Rule 29 Mot. for Direct J. of Acquittal, ECF No. 1083 ("Fourth Cox *Pro Se* Mot.").

On December 9, 2022, the parties filed a joint motion for revised briefing schedule. Consent Mot. for Extension of Time and for Revised Briefing Schedule, ECF No. 1084.

On December 10, 2022, the Court granted the motion for extension of time and adopted the proposed revised briefing schedule. Order, ECF No. 1085.

On December 13, 2022, Mr. Cox filed a *pro se* motion to vacate his conspiracy

conviction. Mot. to Vacate Conspiracy Conviction, ECF No. 1091 ("Fifth Cox *Pro Se* Mot.").

On December 19, 2022, Mr. Cox filed a *pro se* motion for release from custody. Emergency Mot. for Release from Custody, ECF No. 1097 ("Sixth Cox *Pro Se* Mot.").

On December 22, 2022, Mr. Cox filed a *pro se* motion to compel the Court for release from his jury verdict. Mot. to Compel Court for Immediate Release from Jury Verdict, ECF No. 1098 ("Seventh Cox *Pro Se* Mot.").

On December 23, 2022, Mr. Thomas, Mr. Cox, Mr. Wallace Best, and Mr. Jefferies, through counsel, filed motions for acquittal and for a new trial. Thomas Mot.; Cox Mot.; Wallace Best Mot.; Jefferies Suppl. Mem.

On December 27, 2022, Mr. Cox filed a *pro se* motion for immediate release from jury verdict. Mot. for Immediate Release from Jury Verdict, ECF No. 1103 ("Eighth Cox *Pro Se* Mot.").

On January 13, 2023, Mr. Frank Best filed a motion for extension of time to file an acquittal motion and his motion for acquittal. Mot. for Extension of Time, ECF No. 1105; Frank Best Mot.

On January 14, 2023, the Court granted the motion for extension of time *nunc pro tunc*. Order, ECF No. 1107.

On January 17, 2023, Mr. Cox filed a *pro se* motion for order granting a Rule 29 motion. Mot. for Order Granting Rule 29 Mot., ECF No. 1108 ("Ninth Cox *Pro Se* Mot.").

On February 3, 2023, Mr. Cox filed a *pro se* motion to compel the Court to release him from custody. Mot. to Compel Court to Release Def. from Custody, ECF No. 1116 ("Tenth Cox *Pro Se* Mot.").

On February 12, 2023, the Government filed its memorandum in opposition to

Defendants' motions for acquittal and a new trial. Mem. in Opp'n, ECF No. 1117 ("Opp'n").

On February 17, 2023, Mr. Cox filed a *pro se* motion for an order stating that his Rule 29 motion should be granted. Mot. for Order re: Rule 29, ECF No. 1120 ("Eleventh Cox *Pro Se* Mot.").

On February 21, 2023, Defendants filed a motion for extension of time to file reply briefs. Mot. for Extension of Time, ECF No. 1118.

On February 22, 2023, the Court granted the motion for extension of time. Order, ECF No. 1119.

On February 23, 2023, Mr. Cox filed several *pro se* motions challenging his conviction. Rule 29 Mot. to Establish Inchoate Offense, ECF No. 1122 ("Twelfth Cox *Pro Se* Mot."); Mot. to Establish Section 846 Inchoate Offense, ECF No. 1123 ("Thirteenth Cox *Pro Se* Mot."); Mot. to Challenge Constitutionality of CSA Section 841(b) Penalties, ECF No. 1124 ("Fourteenth Cox *Pro Se* Mot."); Mot. to Compel the Court to Release Charged Def., ECF No. 1125 ("Fifteenth Cox *Pro Se* Mot.").

On March 1, 2023, Mr. Wallace Best filed a reply brief in support of his motion for acquittal. Def. Resp. to Gov't Mem. in Opp'n, ECF No. 1121 ("Wallace Best Reply").

On March 6, 2023, Mr. Thomas filed a reply brief in support of his motion for acquittal. Def.'s Reply Brief in Supp. of Rule 29 and Rule 22 Mots., ECF No. 1126 ("Thomas Reply").

On March 7, 2023, Mr. Cox, through counsel, filed a reply brief in support of his motion for acquittal. Def.'s Reply to Gov't Resp., ECF No. 1127 ("Cox Reply").

On March 22, 2023, Mr. Wallace Best filed a motion for leave to file a supplemental brief. Mot. for Leave to File, ECF No. 1132.

On March 23, 2023, the Court granted the motion for leave. Order, ECF No. 1133.

8

On March 23, 2023, Mr. Frank Best filed a *pro se* motion for acquittal. Def. Rule 29 Mot., ECF No. 1141 ("First Frank Best *Pro Se* Mot.").

On March 24, 2023, Mr. Wallace Best filed a supplemental memorandum in support of his motion for acquittal. Wallace Best Suppl. Mem.

On March 30, 2023, Mr. Frank Best, through counsel, filed a *pro se* motion for acquittal. Mot. for Acquittal *Pro Se* Request, ECF No. 1137 ("Second Frank Best *Pro Se* Mot.").

On April 6, 2023, the Government file a response to Mr. Wallace Best's supplemental memorandum. Gov't Resp. to Def.'s Suppl. Mem., ECF No. 1138 ("Suppl. Opp'n").

On April 11, 2023, Mr. Cox filed a *pro se* motion to set aside and vacate the jury verdict. Def.'s Rule 29 Mot. to Set Aside and Vacate Verdict, ECF No. 1143 ("Sixteenth Cox *Pro Se* Mot.").

On April 17, 2023, Mr. Cox filed two *pro se* motions for acquittal and Mr. Frank Best filed one *pro se* motion for acquittal. Def.'s Rule 29 and Rule 33 Mots., ECF No. 1142 ("Third Frank Best *Pro Se* Mot."); Def.'s Rule 29 and Rule 33 Mot., ECF No. 1144 ("Seventeenth Cox *Pro Se* Mot."); Def.'s Mot. to Conclusively Establish Gov't's Confidential Source Exonerates Count One, ECF No. 1145 ("Eighteenth Cox *Pro Se* Mot.").

On April 24, 2023, Mr. Wallace Best filed a *pro se* motion. Mot. to Establish Gov't's Confidential Source Testimony Exonerates Count One, ECF No. 1146 ("First Wallace Best *Pro Se* Mot.").

On April 27, 2023, Mr. Wallace Best filed two *pro se* motions for acquittal. Rule 29 and Rule 33 Mot. for New Trial, ECF No. 1147 ("Second Wallace Best *Pro Se* Mot."); Mot. to Set Aside and Vacate Verdict, ECF No. 1148 ("Third Wallace Best *Pro Se* Mot.").

On May 8, 2023, Mr. Frank Best, through counsel, filed a *pro se* motion for acquittal.

Mot. for Acquittal, ECF No. 1149 ("Fourth Frank Best *Pro Se* Mot.").

On May 31, 2023, Mr. Cox filed three *pro se* motions. Mot. to Set Aside and Vacate Conviction, ECF No. 1150 ("Nineteenth Cox *Pro Se* Mot."); Mot. to Take Judicial Notice, ECF No. 1151 ("Twentieth Cox *Pro Se* Mot."); Mot. to Establish Conspiracy/Agreement, ECF No. 1152 ("Twenty-First Cox *Pro Se* Mot.").

On June 5, 2023, Mr. Cox filed a *pro se* motion for oral argument. Mot. for Oral Argument, ECF No. 1153 ("Twenty-Second Cox *Pro Se* Mot.").

On June 5, 2023, Mr. Cox filed a *pro se* supplemental motion to establish additional grounds for a new trial. Emergency Suppl. Mot. to Establish Add'l Grounds for New Trial, ECF No. 1154 ("Twenty-Third Cox *Pro Se* Mot.").

On June 20, 2023, Mr. Cox filed a *pro se* motion for a status conference hearing. Mot. & Aff. in Supp. of Status Conf. Hr'g, ECF No. 1157 ("Twenty-Fourth Cox *Pro Se* Mot.").

On July 19, 2020, Mr. Cox filed a *pro se* motion for a status conference hearing. Mot. for Status Conf. Hr'g, ECF No. 1162 ("Twenty-Fifth Cox *Pro Se* Mot.").

On July 19, 2023, Mr. Cox filed a *pro se* motion to dismiss Count One. Mot. to Dismiss, ECF No. 1163 ("Twenty-Sixth Cox *Pro Se* Mot.").

## II.    STANDARD OF REVIEW

### A.    Rule 29

When reviewing a motion for judgment of acquittal, courts must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

"A court may enter a judgment of acquittal only if the evidence that the defendant

committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Facen*, 812 F.3d 280, 286 (2d Cir. 2016) (citations, alterations, and internal quotation marks omitted). A defendant challenging the sufficiency of the evidence thus "bears a heavy burden." *United States v. Si Lu Tian*, 339 F.3d 143, 150 (2d Cir. 2003) (internal quotation marks omitted).

"[C]ourts must be careful to avoid usurping the role of the jury when confronted with a motion for acquittal." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003). Under this standard, the court "may not usurp the role of the jury by substituting its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *United States v. Heras*, 609 F.3d 101, 105 (2d Cir. 2010) (quoting *United States v. MacPherson*, 424 F.3d 183, 187 (2d Cir. 2005)). A court must "defer to the jury's assessment of witness credibility and . . . resolution of conflicting testimony." *United States v. Bala*, 236 F.3d 87, 93–94 (2d Cir. 2000). In sum, "[t]he government's case need not exclude every possible hypothesis of innocence," *United States v. Martinez*, 54 F.3d 1040, 1042–43 (2d Cir. 1995) (internal quotation marks omitted), and where "either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, [the court] must let the jury decide the matter," *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999) (alteration in original) (internal citation and quotation marks omitted).

At the same time, the Court is also mindful of its responsibility to protect Defendants' Fifth Amendment rights. *See, e.g.*, *United States v. Valle*, 807 F.3d 508, 513 (2d Cir. 2015). If courts "are to be faithful to the constitutional requirement that no person may be convicted unless the Government has proven guilt beyond a reasonable doubt, we must take seriously our obligation to assess the record to determine . . . whether a jury could *reasonably* find guilt

beyond a reasonable doubt." *Id.* at 515 (alteration in original) (quoting *United States v. Clark*, 740 F.3d 808, 811 (2d Cir. 2014)). In particular, "specious inferences are not indulged, because it would not satisfy the Constitution to have a jury determine that the defendant is *probably* guilty." *Id.* (quoting *United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008)).

### B.   Rule 33

Rule 33 allows the court to "grant a new trial to [a] defendant if the interests of justice so require." Fed. R. Crim. P. 33. Under Rule 33, the trial court has "broad discretion to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992). In deciding such a motion, courts may weigh the evidence and the credibility of witnesses but cannot "wholly usurp" the role of the jury. *United States v. Autuori*, 212 F.3d 105, 120 (2d Cir. 2000). Accordingly, the power to set aside a jury verdict "should be used 'sparingly' and only 'in the most extraordinary circumstances.'" *United States v. Zayac*, No. 3:09-cr-00136 (JCH), 2011 WL 5238823, at *2 (D. Conn. Nov. 1, 2011) (quoting *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001)).

The court also "must examine the entire case, take into account all facts and circumstances, and make an objective evaluation." *Ferguson*, 246 F.3d at 134. "The ultimate test . . . is whether letting a guilty verdict stand would be a manifest injustice." *Id.* To grant the motion, "[t]here must be a real concern that an innocent person may have been convicted." *Id.* (internal quotation marks omitted).

### III.   DISCUSSION

Defendants argue that the Court should enter judgment of acquittal on Count One, Count Two, and the section 851 sentencing enhancement findings. In the alternative, Defendants move for a new trial.

12

The Court will address each issue in turn.

### A.   Count One

Mr. Wallace Best, Mr. Thomas, and Mr. Cox (collectively, "Count One Defendants") make the following arguments for judgment of acquittal on Count One: First, the Count One Defendants argue that the Government only offered evidence sufficient to find a buyer-seller relationship between Oscar Garcia-Hernandez ("Mr. Garcia-Hernandez") and Elvis Nuñez ("Mr. Nuñez"). Wallace Best Mot. at 3; Thomas Mot. at 14–19; Cox Mot. at 5–8. Second, Mr. Wallace Best, Mr. Thomas, and Mr. Cox argue that, even if the Government has shown that a conspiracy existed, the evidence was insufficient to show that the charged conspiracy existed and that they were knowing members. Wallace Best Mot. at 3–4; Cox Mot. at 10–16; Thomas Mot. at 19–22. Finally, Mr. Thomas argues that there was insufficient evidence for the jury to find that the quantities charged in Count One were attributable to him. Thomas Mot. at 22–23.

The Court will address each argument in turn.

### i.   Buyer-Seller Exception

"[T]he mere purchase and sale of drugs does not, without more, amount to a conspiracy to distribute narcotics." *United States v. Brock*, 789 F.3d 60, 63 (2d Cir. 2015) (citing *United States v. Parker*, 554 F.3d 230, 234 (2d Cir. 2009)). "[T]he buyer's agreement to buy from the seller and the seller's agreement to sell to the buyer cannot 'be the conspiracy to distribute, for it has no separate criminal object.'" *Parker*, 554 F.3d at 235 (internal alterations omitted) (quoting *United States v. Wexler*, 522 F.3d 194, 208 (2d Cir. 2008)). Although the buyer-seller exception "does not protect either the seller or buyer from a charge they conspired together to transfer drugs if the evidence supports a finding that they shared a conspiratorial purpose to advance other transfers, whether by the seller or by the buyer," *id.* at 235, "[e]vidence that a buyer intends

to resell the product instead of personally consuming it does not necessarily establish that the buyer has joined the seller's distribution conspiracy," *United States v. Hawkins*, 547 F.3d 66, 74 (2d Cir. 2008).

Mr. Wallace Best, Mr. Thomas, and Mr. Cox argue that the evidence showed two buyer-seller transactions, but no overarching conspiracy as charged in the Indictment. Thomas Mot. at 14; Cox Mot. at 5; Wallace Best Mot. at 2–3. More specifically, the Count One Defendants argue that "the fact that there were two drug transactions, involving the same or overlapping participants, does not establish that there was a cohesive conspiracy." Thomas Mot. at 15; *see also* Cox Mot. at 6; Wallace Best Mot. at 4. In Mr. Wallace Best, Mr. Thomas's, and Mr. Cox's view, this case is similar to *United States v. Rivera*, 273 F.3d 751, 755 (7th Cir. 2001), where a "middleman," buyer, and seller were not considered members of a conspiracy. Thomas Mot. at 15–17; *see also* Cox Mot. at 6–8; Wallace Best Mot. at 3. The Count One Defendants argue that the two transactions were indicative of a buyer-seller relationship because the amounts purchased were different, Mr. Nuñez paid for the drugs upfront, and Mr. Garcia-Hernandez "did not have any interest in what [Mr.] Nuñez did with the drugs after he purchased them." Thomas Mot. at 17; *see also* Cox Mot. at 8; Wallace Best Mot. at 4. Mr. Wallace Best, Mr. Thomas, and Mr. Cox emphasize that they had no meaningful role in the transactions, other than coordinating introductions, and Mr. Nuñez "acted on his own." Thomas Mot. at 18–19; *see also* Cox Mot. at 9; Wallace Best Mot. at 3–4.

In response, the Government argues that there was sufficient evidence for the jury to conclude that there was more than just a buyer-seller relationship between Mr. Nuñez and Mr. Garcia-Hernandez. Opp'n at 42. More specifically, the Government emphasizes that there was evidence of advanced planning to "deal in large quantities of drugs not intended for personal

use." *Id.* at 42–43. In the Government's view, the "evidence was quite clear" and "included months of recorded meetings, calls, and texts between [Mr.] Nuñez and each of the Count One defendants, wherein [Mr. Wallace] Best, [Mr.] Thomas, and [Mr.] Cox set forth a plan to 'open up the pipeline' of drugs from California to Connecticut." *Id.* at 43–44. The Government argues that *Rivera* is distinguishable because Mr. Garcia-Hernandez was "aware of and agreed to the further distribution of the drugs by Nuñez" and stated that they "are trying to establish ourselves in Connecticut and open up a little store right there." *Id.* at 44–45. The Government emphasizes that the two transactions here included the same "people, prices, locations, methods of payment and delivery." *Id.* at 45–46.

The Court agrees.

To determine whether the buyer-seller exception applies, courts consider "whether there was prolonged cooperation between the parties, a level of mutual trust, standardized dealings, sales on credit, . . . and the quantity of drugs involved." *Hawkins*, 547 F.3d at 74 (internal citations and quotation marks omitted). Other relevant factors are "whether the buyer sought to advance the conspiracy's interests, whether there was a longstanding relationship between the buyer and seller, whether the buyer performed other duties on behalf of the conspiracy, whether the quantity of drugs purchased suggests intent to redistribute, whether the buyer's profits were shared with members of the conspiracy, and whether the buyer had the physical, financial, or other protection of the conspiracy." *United States v. Faltine*, No. 13-CR-315 (KAM), 2016 WL 1700385, at *3 (E.D.N.Y. Apr. 26, 2016) (citing *United States v. Rojas*, 617 F.3d 669, 675 (2d Cir. 2010)).

Here, there was sufficient evidence for the jury to infer that both transactions involved a large quantity of drugs that suggested distribution, *see* Gov't Ex. 255 (Mr. Wallace Best, Mr.

Cox., Mr. Thomas, and Mr. Nuñez discussing the plan to have Mr. Nuñez "get the first one to try [it] out" and then, if that went well, they would "get the five"), there was mutual trust and several longstanding relationships between and among Mr. Cox, Mr. Thomas, Mr. Wallace Best and Mr. Nuñez, as well as Mr. Garcia-Hernandez, *see, e.g.*, Gov't Exs. 255 (Mr. Cox telling Mr. Garcia-Hernandez that Mr. Nuñez is "official" and that Mr. Cox is "all for it" and Mr. Thomas reiterating that "we with it," to which Mr. Garcia-Hernandez responds "as long as you guys know him"), 258, Slide 26 (Mr. Nuñez telling Mr. Wallace Best that they had "been at this for 12 years" and that Mr. Wallace Best "know[s] [he] don't lie"), the two transactions involved several months of cooperation, *see, e.g.*, Gov't Exs. 258, Slide 18 (September 27, 2019 conversation), 254 (September 30, 2019 conversation), 258, Slide 21 (October 4, 2019 conversation), 255 (October 4, 2019 meeting), 258, Slide 22 (October 17, 2019 conversation), 258, Slide 37 (November 19, 2019 conversation), 258, Slide 50 (December 19, 2019 conversation), 258, Slide 56 (December 30, 2019 conversation), 258, Slide 62 (January 11, 2020 conversation), 258, Slide 65 (January 15, 2020 conversation), 257 (January 20, 2020 meeting), and Mr. Cox, Mr. Thomas, and Mr. Wallace Best sought to advance their own interests, as well as Mr. Garcia-Hernandez's interests, *see, e.g.*, Gov't Ex. 255 (Mr. Cox stating "we here, we Connecticut" and Mr. Garcia-Hernandez responding that his people "are trying to establish ourselves in Connecticut and open up a little store right there"). Moreover, while not completely standardized, both transactions involved many of the same people, as well as the same method of payment and method of delivery, via Mr. Nuñez.

While the transactions were not done on credit, there was no evidence of profit sharing, and there was no evidence of physical, financial, or other protection, there was sufficient evidence for the jury to find that the buyer-seller exception did not apply. *See United States v.*

*Dove*, 884 F.3d 138, 151 (2d Cir. 2018) (upholding a narcotics conspiracy conviction and finding the buyer-seller exception does not apply because the defendants "enjoyed mutual trust and extensive cooperation, including . . . familiarity with [his co-defendant's] criminal history and ability to procure large quantities of high-quality narcotics," there was "a history of standardized dealings in wholesale quantities," and the defendants "were planning future sales of wholesale quantities of heroin plainly not intended for personal use"); *United States v. Fabian*, No. 16-cr-131 (DLI), 2022 WL 1085243, at *6–7 (E.D.N.Y. Apr. 11, 2022) (finding there was sufficient evidence to support a narcotics conspiracy conviction because the defendants transacted "[l]arge quantities of illegal drugs, including cocaine, . . . valued in the tens of thousands of dollars," there was "significant trust between" two of the defendants, and the defendants "established a practice of meeting at the stash house to transfer drugs and to prepare them for sale to other buyers," which show the "extent of cooperation and mutual dependence").

Accordingly, Mr. Wallace Best's, Mr. Thomas's, and Mr. Cox's motions will be denied on this basis.

### ii.  Existence of and Membership in the Charged Conspiracy

"To convict a defendant as a member of a conspiracy, the government must prove that the defendant agree[d] on the essential nature of the plan, and that there was a conspiracy to commit a particular offense and not merely a vague agreement to do something wrong." *Lorenzo*, 534 F.3d at 159 (internal quotation marks and citations omitted). There must be "some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." *United States v. Morgan*, 385 F.3d 196, 206 (2d Cir. 2004) (quoting *United States v. Gaviria*, 740 F.2d 174, 183 (2d Cir. 1984)).

17

"Proof that the defendant knew that some crime would be committed is not enough," *id.* (quoting *United States v. Friedman*, 300 F.3d 111, 124 (2d Cir. 2002)), and "[a]n individual defendant's membership in a conspiracy may not be established simply by his presence at the scene of a crime, nor by the fact that he knows that a crime is being committed," *Hawkins*, 547 F.3d at 71 (internal quotation marks and citation omitted). Indeed, "a defendant's mere presence at the scene of a criminal act or association with conspirators does not constitute intentional participation in the conspiracy, even if the defendant has knowledge of the conspiracy." *Lorenzo*, 534 F.3d at 159.

"Evidence tending to show knowing participation in the conspiracy is also needed, *i.e.*, facts sufficient to draw a logical and convincing connection between circumstantial evidence of an agreement, and the inference that an agreement was in fact made." *Hawkins*, 547 F.3d at 71 (internal quotation marks and citations omitted). "The government need not show that the defendant knew all of the details of the conspiracy, 'so long as he knew its general nature and extent.'" *United States v. Huezo*, 546 F.3d 174, 180 (2d Cir. 2008).

Mr. Thomas argues that the Government did not prove that he was part of the charged conspiracy and, if the Government did prove a conspiracy, it was a conspiracy that involved Mr. Nuñez and Mr. Garcia-Hernandez and took place primarily in California. Thomas Mot. at 19. More specifically, Mr. Thomas contends that the Government failed to "link[]" the "West Coast defendants" to the "Connecticut defendants." *Id.* In Mr. Thomas's view, while there was "drug activity in Bridgeport using drugs not supplied by" Mr. Garcia-Hernandez at the "same time that [Mr. Garcia-Hernandez] and the West Coast defendants were involved with drugs on the West Coast," there was insufficient "indicia of criminal partnership" for the jury to conclude that the two groups were "part of a criminal partnership" before Mr. Nuñez was introduced. *Id.* at 20. Mr.

Thomas argues that, because Mr. Nuñez was a government informant, he could "not legally conspire with one group on behalf of the other," and Mr. Nuñez could have "provide[d] the opportunity for conspirators to commit a crime" but he could not "create the conspiracy and carry out all of its material terms and objectives. *Id.* at 20–22.

Similarly, Mr. Cox argues that the Government did not prove the conspiracy charged in Count One, but instead offered evidence only sufficient to conclude that there was a conspiracy "centered on Mexico and Southern California and involving none of the charged defendants." Cox Mot. at 10. Mr. Cox emphasizes that Mr. Nuñez coordinated the pertinent details of both transactions with Mr. Garcia-Hernandez, and Mr. Cox, and the other Count One Defendants, did not "provide[] any money to facilitate the transaction" or "receive[], possess[], transport[], distribute[], or otherwise c[o]me into contact at any time with the drugs that Mr. Nuñez had bought." *Id.* at 10–11. Mr. Cox emphasizes that none of the Defendants even "expected to receive any drugs or any profits." *Id.* at 11. In Mr. Cox's view, the wiretap evidence of conversations before and after each transaction were insufficient because there was no "meeting of the minds" as to any conspiracy. *Id.* Mr. Cox emphasizes that Mr. Nuñez negotiated and coordinated both transactions on his own and argues that he did so at the direction of the DEA. *Id.* at 11–14. Finally, Mr. Cox argues that he lacked the specific intent to have knowingly joined a conspiracy with the charged purpose of distributing narcotics because "none of the Count One defendants expected to receive anything of value out of the two transactions" and "[n]one of them put in any money, and none of them asked for anything in return." *Id.* at 14–16.

Mr. Wallace Best argues that there was insufficient evidence to find that he was a member of the charged conspiracy because he "understood that he was never going to possess" any of the drugs Mr. Nuñez had purchased the drugs for his own distribution. Wallace Best

Mot. at 5. Mr. Wallace Best emphasizes that he was not essential to either transaction and he never received any of the "profit" from the transactions. *Id.* at 5–8.

In response, the Government argues that there was sufficient evidence as to Count One because Mr. Wallace Best, Mr. Thomas, and Mr. Cox understood the goals, scope, and aims of the conspiracy, took steps to further the goals of the conspiracy, and had a stake in its outcome. Opp'n at 31–42. More specifically, in the Government's view, the evidence shows that Defendants "were very well aware of the anticipated transactions, including details about price, the nature and quality of the narcotics, and the anticipated distribution of proceeds." *Id.* at 32. Moreover, the Government argues that, in this Circuit, "the defendant[s] need not have been fully informed as to all of the details, or the scope, of the conspiracy in order to justify an inference of knowledge . . . , nor was the defendant required to 'have joined in all of the conspiracy's unlawful objectives.'" *Id.* (quoting Post-Trial Jury Instructions at 41–42, ECF No. 1043 ("Post-Trial Jury Instructions")). The Government emphasizes that, in wiretap calls, Defendants "repeatedly discussed the purchase of one kilogram, followed by five kilograms of heroin," "discussed the kilograms being heroin, and the quality of the heroin available for purchase," as well as the "date, time, or place of the buys." *Id.* at 32–34.

The Government next argues that the extent of participation in the conspiracy does not mean that Defendants were not members of the charged conspiracy. *Id.* at 35. More specifically, the Government contends that the evidence was sufficient to show that Defendants "each took meaningful steps to assist in furthering the goals of the Count One conspiracy, starting with the introduction of [Mr.] Nuñez first to [Mr.] Thomas, then to [Mr.] Cox, and finally to" Mr. Garcia-Hernandez. *Id* at 35–36. The Government emphasizes that Defendants vouched for each other, for Mr. Garcia-Hernandez, and for Mr. Nuñez, which was "absolutely essential" for the

transactions to move forward, *id.* at 36, and Defendants remained involved with "logistics of the plan, including weighing in on the price, quality, and quantity of narcotics," among other things, *id.* at 37.

Finally, the Government argues that Defendants "made clear the desired outcomes of the Count One conspiracy: they expected money, and they expected drugs that they could sell." *Id.* at 38. In the Government's view, "the expectation of getting money from the deals was discussed during several in-person meetings and phone calls leading up to the first" transaction. *Id.* at 38–39. The Government also contends that Defendants "expected . . . to receive narcotics" because the goal of the conspiracy "was not to conduct two isolated transactions, but to open up the pipeline . . . between [Mr. Garcia-Hernandez's] cheap supply of heroin in Mexico, and [Mr. Wallace] Best, [Mr.] Thomas, and [Mr.] Cox in Connecticut." *Id.* at 40–41.

In his reply, Mr. Thomas argues that the Government, in its opposition, failed to present evidence of a cohesive conspiracy and instead "cherry-picks snippets from the conversations and strings them together to argue that they constitute evidence of an overarching agreement." Thomas Reply at 1–2. More specifically, Mr. Thomas argues that the evidence the Government described "is not the drug trafficking offense" charged and instead, the "evidence at trial centered on just two discrete drug distribution transactions involving [Mr.] Nuñez and the West Coast defendants, and the drugs transferred in those transactions were not part of some 'pipeline' of drugs to Connecticut." *Id.* at 2. Mr. Thomas emphasizes that the drugs were never going to Defendants and were always "destined for someone else" and contends that the Government "never addresses . . . how a reasonable jury could accept, on the one hand, the fact that the drugs were never going to [Defendants], and, on the other hand, reasonably conclude that the same drugs were being sent to [Defendants] as part of a conspiracy to distribute the drugs in

Connecticut." *Id.* at 3–4. Mr. Thomas again emphasizes that Mr. Nuñez negotiated the transactions and made the pertinent decisions. *Id.* at 5.

Mr. Thomas also argues that there was no "pre-existing drug conspiracy or agreement between Mr. Thomas, [Mr.] Cox, and [Mr.] Garcia-Hernandez," *id.* at 5–7, and evidence that Defendants knew that the drugs purchased in California were never being transported to Connecticut "raises a reasonable doubt as to the entire objective of the charged conspiracy and whether [Defendants] specifically agreed to it," *id.* at 7–8. In Mr. Thomas's view, "because [Defendants] never paid for any drugs, never received any drugs, and never anticipated receiving anything other than perhaps money from [Mr.] Nuñez, there was no basis for the jury to conclude that anyone other than [Mr.] Nuñez was supposed to distribute the drugs after purchase." *Id.* at 10.

Similarly, Mr. Wallace Best argues that, while he may have "aided and abetted" Mr. Nuñez in transacting with Mr. Garcia-Hernandez, there was insufficient evidence to find that he joined the charged conspiracy. Wallace Best Reply at 1–3.

Mr. Cox argues that this case is one in which the Government is attempting to expand the scope of conspiracy law. Cox Reply at 3–4. More specifically, Mr. Cox contends the facts of this case are "unique, and difficult to locate within the realm of typical drug cases or conspiracy prosecutions." *Id.* Additionally, Mr. Cox reiterates that the evidence was insufficient to show that there was any "meeting of the minds" or that he had the requisite intent. *Id.* at 4–5. Finally, Mr. Cox argues that, while the Government may have proven a conspiracy that "centered on Mexico and San Diego, California," there was insufficient evidence to find the larger conspiracy charged. *Id.* at 5–6. Mr. Cox also emphasizes that the charged conspiracy "would not have occurred without the Government's insistence, facilitation, and, ultimately, exercise of total authority." *Id.*

at 6–7.

The Court agrees with the Government.

"The government need not prove the defendant's familiarity with all of the conspiracy's details; it may demonstrate simply the defendant's awareness of the 'general nature and extent' of the conspiracy." *United States v. Anderson*, 747 F.3d 51, 61 (2d Cir. 2014) (quoting *Huezo*, 546 F.3d at 180). "It is not necessary to prove that the defendant expressly agreed with other conspirators on a course of action; 'it is enough,' rather, to show that 'the parties ha[d] a tacit understanding to carry out the prohibited conduct.'" *Id.* (quoting *United States v. Nusraty*, 867 F.2d 759, 763 (2d Cir. 1989)). "[A] defendant may be a conspirator even if he knew only one other member of the group," *id.*, and "a single act may be sufficient for an inference of [his] involvement in a criminal enterprise of substantial scope at least if the act is of a nature justifying an inference of knowledge of the broader conspiracy." *Huezo*, 546 F.3d at 180 (internal quotation marks omitted).

Here, there was sufficient evidence for the jury to infer that Mr. Wallace Best, Mr. Cox, and Mr. Thomas had an "awareness of the 'general nature and extent' of the conspiracy," despite the changing plans. *Anderson*, 747 F.3d at 61 (citations omitted).

More specifically, there was evidence that Mr. Wallace Best, Mr. Thomas, and Mr. Cox discussed a plan to purchase one kilogram in the first transaction and then five kilograms in the second transaction, *see, e.g.*, Gov't Ex. 255 (Mr. Wallace Best, Mr. Cox., Mr. Thomas, and Mr. Nuñez discussing the plan to have Mr. Nuñez "get the first one to try [it] out" and then, if that went well, they would "get the five"), discussed the type and quality of drugs that they wanted to purchase, *see, e.g.*, *id.* (Mr. Cox explaining to Mr. Wallace Best, Mr. Thomas, and Mr. Nuñez that the drug is "never tar . . . you got the brown. I swear to God to you man the dope that I've

23

been getting . . . I only got one bad batch"), discussed potential modes of payment, *see, e.g.*, Gov't Exs. 258, Slide 18 (Mr. Thomas relaying that the sellers would be willing to trade the drugs for ammunition), 255 (Mr. Cox stating that they can "get it for 25" in California), confirmed the success of the first transaction, *see, e.g.*, Gov't Exs. 258, Slide 55 (Mr. Nuñez sharing a picture of the drugs from the first transaction with Mr. Wallace Best), 258, Slide 59 (Mr. Nuñez confirming the first transaction went well and stating "Trying to put Round 2 together" to which Mr. Cox responded "That's wats sup"), and confirmed, after the first transaction, that the second transaction would include five kilograms, one of which would go to the Count One Defendants, *see, e.g.*, Gov't Ex. 257 (Mr. Thomas, Mr. Cox, Mr. Wallace Best, and Mr. Nuñez discussed that "we have to do five or more," "one" of which would go to Mr. Cox, Mr. Wallace Best, and Mr. Thomas, and that they "don't want nothing with fent" this time).

There was also sufficient evidence from which the jury could infer that Mr. Wallace Best, Mr. Cox, and Mr. Thomas participated in the conspiracy by vouching for each other, for Mr. Nuñez, and for Mr. Garcia-Hernandez, *see, e.g.*, Gov't Exs. 255 (Mr. Cox telling Mr. Garcia-Hernandez that Mr. Nuñez is "official" and that Mr. Cox is "all for it" and Mr. Thomas reiterating that "we with it," to which Mr. Garcia-Hernandez responds "as long as you guys know him"), 258, Slide 26 (Mr. Nuñez telling Mr. Wallace Best that they had "been at this for 12 years" and that Mr. Wallace Best "know[s] [he] don't lie"), participating in several planning meetings, *see, e.g.*, Gov't Exs. 258, Slide 18 (September 27, 2019 conversation), 255 (October 4, 2019 meeting), 258, Slide 22 (October 17, 2019 conversation), 258, Slide 37 (November 19, 2019 conversation), 258, Slide 50 (December 19, 2019 conversation), 258, Slide 56 (December 30, 2019 conversation), 257 (January 20, 2020 meeting), and remained involved as they determined the details of the second transaction, *see, e.g.*, Gov't Ex. 257 (Mr. Thomas, Mr. Cox,

Mr. Wallace Best, and Mr. Nuñez meet to discuss the next transaction).

Finally, there was sufficient evidence for the jury to infer that Mr. Wallace Best, Mr. Thomas, and Mr. Cox had a stake in the success of the conspiracy because they expected money from setting up the transactions, *see, e.g.*, Govt. Exs. 258, Slide 21 (Mr. Cox states that Mr. Nuñez should "just be sure I get some money," and Mr. Wallace Best stating "we gonn' eat"), 256 (Mr. Cox stating that "we gotta see some money out of this"), 258, Slide 26 (Mr. Wallace Best referencing a "four-way split" of the money), 258, Slide 27 (Mr. Thomas stating that he "told [Mr. Cox] what it is, so we could make some money"), expected drugs before the second transaction, *see, e.g.*, Gov't Ex. 257 (Mr. Thomas, Mr. Cox, Mr. Wallace Best, and Mr. Nuñez discussed that "we have to do five or more," "one" of which would go to Mr. Cox, Mr. Wallace Best, and Mr. Thomas, and that they "don't want nothing with fent" this time), and discussed long-term plans, *see, e.g.*, Gov't Exs. 258, Slide 62 (Mr. Thomas stating "for me it will get greater later" and that "if we make $80, hell yeah we in the game"), 256 (Mr. Cox telling Mr. Nuñez and Mr. Wallace best they "we good" and "we gonna open up the pipeline").

In light of this, there was sufficient evidence for the jury to conclude that the charged conspiracy existed, and that Mr. Cox, Mr. Wallace Best, and Mr. Thomas were knowing members. *See, e.g.*, *Anderson*, 747 F.3d at 64–54 (affirming a conspiracy conviction where the defendant "followed the drug courier to a very private place (the cul-de-sac) appropriate for a secret transfer of illicit goods; . . . was shown to have been in independent contact thirty-four times with two operators of the trafficking organization, including on the day of, and the day preceding, the planned delivery; and . . . did not express surprise at or rebuff his alleged co-conspirator's attempts to engage with him consistent with expectations of making a delivery"); *United States v. Desimone*, 119 F.3d 217, 224 (2d Cir. 1997) (finding there was sufficient

evidence to support a defendant's narcotics conspiracy conviction because the defendant was "continu[ally] involv[ed] in the deal after introducing [buyer] to the [seller]" and acted "as both an advisor to [buyer] and a mediator between [buyer] and [seller] as they attempted to consummate the narcotics sale" by "monitor[ing] progress with [seller] through regular telephone conversations and maintain[ing] independent contact with both [buyer] and [seller] to discuss the proposed transaction").

Accordingly, Mr. Thomas's, Mr. Cox's, and Mr. Wallace Best's motions will be denied on these grounds.

### iii.  Quantity

"[D]rug quantity is an element that must always be pleaded and proved to a jury or admitted by a defendant to support conviction or sentence on an aggravated offense under Section 841(b)(1)(A) or (b)(1)(B)." *United States v. Gonzalez*, 420 F.3d 111, 131 (2d Cir. 2005). "The drug quantity attributable to a defendant knowingly participating in a drug distribution conspiracy includes (1) transactions in which he participated directly; (2) transactions in which he did not personally participate, but where he knew of the transactions or they were reasonably foreseeable to him; and (3) quantities he agreed to distribute or possess with intent to distribute 'regardless of whether he ultimately committed the substantive act.'" *United States v. Pauling*, 924 F.3d 649, 657 (2d Cir. 2019) (quoting *Jackson*, 335 F.3d at 181).

Mr. Thomas argues that the drug quantities charged as part of Count One were not foreseeable to him because he did not decide what or how much to purchase and did not communicate with Mr. Nuñez about the purchases. Thomas Mot. at 22. More specifically, Mr. Thomas argues he was not involved in the discussions between Mr. Nuñez and Mr. Garcia-Hernandez, during which they decided when the transactions would occur, the quantities

involved, and the prices, and only heard about them after the fact. *Id.* at 23. In Mr. Thomas's

view, the evidence only shows that Mr. Thomas may have expected to "receive[] small amounts

of money whenever Nuñez was able to make a sale through" Mr. Garcia-Hernandez. *Id.*

In response, the Government argues that Mr. Thomas "ignores the numerous in-person

meetings he had with [Mr.] Cox, [Mr. Wallace] Best, and [Mr.] Nuñez where they explicitly

discuss the plan for the purchases of narcotics, including the quantities . . . and the prices."

Opp'n at 50. The Government points to recorded conversations that took place on September 27,

2019, October 4, 2019, and January 20, 2020, as specific times that Mr. Thomas was involved in

discussions about price and quantity in advance of the transactions. *Id.* at 51 & n.13.

The Court agrees.

In advance of the first transaction, which occurred on December 20, 2019, Mr. Thomas

participated in two notable meetings. On September 27, 2019, Mr. Wallace Best, Mr. Thomas,

and Mr. Cox spoke to Mr. Nuñez about a potential transaction in California. Gov't Ex. 258, Slide

18 (Mr. Nuñez, Mr. Thomas, and Mr. Wallace Best trying to coordinate when they will be able

to meet up with Mr. Cox, with Mr. Thomas acting as the conduit between Mr. Nuñez and Mr.

Cox). Mr. Thomas's "role" in this call was to arrange for Mr. Cox's participation. *Id.* During this

conversation, they discussed what type of drug they wanted to purchase, *id.* (Mr. Nuñez stating

that it will be "straight up" and not "the other thing with that F thing on it"); *see also id.* (Mr.

Thomas confirming with Mr. Cox that it would be "straight up"), and they discussed potential

methods of payment, *id.* (Mr. Thomas relaying that the sellers would be willing to trade the

drugs for ammunition).

Then, on October 4, 2019, Mr. Thomas, Mr. Best, Mr. Cox, and Mr. Nuñez spoke with

Mr. Garcia-Hernandez. Gov't Ex. 255. During this meeting, Mr. Thomas, Mr. Wallace Best, Mr.

Cox, and Mr. Nuñez discussed the quantity of drug they could expect at the first transaction, *id.*
(Mr. Cox and Mr. Nuñez stating that "they" are "only gonna give [them] one" because they need
to build a "foundation"), they again discussed the type of drug they wanted to purchase, *id.* (Mr.
Nuñez, Mr. Wallace Best, and Mr. Cox discussing "that brown shit," "that black thing . . . the
black tar," and "the brown"), and they more specifically discussed prices, *id.* (Mr. Cox stating
that they can "get it for 25" in California). Once Mr. Garcia-Hernandez called into the meeting,
they discussed having Mr. Nuñez "get the first one to try [it] out" and then, if that went well,
they would "get the five." *Id.* While Mr. Thomas's speaking role was minimal, he encouraged
Mr. Garcia-Hernandez to "put it together" and stated that he "put [his] life on it." *Id.* Mr. Thomas
also encouraged Mr. Cox to "get a picture" so they could confirm what type of drug they were
purchasing and asked Mr. Garcia-Hernandez to confirm for Mr. Nuñez that "it's gon' be that
brown." *Id.*

These initial conversations focused on purchasing heroin; however, on November 19,
2019, Mr. Thomas, Mr. Wallace Best, and Mr. Nuñez discussed the possibility of purchasing a
mix of heroin and fentanyl so that the price would be lower. Gov't Ex. 258, Slide 37 at 1:10:70–
1:32:01 (discussing the possibility that 60% to 80%, or 600 to 800 of the 1,000 grams, would be
heroin in the first transaction, while the remaining 200 to 400 grams would be fentanyl).

While Defendants expressed dissatisfaction with the amount of fentanyl they ultimately
received in the first transaction, *see, e.g.*, Gov't Ex. 258, Slide 65, the jury could reasonably
conclude that 400 grams or more of fentanyl was reasonably foreseeable to Mr. Thomas based on
the November 19, 2019 conversation. *See, e.g.*, *United States v. Mack*, No. S11 18 Cr. 834
(PAE), 2020 WL 114509, at *4 (S.D.N.Y. Jan. 10, 2020) (finding the evidence of quantity
sufficient because the cooperating witness testified that he agreed with the defendant "(although

it did not come to pass) that [the cooperator] would supply [the defendant] with an additional 500 grams" of the charged substance and that the defendant "tried to arrange for several narcotics transactions including deals involving 200 grams and 300 grams" of the charged substance); *see also Jackson*, 335 F.3d at 181 ("A member of a conspiracy is . . . liable for an act he agreed to and intended to commit in furtherance of the conspiracy regardless of whether he ultimately committed the substantive act.").

In advance of the second transaction, which occurred on February 10, 2020, Mr. Thomas, Mr. Cox, Mr. Wallace Best, and Mr. Nuñez discussed the terms of the upcoming transaction. Gov't Ex. 257. Mr. Nuñez stated that "for all that work . . . we have to do five or more," to which Mr. Thomas agreed. *Id.* (Mr. Thomas responding "that's what I'm saying"). They also confirmed that they "don't want nothing with fent" this time, *id.*, and that the transaction would be "five joints," and "one" would go to Mr. Cox, Mr. Wallace Best, and Mr. Thomas, *id.* Therefore, the jury could have reasonably concluded that one kilogram or more of heroin was foreseeable to Mr. Thomas. *See, e.g.*, *United States v. Wiley*, No. 3:21-cr-98 (JBA), 2022 WL 17736914, at *8 (D. Conn. Dec. 16, 2022) (finding sufficient evidence of quantity to uphold a jury verdict because there was a "conversation between Defendant and Feliz discussing 'white' for '36' referred to a kilogram of cocaine").

Accordingly, Mr. Thomas's motion for judgment of acquittal on the quantities charged in Count One will be denied.

### B.   Count Two

Mr. Jefferies and Mr. Frank Best both moved for judgment of acquittal as to Count Two. Mr. Jefferies argues that there was insufficient evidence that he was a member of the conspiracy because the buyer-seller exception applies. Jefferies Mot. at 4–5. Similarly, Mr. Frank Best

argues there was insufficient evidence to find that the Count Two conspiracy existed and that he was a member. Frank Best Mot. at 1.

The Court will address each in turn.[2]

### i.  Lamont Jefferies

As discussed above, "the mere purchase and sale of drugs does not, without more, amount to a conspiracy to distribute narcotics." *Brock*, 789 F.3d at 63 (citing *Parker*, 554 F.3d at 234). "[T]he buyer's agreement to buy from the seller and the seller's agreement to sell to the buyer cannot 'be the conspiracy to distribute, for it has no separate criminal object.'" *Parker*, 554 F.3d at 235 (internal alterations omitted) (quoting *Wexler*, 522 F.3d at 208). Although the buyer-seller exception "does not protect either the seller or buyer from a charge they conspired together to transfer drugs if the evidence supports a finding that they shared a conspiratorial purpose to advance other transfers, whether by the seller or by the buyer," *id.* at 235, "[e]vidence that a buyer intends to resell the product instead of personally consuming it does not necessarily establish that the buyer has joined the seller's distribution conspiracy," *Hawkins*, 547 F.3d at 74.

Mr. Jefferies argues that the Government failed to present sufficient evidence that he knowingly joined the conspiracy or that he was involved in distribution. Jefferies Mot. at 4–5. More specifically, Mr. Jefferies emphasizes that he only communicated with Mr. Frank Best and the Government did not identify any sales that Mr. Jefferies made. *Id.* at 5–6; Jefferies Suppl. Mot. at 1–2 (arguing that wiretap calls during which Mr. Jefferies references a "customer" are just attempts to "create . . . a sense of urgency"). Mr. Jefferies argues that the evidence at trial shows only that he had a buyer-seller relationship with Mr. Frank Best because he was regularly

---

[2] In his motion, Mr. Thomas briefly states that he "relies on th[e] same sufficiency arguments" for Count Two that he made in the memorandum he filed at the close of the Government's case-in-chief. Thomas Mot. at 25. He does not put forth additional arguments for acquittal, but instead "asks that the Court consider them anew under the standard for granting a new trial under Rule 33," which the Court will do below. *Id.*

purchasing only small amounts of heroin. Jefferies Mot. at 6–8; Jefferies Suppl. Mot. at 1–2. Mr. Jefferies emphasizes that there "is no evidence that . . . it made the slightest difference [to Mr. Frank Best] whether Lamont Jefferies sold the heroin to others, used it himself, or shared it." Jefferies Mot. at 9; Jefferies Suppl. Mot. at 2–7 (first citing *Rivera*, 273 F.3d 751; and then citing *United States v. Santiago*, No. 5:01-CR-113 (FJS), 2003 WL 21254423 (N.D.N.Y. May 29, 2003)).

In response, the Government argues that Mr. Jefferies's conviction "was well-supported by the evidence." Opp'n at 61. More specifically, in the Government's view, Mr. Jefferies was a member of the charged conspiracy because he purchased drugs and "there [wa]s additional evidence showing an agreement to join together to accomplish an objective beyond the sale transaction." *Id.* at 63 (quoting *Hawkins*, 547 F.3d at 72). The Government relies on evidence presented at trial, including: Agent Ando's testimony that Mr. Jefferies was "one of the most regular interceptees over the wiretap on [Mr.] Frank Best's phones," Mr. Frank Best's knowledge that Mr. Jefferies was selling the heroin that he purchased, Mr. Frank Best's and Mr. Jefferies's "use[] [of] code or vague language," Mr. Frank Best "front[ing]" Mr. Jefferies drugs on occasion, Mr. Frank Best's "reli[ance] on money from [Mr.] Jefferies to be able to re-supply himself, and Mr. Frank Best's "discuss[ion] with . . . [Mr.] Jefferies about aspects of his drug operation, including questions about the quality of the product." *Id.* at 62–68. In the Government's view, this evidence "shows the type of mutual dependence" and "stake in the operation" that "courts have deemed indicative of a conspiracy." *Id.* at 67–68.

The Court agrees.

To determine whether the buyer-seller exception applies, courts consider "whether there was prolonged cooperation between the parties, a level of mutual trust, standardized dealings,

sales on credit, . . . and the quantity of drugs involved." *Hawkins*, 547 F.3d at 74 (internal

citations and quotation marks omitted). Other relevant factors are "whether the buyer sought to

advance the conspiracy's interests, whether there was a longstanding relationship between the

buyer and seller, whether the buyer performed other duties on behalf of the conspiracy, whether

the quantity of drugs purchased suggests intent to redistribute, whether the buyer's profits were

shared with members of the conspiracy, and whether the buyer had the physical, financial, or

other protection of the conspiracy." *Faltine*, 2016 WL 1700385, at *3 (citing *Rojas*, 617 F.3d at

675).

Here, the Government has presented sufficient evidence from which the jury could

reasonably conclude that Mr. Jefferies was more than a mere purchaser because there was

evidence that Mr. Jefferies regularly purchased narcotics from Mr. Frank Best, *see, e.g.*, Gov't

Ex. 94 (Mr. Jefferies and Mr. Frank Best discussing money owed, what inventory Mr. Frank Best

had, and prices), Mr. Jefferies occasionally resold those drugs to others and Mr. Frank Best was

aware of this, *see, e.g.*, Gov't Exs. 123 (Mr. Jefferies letting Mr. Frank Best know that he was

"waiting on a couple of people to hit me"), 203 (Mr. Jefferies stating that "my peoples want a

yam"),[3] Mr. Jefferies discussed police activity with Mr. Frank Best, *see* Gov't Exs. 48 (Mr.

Jefferies letting Mr. Frank Best know that "the po-po is all over here"), 202 (Mr. Jefferies and

Mr. Frank Best discussing Mr. Frank Best's recent police interaction and stating they aren't

"taking no chances" by driving a car without a registration), Mr. Jefferies discussed how to

prepare a certain batch of the drug with Mr. Frank Best, *see, e.g.*, Gov't Ex. 171 (Mr. Frank Best

---

[3] While Mr. Jefferies argues that he only made these statements to create a sense of urgency, such an argument requires a credibility determination, which is within the province of the jury. *See United States v. Truman*, 688 F.3d 129, 140 (2d Cir. 2012) ("It is the province of the jury and not of the court to determine whether a witness who may have been inaccurate, contradictory and even untruthful in some respects was nonetheless entirely credible in the essentials of [her] testimony." (internal quotation marks omitted)); *United States v. Rea*, 958 F.2d 1206, 1221–22 (2d Cir. 1992) ("Matters of the choice between competing inferences, the credibility of the witnesses, and the weight of the evidence are within the province of the jury, and we are not entitled to second-guess the jury's assessments.").

explaining to Mr. Jefferies that he "gotta grind all the fruits up together"), Mr. Frank Best

"fronted" Mr. Jefferies drugs, *see, e.g.*, Gov't Exs. 113 (Mr. Frank Best stating to Mr. Jefferies

that "if you gave me five, I'm gonna make sure I give you ten, if you gave me twenty, I'ma make

sure I'll give you forty"), 149 (Mr. Jefferies asking Mr. Frank Best if he's "all right" and then

stating that Mr. Jefferies "got that for [him] too"), Mr. Frank Best and Mr. Jefferies relied upon

one another, *see, e.g.*, Gov't Ex. 195 (Mr. Frank Best telling Mr. Jefferies that he "can't do

nothing until [he's] ready" and Mr. Jefferies responding that he "Got. 150. And. A. few. More.

To. Go."), and Mr. Frank Best discussed issues with suppliers with Mr. Jefferies, *see, e.g.*, Gov't

Exs. 232 (Mr. Frank Best complaining that his "uncles got to arguing" and now he is "waiting on

him to text me back" and that once he hears back, he will go "straight to" Mr. Jefferies), 236

(Mr. Frank Best explaining to Mr. Jefferies that "we on a waiting game right now still" but that

when his supplier's "people get back, that's when everything gonna be Gucci").

Altogether, this is a sufficient basis for the jury to find that Mr. Jefferies was a member of

the Count Two conspiracy. *See Hawkins*, 547 F.3d at 75 (finding that, where the defendant

argued that "he purchased the cocaine to use it, share it, or sell it, but it was only his business

what he would do with it," there was sufficient evidence that the defendant joined the conspiracy

because the defendant "intended to redistribute some of the cocaine he purchased" and the

supplier knew that, the defendant "was not freelancing" and instead "engage[d] in this conduct . .

. on an ongoing basis," the defendant and the supplier "trust each other to work together as

supplier and street-level dealer," the defendant "repeatedly brought potential customers' needs to

[the supplier's] attention," the defendant "express[ed] preference" for the supplier "over other

local dealers," and the supplier "agree[d], at least initially, to extend credit" to the defendant);

*Faltine*, 2016 WL 1700385, at *4–6 (finding the buyer-seller exception did not apply where there

was "evidence of a prolonged relationship between defendant and . . . [the] drug supplier," "evidence regarding a high level of mutual trust between [the supplier] and the defendant," including that the defendant "d[id not] weigh" the drugs because he "trusted [the supplier's] judgment," many of the drug sales were on credit, the defendant and the supplier "dealt in a standardized fashion," and evidence that the supplier "purchase[d] . . . the safe for defendant— after defendant was robbed of drug proceeds" (citations and quotation marks omitted)).

Accordingly, Mr. Jefferies's motion will be denied on this basis.

### ii. Frank Best

Mr. Frank Best argues that there was insufficient evidence to find him guilty on Count Two. Frank Best Mot. at 1. In his view, on the wiretaps, he "was merely bragging and making himself look like a bigger dealer" but there was no corroborating evidence. *Id.* at 2. Moreover, Mr. Frank Best argues that he did not take the cooperating source up on his offer for "a kilo of heroin" for "$60,000.00" because "he had no access to those amounts of drugs, which he would [have] if he was conspiring with his co-defendants." *Id.* Mr. Frank Best emphasizes that there is no evidence to support the notion that he sold drugs to anyone other than users. *Id.* Mr. Frank Best contends that he was tied to Mr. Wallace Best and Mr. Thomas as a family member, but not as a member of a narcotics conspiracy. *Id.* at 3. Finally, he emphasizes that "[t]here was no reliable evidence or circumstantial evidence of an agreement." *Id.* at 4.

In response, the Government argues that there was "substantial proof of a conspiracy involving Frank Best, Wallace Best, Jeffrey Thomas, Lamont Jefferies, and others." Opp'n at 58. The Government emphasizes wiretap evidence showing conversations in which "Wallace [Best] needed to see his supplier and sought to collect proceeds from Frank [Best] for drugs previously provided on consignment." *Id.* Additionally, the Government notes that there was evidence that

"Thomas fronted Frank Best drugs" and "the two worked together to process drugs and to service narcotics customers." *Id.* at 59. Finally, the Government argues that "Frank Best's role was to process, package, and distribute drugs he received from sources with whom he had a sustained relationship who were willing to front him product." *Id.* at 61.

      The Court agrees.

      There was sufficient evidence for the jury to infer that Mr. Frank Best bought drugs from Mr. Wallace Best, and that he intended to sell those drugs to others. For example, on one occasion, Mr. Wallace Best called Mr. Frank Best several times so that he could collect money for drugs he provided to Mr. Frank Best on consignment. *See, e.g.*, Gov't Exs. 109, 177, 178. On another occasion, Mr. Turowski called Mr. Frank Best about purchasing drugs. Gov't Ex. 55. Mr. Frank Best then called Mr. Wallace Best for a supply. Gov't Ex. 350. Thereafter, Mr. Frank Best confirmed to Mr. Turowski that he would be able to sell to him, but that he would have to "give [him] a second to grab it." Gov't Ex. 352.

      Additionally, between July 6, 2019, and July 8, 2019, there are calls and texts indicating that Mr. Frank Best allegedly received narcotics that he then agreed to distribute. *See* Gov't Ex. 212; Gov't Ex. 217, Gov't Ex. 218; Gov't Ex. 221. On July 6, 2019, Mr. Frank Best did not have the narcotics his alleged customers called to purchase. *See* Gov't Ex. 212. Then, on July 7, 2019, Mr. Thomas called Mr. Frank Best and allegedly said "[t]omorrow. I got it though. We straight." Gov't Ex. 218. On July 8, 2019, Mr. Frank Best sent a text to thirteen numbers to let them know he is "good now." Gov't Ex. 221.

      Therefore, there was a sufficient basis for the jury to find Mr. Frank Best guilty of the Count Two conspiracy. *See, e.g.*, *Hawkins*, 547 F.3d at 72 ("[T]he existence of a buyer seller relationship does not itself establish a conspiracy[,] [but] where there is additional evidence

showing an agreement to join together to accomplish an objective beyond the sale transaction, the evidence may support a finding that the parties intentionally participated in a conspiracy."); *United States v. Ulbricht*, 31 F. Supp. 3d 540, 561 (S.D.N.Y. 2014) ("The law of conspiracy recognizes that members of a conspiracy may serve different roles." (citing *United States v. Santos*, 541 F.3d 63, 72 (2d Cir. 2008))).

Accordingly, Mr. Frank Best's motion for judgment of acquittal on Count Two will be denied.

### C.    Section 851

To comply with section 851, the jury had to find the existence of the following facts: first, that each of the Count One Defendants had been previously convicted of a "serious drug felony," which includes any narcotics felony with a maximum sentence of at least ten years of imprisonment; second, that each Count One Defendant served more than a year in prison for that conviction; and third, that each Count One Defendant was released from prison within fifteen years of the commencement of the instant offense. Tr. Day 16 at 19:9–21:13, ECF No. 1115 (providing supplemental jury instructions related to the 851 notices).

Mr. Thomas argues that there was insufficient evidence for the jury to find that the section 851 enhancement applied to him. Thomas Mot. at 23. More specifically, Mr. Thomas argues that, while the Government introduced evidence that "a person named Jeffrey Thomas had been convicted in 2002," the Government "did not introduce any other evidence to establish that the 'Jeffrey Thomas a/k/a Zig' in this case was the same 'Jeffrey Thomas a/k/a Little Jeff' reflected in the prior conviction documents." *Id.* at 24. Additionally, Mr. Thomas argues that Agent Ando's testimony that he was still in custody at the time that his sentencing reduction motions were adjudicated was improperly "based on Agent Ando's review of hearsay documents

not in evidence." *Id.* In Mr. Thomas's view, "Agent Ando could not testify from personal knowledge whether Mr. Thomas was (1) the same person reflected in the court records, or (2) whether he was in custody at the time the sentencing reduction orders were entered." *Id.*

Similarly, Mr. Cox argues that there was insufficient evidence to conclude that he was subject to the section 851 enhancement. Cox Mot. at 16. More specifically, Mr. Cox contends that the petition for warrant and sentencing minutes from a prior case, and "related testimony by Special Agent Ando failed to prove beyond a reasonable doubt" that the person in the present case is the same as the person in the prior case. *Id.* In Mr. Cox's view, the Government did not present any evidence, such as a birthday or Social Security number, that would support the inference that the two cases involve the same person. *Id.* at 16–17.

Mr. Wallace Best joins Mr. Cox's and Mr. Thomas's arguments as to the sufficiency of the evidence to support the section 851 verdict. Wallace Best Mot. at 10.

In response, the Government argues that it presented evidence sufficient to identify each Defendant. Opp'n at 52. The Government contends that the evidence presented at trial shows that Mr. Wallace Best was convicted of a narcotics conspiracy in 2002, sentenced to a term of imprisonment of 63 months and 8 years of supervised release, and released in February of 2007. *Id.* In the Government's view, the prior case was properly linked to the current case because the records "showed that [Mr. Wallace Best] went by the nickname 'Coop,'" which was "the same nickname . . . used . . . on wiretap calls introduced at trial." *Id.* at 54. Additionally, the Government notes that the address included on the records, Lindley Avenue, is also the address that Mr. Nuñez testified he would go "to collect proceeds" during "the same time period as the" records. *Id.*

As to Mr. Thomas, the Government argues that the evidence presented at trial shows that

Mr. Thomas was convicted of a narcotics conspiracy in 2002, sentenced to 262 months' imprisonment and 15 years of supervised release, and released on January 9, 2019. *Id.* at 52–53. As to Mr. Cox, the Government argues that the evidence presented at trial shows that Mr. Cox was convicted of a narcotics conspiracy in 2002, sentenced to 360 months' imprisonment and 5 years of supervised release, and released in 2014. *Id.* at 53.

In the Government's view, "[t]he evidence to support [Mr. Wallace] Best's Section 851 conviction, supports the others as well." *Id.* at 55. More specifically, the Government emphasizes the "longstanding relationships" between Mr. Thomas and Mr. Cox, as well as Mr. Thomas and Mr. Wallace Best. *Id.* The Government also argues that because the "records show that all three defendants" were convicted "for cocaine distribution conspiracies arising in Connecticut" in the past, and "were released in time to be the individuals together committing the offense charged in Count One of the Indictment," the jury could reasonably infer the records referenced the same individuals at trial. *Id.* at 55–56.

The Court agrees in part and disagrees in part.

While courts must defer to a jury's reasonable inferences, courts give no deference to impermissible speculation. *United States v. D'Amato*, 39 F.3d 1249, 1256 (2d Cir. 1994). "An inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist." *Siewe v. Gonzales*, 480 F.3d 160, 168 (2d Cir. 2007) (alterations omitted) (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999)). "Impermissible speculation, on the other hand, is 'a complete absence of probative facts to support the conclusion reached.'" *Pauling*, 924 F.3d at 656 (quoting *Lavender v. Kurn*, 327 U.S. 645, 653 (1946)).

"The line between permissible inference and impermissible speculation is drawn by the

laws of logic and not judicial idiosyncrasies." *Pauling*, 924 F.3d at 656 (citations omitted). "The

process of drawing inferences from facts in evidence is not a matter of guesswork or speculation.

An inference is a deduction or conclusion which . . . the jury [is] permitted to draw . . . from facts

which have been established by either direct or circumstantial evidence." *Id.* at 657 (quoting

Leonard B. Sand et al., *Modern Federal Jury Instructions* § 6.01 (2011)). Thus, courts "may not

credit inferences within the realm of possibility when those inferences are unreasonable." *United*

*States v. Quattrone*, 441 F.3d 153, 169 (2d Cir. 2006).

As it relates to Mr. Wallace Best, there was sufficient evidence for the jury to conclude

that the conviction records related to the same person in Court. More specifically, the records are

for someone with the same name, Wallace Best; same nickname, Coop; and in the same area of

Bridgeport, Connecticut, Lindley Avenue. *See* Gov Ex. 355; Nuñez Tr. Vol. I at 21:19–22:24

(stating that Mr. Nuñez would sometimes meet Mr. Wallace Best at a pizza place in the "Lindley

Avenue area" and that occasionally, Mr. Wallace Best would drive to an apartment nearby,

where he would "go in with some of the drugs, come out with money").

As it relates to Mr. Thomas and Mr. Cox, however, the Government has not met its

burden to provide a non-specious basis for the jury to reasonably infer that the conviction records

relate to Mr. Thomas and Mr. Cox.

First, the Government relies on inferences improper for a jury to make. For example, a

jury cannot infer based only on Defendants' familial relationships and friendships that the

conviction records refer to Mr. Thomas and Mr. Cox. *See, e.g.*, *United States v. Berenguer*, 562

F.2d 206, 209 (2d Cir. 1977) ("It is, of course, well established that guilt may not be inferred

from mere association with a person whose guilt has been established." (citations omitted));

*United States v. Scarpa*, 913 F.2d 993, 1005 (2d Cir. 1990) ("Guilt may not be inferred from

mere association with a guilty party." (citations omitted)).

Likewise, to the extent that the Government suggests that the jury could infer that because the prior crimes were similar to the current charges and committed by persons with the same name, they must be the same people, such an argument requires an improper propensity inference. *See, e.g.*, *United States v. Zhong*, 26 F.4th 536, 551 (2d Cir. 2022) ("[The 404] 'inclusionary rule is not a carte blanche to admit prejudicial extrinsic act evidence [that] is offered to prove propensity,' . . . or otherwise to allow 'propensity evidence in sheep's clothing.'" (quoting *United States v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009))).[4]

Moreover, the Jeffrey Thomas in the 2002 conviction records used the alias "Little Jeff," whereas the Jeffrey Thomas in this case used the alias "Zig." Gov't Ex. 334; Gov't Ex. 81. The Government has provided no basis for the jury to conclude that "Little Jeff" and "Zig" refer to the same person.

Therefore, the only evidence is that the records bear the same name, the records denote crimes that occurred in the same state, and the Jeffrey Thomas records are from the same case as the Wallace Best records. While it is "within the realm of possibility," *Quattrone*, 441 F.3d at 169, that the records refer to the Mr. Thomas and Mr. Cox of this case, there is "a complete absence of probative facts to support th[at] conclusion," *Pauling*, 924 F.3d at 656 (quoting

---

[4] That this evidence was admissible under 404(b) for the permissible purpose of proving the factual basis of the section 851 charges does not change the analysis. More specifically, the Government's argument would still require the jury to base its conclusion about identity on Defendant's criminal propensity, rather than, as is required, some specific factual nexus to these Defendants' identity. *See McCallum*, 584 F.3d at 475 (2d Cir. 2009) ("Where [404(b)] evidence is offered for the purpose of establishing the defendant's knowledge or intent," the Second Circuit requires "that the government identify a similarity or connection between the two acts that makes the prior act relevant to establishing knowledge of the current act." (citations and quotation marks omitted)); *United States v. Garcia*, 291 F.3d 127, 138 (2d Cir. 2002) (finding that admitting a prior conviction was an abuse of discretion because "the government did not establish that [the] prior drug conviction was meaningfully probative of [the defendant's] knowledge" of the charged narcotics conspiracy because "[t]he only similarity between the two drug transactions . . . [was] that both involved cocaine"). Thus, while the evidence was admissible, its use was limited to non-propensity inferences.

*Lavender*, 327 U.S. at 653). Therefore, the jury was left only with "guesswork or speculation" as to the identities of the Mr. Thomas and Mr. Cox in the conviction records. *Id.* at 657 (quoting Leonard B. Sand et al., *Modern Federal Jury Instructions* § 6.01 (2011)); *see also Valle*, 807 F.3d at 513 ("[S]pecious inferences are not indulged, because it would not satisfy the Constitution to have a jury determine that the defendant is *probably* guilty." (quoting *Lorenzo*, 534 F.3d at 159)).

Accordingly, Mr. Wallace Best's motion will be denied on these grounds,[5] and Mr. Thomas's and Mr. Cox's motions will be granted on these grounds.

### D.    New Trial

Defendants each argue for a new trial under Rule 33, arguing that there was prejudicial spillover evidence from Count One into Count Two and vice versa. Wallace Best Mot. at 10; Thomas Mot. at 25; Cox Mot. at 17; Jefferies Mot. at 11. Mr. Jefferies makes the additional argument that the jury may have been misled by evidence related to Task Force Officer Cesar ("TFO Cesar"). Jefferies Mot. at 11.

The Court will address each argument in turn.

### i.    Prejudicial Spillover

Under Federal Rule of Criminal Procedure 8(a), offenses may be joined if they "are of the same or similar character, or are based on the same act or transaction, or are connected with or

---

[5] Mr. Wallace Best filed a supplemental motion for acquittal as to the section 851 penalty enhancement, arguing that, as a matter of law, the term "serious drug felony" does not include a conviction under section 846 because the definition of offense under 21 U.S.C. § 841(a)(1) "does not include inchoate offenses." Wallace Best Suppl. Mot. at 2–3. This argument fails because the Second Circuit has held that a conviction under section 846 qualifies as a "serious drug felony" for purposes of the section 851 enhancement. *See* 21 U.S.C. § 802(57) (defining a serious drug offense as "an offense described in section 924(e)(2) of title 18," which defines serious drug offense to mean "an offense under the Controlled Substances Act"); *United States v. Andino*, 627 F.3d 41, 46 (2d Cir. 2010) (referring to violations of 21 U.S.C. § 846 as conspiracies charged under the Controlled Substances Act); *United States v. James*, 831 F. App'x 578, 579 n.2 (2d Cir. 2020) (stating that controlled substance offense "include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses").

constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). "Joinder is proper where the same evidence may be used to prove each count, or if the counts have a sufficient logical connection." *United States v. Page*, 657 F.3d 126, 129 (2d Cir. 2011) (internal quotation marks and citations omitted).

Even if criminal defendants are properly joined, however, "the court may order separate trials of counts, sever the defendants' trial, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). A district court should sever "only if there is serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). The "defendant seeking severance must show that the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials." *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998). And under Rule 14, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 538 (citation omitted).

Mr. Thomas, Mr. Wallace Best, Mr. Cox, and Mr. Jefferies argue that the Court should grant a new trial under Rule 33 because there was such prejudicial spillover in the evidence presented for Counts One and Two that the convictions are a manifest injustice. Wallace Best Mot. at 10; Thomas Mot. at 25; Cox Mot. at 17; Jefferies Mot. at 14–16. More specifically, Defendants argue that there was spillover prejudice "created by having alleged street-level dealers from Bridgeport joined in a trial with kilogram-level cartel defendants from Mexico and California." Thomas Mot. at 26; *see also* Wallace Best Mot. at 10; Cox Mot. at 17–18. In Defendants' view, the co-conspirator statements admitted for each conspiracy under the *Geaney* procedure "was such a large portion of the proof . . . that cautionary instructions to the jury could

42

not eliminate the prejudice." Cox Mot. at 18; *see also* Wallace Best Mot. at 10; Thomas Mot. at 26–27. Mr. Jefferies also emphasizes that the evidence specifically against him "could have been presented in half a day, but he was charged in a wide-ranging indictment that included spectacular allegations of kilograms of controlled substances." Jefferies Mot. at 12.

In response, the Government argues that joinder of Count One and Two "was proper for the reasons stated in the Court's May 20, 2022 Ruling and Order," in which the Court relied on the "factual overlap among the allegations in Count One and Count Two." Opp'n at 70 (quotation marks omitted). In the Government's view, the evidence produced at trial was consistent with the Court's pretrial findings. *Id.* More specifically, the Government argues that the Counts involve overlapping participants, similar offenses, and similar time periods. *Id.* at 71. Moreover, the Government contends that the Court's instructions to the jury concerning co-conspirator statements and Mr. Nuñez's role was sufficient to limit any unfair prejudice. *Id.* The Government also argues that it used a "methodical and chronological presentation of evidence," including the division of Count One and Count Two evidence, such that "there is no reason to depart from the presumption that the jury could understand and followed the Court's limiting instructions on the use of evidence." *Id.* at 71–72.

The Court agrees.

For severance to be proper, criminal defendants must establish that "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539; *see also United States v. Rajaratnam*, 753 F. Supp. 2d 299, 305 (S.D.N.Y. 2010) ("[T]he coexistence of Rule 8 and Rule 14 assumes an 'inevitable tolerance of some slight prejudice to codefendants, which is deemed outweighed by the judicial economies resulting from the avoidance of

duplicative trials.'" (quoting *United States v. Cardascia*, 951 F.2d 474, 482–83 (2d Cir. 1991))).

And, courts "normally presume that a jury will follow an instruction to disregard inadmissible

evidence inadvertently presented to it." *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987).

As the Court explained in its Ruling and Order on Pre-Trial Motions, the overlapping

participants, conduct, and time frame provide a basis for joinder under Rule 8, and there was no

basis under Rule 14 for severance. *See* Ruling and Order on Pretrial Mots. at 40–42. The

evidence presented at trial has not altered that reasoning.

Moreover, during trial, the Court regularly sustained objections under Rule 403, when the

Government offered evidence that may have been unduly prejudicial to certain Defendants,[6] and,

under the *Geaney* procedure, provided the jury with a date-specific limiting instruction about co-

conspirator statements for each Count.[7]

---

[6] *See, e.g.*, Tr. Ando Vol. II at 104–105, ECF No. 1045 ("Q: What effect, if any, did this call have on Frank Best's
pattern of behavior? Mr. Schoenhorn: Objection. The Court: Sustained. Ms. Peck: I'm not sure the basis, Your
Honor. Mr. DeSantis: Objection. The Court: "I'm going to sustain in terms of --- just foundation about what he's
saying – she's saying. You are asking her to speculate about what Frank Best ---."); Tr. Ando Vol III at 61:13–20,
ECF No. 1046 ("Q. And the other defendants were arrested a period of time after that, correct? A: Yes, at different
times. Q: And why the delay? A: The delay in the arrest of the other ones were because ---- Mr. Schoenhorn:
Objection. The Court: Sustained."); Tr. Ando. Vol. VI at 75, ECF No. 1049 ("Q: And how were you – could you tell
how you were able to hear Mr. Garcia – Psych's voice over this live recording? A: I could hear the voice, but
afterwards when I met with the – I could also tell me that they were calling him. Throughout the conversations that
was being said in the car I could tell that Cox was --. Mr. Frost: Objection. The Court: Sustained."); *id.* at 82–83
("Q: Did DEA have conversations with Mr. Nuñez about how he was supposed to be able to transport drugs instead
of money? A: Yes. So throughout the conversations, the recorded conversations, I would be in contact with Elvis
Nuñez on a regular basis directing him on the next thing to say or do, and when it came to the time we were going to
transport narcotics we knew that we couldn't turn over the drugs to anybody, so the conversation was mostly a test
kilogram, of just buying one kilogram, transporting it here to the Northeast, selling it quickly, and ultimately being
able to turn back around and get 5 to 10 more kilograms . . . . Mr. Frost: Objection, Your Honor. The Court: I'm
going to sustain it. There's a lot of narrative, but there is also a lot of conclusions drawn in there. So, I will strike
that, and maybe you want to try that again. Mr. Frost: Thank you, Your Honor."); *id.* at 86 ("Q: At this point,
generally, what role do you understand that Psych to be playing? Mr. Frost: Objection. The Court: Overruled. A:
Psych is the supplier of the heroin who resides in Mexico. Q: And so what conversations, if any, is he having with
the confidential source? A: He's the one that is coordinating the --- The Court: I'm sorry, I'm going to sustain that. I
overruled it based on her understanding, but then she gave an answer that lacked a foundation for the basis for that
understanding. So I'm going to strike all of that.").

[7] *See, e.g.*, Post-Trial Jury Instructions at 34 ("As to the Count One conspiracy, statements made by Mr. Wallace
Best, Mr. Thomas, Mr. Cox, Mr. Oscar Garcia-Hernandez, and Mr. Nuñez before September 27, 2019, allegedly
made in furtherance of the Count One conspiracy are only admissible against the defendant who made the statement.
Statements made by Mr. Wallace Best, Mr. Thomas, Mr. Cox, Mr. Oscar Garcia-Hernandez, and Mr. Nuñez after

Likewise, the Government presented its evidence in order by Counts, beginning with Counts Three through Seven, and then presenting Count Two followed by Count Three. Opp'n at 71. The Court's instructions and how the Government ordered its presentation of evidence were sufficient to limit any prejudicial spillover. *See Zafiro*, 506 U.S. at 538 (stating that under Rule 14, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice" (citation omitted)).

Defendants have not identified any specific reason for the Court to displace the presumption that the jury was able to "follow an instruction to disregard inadmissible evidence," *Greer*, 483 U.S. at 766 n.8, and therefore, have not provided a basis to find there was a "manifest injustice," *Ferguson*, 246 F.3d at 134.

Accordingly, Mr. Thomas's, Mr. Cox's, Mr. Jefferies's, and Mr. Wallace Best's motions will be denied on these grounds.

### ii.   TFO Cesar

Mr. Jefferies argues that he was also prejudiced by TFO Cesar's testimony. Jefferies Mot. at 11. In Mr. Jefferies's view, TFO Cesar testified that he ordered someone "to stop the pickup truck" that Mr. Jefferies was in one day "because he suspected there were narcotics in it" but that there was no further evidence on what occurred when the truck was stopped. *Id.* at 12. Therefore, Mr. Jefferies, the jury "may have thought" that there "must have been" drugs, potentially a large amount, in the truck. *Id.*

---

September 27, 2019, are admissible, but only are to be considered in your deliberations as to the Count One conspiracy as they relate to the charges in Count One against Mr. Wallace Best, Mr. Thomas, and Mr. Cox."); *id.* ("As to the Count Two conspiracy, statements made by Mr. Wallace Best, Mr. Thomas, Mr. Frank Best, and Mr. Jefferies allegedly made in furtherance of the Count Two conspiracy are admissible against each of these defendants, but statements made between Mr. Nuñez and Mr. Wallace Best allegedly made in furtherance of the Count Two conspiracy are not admissible against Mr. Thomas, Mr. Frank Best, and Mr. Jefferies.").

In response, the Government argues that this is not a basis to grant a new trial because the reason there was no further evidence about the stop was because Mr. "Jefferies moved to keep this testimony out and the Court did so." Opp'n at 72 n.20. In the Government's view, Mr. Jefferies "cannot have it both ways—successfully moving to keep evidence away from the jury during trial and then . . . claiming a 'manifest injustice' occurred because the jury did not hear what happened." *Id.* The Government also argues there was no manifest injustice because there was ample evidence to support the verdict. *Id.*

The Court agrees, in part.

Even if Mr. Jefferies's argument was correct and there was reason to believe the jury improperly speculated—which the Court assumes without deciding— there was sufficient other evidence of his guilt, as discussed above, *infra* pp. 30–34, such that Mr. Jefferies has not established a manifest injustice. *See United States v. Canova*, 412 F.3d 331, 349 (2d Cir. 2005) ("The ultimate test is whether letting a guilty verdict stand would be a manifest injustice . . . . There must be a real concern that an innocent person may have been convicted." (internal quotation marks and citations omitted)).

Accordingly, Mr. Jefferies's motion will be denied on these grounds.

### E.   *Pro Se* Motions[8]

Mr. Cox, Mr. Wallace Best, and Mr. Frank Best have filed various *pro se* motions for relief from their convictions.

---

[8] Mr. Cox filed a *pro se* motion to proceed *pro se*. *See* Mot. to Proceed *Pro Se*. Because the Court addresses Mr. Cox's *pro se* motions and motions filed by counsel, the motion to proceed *pro se* is **DENIED as moot**.

Additionally, Mr. Cox has requested oral argument or a status hearing on his pending motions. Twenty-Second Cox *Pro Se* Mot.; Twenty-Fourth Cox *Pro Se* Mot.; Twenty-Fifth Cox *Pro Se* Mot. The Court, however, declines to hold any such hearing. *See United States v. DeFeo*, 327 F. App'x 257, 258 (2d Cir. 2009) ("Whether to hold an oral argument or a formal evidentiary hearing 'lies within the sound discretion of the district court.'" (quoting *United States v. Knights*, 968 F.2d 1483, 1487 (2d Cir. 1992))).

The Court will address each in turn.

As an initial matter, several of Mr. Cox's motions are moot because they relate to the section 851 enhancement or whether section 846 should be considered a "controlled substance offense," issues that the Court has decided in Mr. Cox's favor, *infra* pp. 36–41 (granting Mr. Cox's motion for acquittal as to the section 851 enhancement); *see also* First Cox *Pro Se* Mot.; Eleventh Cox *Pro Se* Mot.; Twelfth Cox *Pro Se* Mot.; Thirteenth Cox *Pro Se* Mot.; Fourteenth Cox *Pro Se* Mot., and several of the *pro se* motions address topics that the Court has already discussed at length in this Ruling and Order. For example, Mr. Cox and Mr. Wallace Best argue that the Government failed to prove anything beyond a buyer-seller agreement, Second Cox *Pro Se* Mot. at 13; Third Cox *Pro Se* Mot. at 9–20; Fourth Cox *Pro Se* Mot. at 13; Eighteenth Cox *Pro Se* Mot.; First Wallace Best *Pro Se* Mot., Mr. Cox argues that the Government failed to prove he had any stake in the charged conspiracy, Third Cox *Pro Se* Mot. at 30; Fourth Cox *Pro Se* Mot. at 21–22, Mr. Cox argues that the Government failed to present sufficient evidence of his participation in the charged conspiracy, Fourth Cox *Pro Se* Mot. at 16, 27, Mr. Cox, Mr. Wallace Best, and Mr. Frank Best argue that the Government failed to present sufficient evidence that they possessed the required intent, Tenth Cox *Pro Se* Mot.; Third Frank Best *Pro Se* Mot.; Seventeenth Cox *Pro Se* Mot.; Twenty-First Cox *Pro Se* Mot., and Mr. Cox argues that the Government only presented evidence of two disconnected East Coast and West Coast conspiracies, Nineteenth Cox *Pro Se* Mot.; Twentieth Cox *Pro Se* Mot. These motions will therefore be denied for the reasons already stated in this Ruling and Order.

The remaining motions require additional discussion.

First, several of the *pro se* motions argue that the Court cannot uphold a section 846 conviction where the jury did not determine whether Defendants also violated section 841, the

substantive offense. *See* Fifth Cox *Pro Se* Mot.; Tenth Cox *Pro Se* Mot.; Fifteenth Cox *Pro Se* Mot.; First Frank Best *Pro Se* Mot.; Second Frank Best *Pro Se* Mot.; Sixteenth Cox *Pro Se* Mot.; Fourth Frank Best *Pro Se* Mot. This is not so.[9]

It is well-established law that conspiracy to distribute narcotics is a valid offense and does not require a conviction on the substantive distribution charge in order for Defendants to be sentenced for a section 846 conviction. *See United States v. Gore*, 154 F.3d 34, 40 (2d Cir. 1998) ("The essence of conspiracy is the agreement and not the commission of the substantive offense."); *see also United States v. Pressley*, 469 F.3d 63, 66 (2d Cir. 2006) ("Because a conspiracy is a single, unified offense, it constitutes 'a violation' for the purposes of § 841(b). Further, with respect to sentencing any given member of the conspiracy pursuant to § 841(b), the violation 'involv[es]' the aggregate quantity of all the subsidiary transactions attributable to that particular member."). Therefore, these *pro se* motions lack merit.

Second, several of the *pro se* motions argue that the Court lacked jurisdiction or that Connecticut was the improper venue because there were no overt acts in furtherance of the conspiracy that took place in Connecticut. *See* Seventh Cox *Pro Se* Mot.; Eighth Cox *Pro Se* Mot.; Ninth Cox *Pro Se* Mot.; Twenty-Sixth Cox *Pro Se* Mot.

Under Federal Rule of Criminal Procedure 18, "the government must prosecute an offense in a district where the offense was committed." For a conspiracy charge, "venue is proper in any district in which 'an overt act in furtherance of the conspiracy was committed.'" *United States v. Royer*, 549 F.3d 886, 896 (2d Cir. 2008) (quoting *United States v. Naranjo*, 14 F.3d 145, 147 (2d Cir. 1994)). "An overt act is any act performed by any conspirator for the purpose of accomplishing the objectives of the conspiracy," and "[t]he act need not be unlawful;

---

[9] Significantly, many of these same meritless arguments were made before trial on numerous occasions and were thoroughly rejected then as well. *See, e.g.*, Orders, ECF Nos. 816, 801, 773, 554, 545, 523, 493, 452, 436, 399.

it can be any act, innocent or illegal, as long as it is done in furtherance of the object or purpose of the conspiracy." *United States v. Tzolov*, 642 F.3d 314, 320 (2d Cir. 2011).

As discussed at length in the section about Count One, *supra* pp. 13–26, Mr. Cox and the other Count One Defendants participated in numerous calls and meetings that occurred in Connecticut, and these calls and meetings were overt acts taken to plan and then execute the charged conspiracy. *See, e.g.*, *United States v. Abdallah*, 840 F. Supp. 2d 584, 598 (E.D.N.Y. 2012) ("Phone calls can constitute overt acts in furtherance of a conspiracy." (citations omitted)); *United States v. Rommy*, 506 F.3d 108, 120 (2d Cir. 2007) ("It is beyond question that telephone calls can constitute overt acts in furtherance of a conspiracy."). Therefore, venue is proper in Connecticut.

Third, several of the *pro se* motions argue that the there was no conspiracy because Mr. Nuñez was a government informant and therefore, the Court erred in how it instructed the jury to consider Mr. Nuñez's role.

"Although a person acting as an agent of the government cannot be a co-conspirator, the presence of a government agent does not destroy a conspiracy in which at least two other private individuals have agreed to engage in an unlawful venture." *United States v. Medina*, 32 F.3d 40, 44 (2d Cir. 1994) (citations and quotation marks omitted). Moreover, "defendants may be convicted of conspiracy even if, unbeknownst to them, the substantive crime would never have been committed because the person the coconspirators thought would commit it was actually an agent of the government." *United States v. Goldberg*, 756 F.2d 949, 958 (2d Cir. 1985) (citations and quotation marks omitted).

The Court instructed the jury consistently with these well-established legal principles, and therefore this is not a basis for granting the *pro se* motions. *See* Post-Trial Jury Instructions

at 39 ("I also want to caution you that a defendant cannot be a member of a conspiracy if that conspiracy consisted solely of government agents or informants. However, the presence of a government agent or informant does not destroy a conspiracy where at least two of the persons involved are private individuals.").

Accordingly, Mr. Cox's, Mr. Wallace Best's, and Mr. Frank Best's *pro se* motions will be denied on these grounds.

## II.     CONCLUSION

For the foregoing reasons, Mr. Wallace Best's motions for judgment of acquittal and for a new trial are **DENIED**.

Mr. Thomas's motion for judgment of acquittal and for a new trial is **GRANTED in part** and **DENIED in part**. Mr. Thomas's motion is granted as it relates to the section 851 sentencing enhancement and Mr. Thomas's motion is denied as to the other grounds raised therein.

Mr. Jefferies's motions for judgment of acquittal and for a new trial are **DENIED**.

Mr. Frank Best's motion for judgment of acquittal is **DENIED**.

Mr. Cox's motions for judgment of acquittal and for a new trial are **GRANTED in part** and **DENIED in part**. Mr. Cox's motions are granted as they relate to the section 851 sentencing enhancement and Mr. Cox's motions are denied as to the other grounds raised therein.

Mr. Cox's, Mr. Wallace Best's, and Mr. Frank Best's *pro se* motions are **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut this 28th day of July, 2023.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE